# EXHIBIT 3

Douglas A. Applegate (SBN 142000)
George M. Lee (SBN 172982)
**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
101 Montgomery Street, 27th Floor
San Francisco, California 94104
Phone: (415) 979-0500
Fax:    (415) 979-0511

Attorneys for Plaintiff
William Giffen, successor-in-interest to
Ivy Rosequist, individually and dba
Wicker-Wicker-Wicker

<div style="text-align:left; margin-left:2em; writing-mode: vertical">SEILER EPSTEIN ZIEGLER & APPLEGATE LLP<br>Attorneys at Law</div>

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GIFFEN, an individual and the successor-in-interest to IVY ROSEQUIST, individually and doing business as WICKER-WICKER-WICKER<br><br>Plaintiff<br>vs.<br><br>MICHAEL TAYLOR DESIGNS, INC., a California Corporation<br><br>Defendant | Case No.: C08-1588  SBA (BZ)<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. VIOLATION OF THE LANHAM ACT<br>2. BREACH OF ORAL CONTRACT<br>3. BREACH OF WRITTEN CONTRACT<br>4. SLANDER OF GOODS<br>5. DAMAGE AND DESTRUCTION OF PERSONAL PROPERTY<br>6. NEGLIGENCE<br>7. FALSE PROMISE<br><br>**Jury Trial Demanded** |

I.

Summary of Lawsuit

1.    In 2005, after 30 years in business, Ivy Rosequist – a renowned interior designer and furniture designer specializing in furniture manufactured through the weaving process commonly known as wicker, as well as the owner of the San Francisco sole proprietorship named Wicker-Wicker-Wicker -- entered into an oral distributorship agreement with Michael Taylor Designs, Inc.  Under that agreement, Michael Taylor Designs, Inc. agreed to be the exclusive sales agent for Wicker-Wicker-Wicker's line of furniture (comprising approximately 300 separate furniture pieces), agreeing to display and promote the wicker furniture in each of its five

1

**EXHIBIT 3**

showrooms, in exchange for a 25% commission on each sale. Michael Taylor Designs, Inc. abused its position of trust as Wicker-Wicker-Wicker's exclusive sales agent, however, and used its access to Wicker-Wicker-Wicker's designs and floor samples to create almost exact duplicates of Wicker-Wicker-Wicker's most famous and successful designs – designs that have been the subject of articles in numerous design magazines including Architectural Digest and House & Digest, and designs that are part of the permanent collection of the San Francisco Museum of Modern Art. In or about January of 2008, Michael Taylor Designs, Inc. removed Wicker-Wicker-Wicker's floor samples from its showrooms, and replaced them with cheap imitation knock-offs, while continuing to use pictures of Wicker-Wicker-Wicker's actual products in its promotional, internet and advertising materials. Employees of Michael Taylor Designs, Inc. also falsely represented to potential customers that the knock-offs were genuine Wicker-Wicker-Wicker products. And Michael Taylor Designs, Inc. used the same unique designations for the name and title of the furniture designs that it had knocked-off and reproduced in synthetic material that Wicker-Wicker-Wicker created and has used for the last three decades.

## II.

### Parties

2. William Giffen is an individual resident of San Mateo County, California, and he is the personal representative of the estate of Ivy Rosequist and the sole beneficiary of the estate, which upon Ivy Rosequist's death on May 29, 2008, succeeded to the ownership of the sole proprietorship located in San Francisco named Wicker-Wicker-Wicker, as well as to the business's associated intellectual property rights, designs, goodwill, inventory, accounts, slogans, titles, copyrights, trademarks, trade names, customer lists, trade secrets and trade dress, as well as all other design rights, licenses and contracts held by Ivy Rosequist prior to her death. By stipulation filed on February 20, 2009, William Giffen succeeded Ivy Rosequist as the plaintiff in this lawsuit.

3. Defendant Michael Taylor Designs, Inc. is a California corporation, formed in 1985 by Michael Taylor (a renowned designer who died later that year) and Paul J. Weaver, its

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

FIRST AMENDED COMPLAINT

current president. Michael Taylor Designs, Inc. has its principal place of business in San Francisco, California, with showrooms in five locations: San Francisco, Los Angeles, New York, Chicago and Miami.

## III.

### Jurisdiction and Venue

4. This action arises under a federal statute, 15 U.S.C. §1125. Venue is proper in this district in that all defendants reside in this district.

## IV.

### Factual Background

**Wicker Furniture Designs**

5. After 11 years honing her design skills while working at the interior design department of Gumps in San Francisco, Ivy Rosequist in 1970 left to work with an up and coming designer named Michael Taylor. Three years later, while staying in Lake Como, Italy, Ivy Rosequist conceived of a new way to use the wicker weaving process in furniture, and in September of 1973 she created the first wicker chair made with a dual wall construction woven to look like upholstered furniture.

6. This use of the wicker process had never been done before, and when Ms. Rosequist showed the design to Michael Taylor upon returning to San Francisco, he recognized the inspiration and urged her to form a furniture business devoted to wicker – a business that he promised to help promote and use as a furniture source in his own rapidly growing interior design practice. Mr. Taylor even proposed a name for the business: Wicker-Wicker-Wicker.

7. On November 13, 1973, Ms. Ivy Rosequist founded Wicker-Wicker-Wicker as a sole proprietorship headquartered in San Francisco, California, and consistently from that day until her death on May 29, 2008, she owned and operated the business.

8. True to his word, Michael Taylor relied upon Wicker-Wicker-Wicker to supply wicker furniture for his design clients, and he helped promote the new company. From June 17, 1975 through November 28, 1975, Michael Taylor also prepared sketches of proposed furniture pieces for Ms. Rosequist to consider using in Wicker-Wicker-Wicker's burgeoning line

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

3

of furniture pieces.

9. The next summer, in approximately August of 1976, Michael Taylor asked Ivy Rosequist to assist in providing some wicker furniture pieces for an interior design job that he had pending in Los Angeles for the movie star and art collector Jennifer Jones. In September of 1976, Ms. Rosequist created detailed design drawings and specifications for an oversized wicker chair with luxurious fabric shaped cushions and a prominent ball pillow. Ms. Rosequist also located a factory in Hong Kong to manufacture the chairs and she quickly traveled to Hong Kong to oversee the production of the chairs. In November of 1976, she returned to San Francisco with four chairs in tow, which were successfully placed in Jennifer Jones' home to much critical acclaim.

10. The chair immediately became known as the "Jennifer Chair" and it quickly became the core of Wicker-Wicker-Wicker's catalog of wicker furniture designs that has been sold



continuously ever since. Wicker-Wicker-Wicker's current catalog of furniture offerings is attached hereto as Exhibit A. Until his death in 1985, Michael Taylor periodically ordered wicker furniture from Wicker-Wicker-Wicker for his clients, but he was never Wicker-Wicker-Wicker's sole source for customers. Rather, Wicker-Wicker-Wicker established its own customer base and brand following, and engaged numerous showrooms throughout the country to display and sell its designs.

11. Indeed, for more than a decade after defendant Michael Taylor Designs, Inc. was formed in 1985, Wicker-Wicker-Wicker sold its furniture solely through other showrooms and design professionals, and defendant Michael Taylor Designs, Inc. did not have any wicker furniture pieces in its catalogue or on its showroom floors.

12. After the success of the Jennifer Chair, Ivy Rosequist designed, and Wicker-Wicker-Wicker introduced into its furniture line, many other unique and successful pieces. For example, the Lattice Chair was among Wicker-Wicker-Wicker's early furniture

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

4



1    pieces that have had enduring success and that have been

2    continuously part of Wicker-Wicker-Wicker's catalog from

3    approximately 1977 to the present (shown with an open

4    weave, but also available with a closed weave).

5          13. Wicker-Wicker-Wicker's furniture designs enjoyed

6    rapid fame, and in 1978 Patricia Corbin – who was an editor for House & Garden Magazine and

7    a free-lance writer and design columnist – published a book entitled "All About Wicker" that

8    prominently featured color photographs of numerous of Wicker-Wicker-Wicker's furniture

9    designs, including the Jennifer Large Chair (catalog item W1010), the Jennifer Large Sofa

10    (catalog item W1012), the Square Back Chair (catalog item W8010), the Tableskirt Table

11    (catalog item W1401), and the 4 Panel Screen (catalog item W1501).

12          14. From the outset, Wicker-Wicker-Wicker's furniture designs also had distinctive

13    characteristics that made them instantly recognizable to knowledgeable consumers. As Patricia

14    Corbin noted in a 1977 article in the New York Times: "At the top of the wicker heap are

15    designers Michael Taylor for Wicker-Wicker-Wicker . . . Michael Taylor of

16    Wicker-Wicker-Wicker is characterized by over-scaled sizes of squared-off boxy shapes with

17    flat arms."

18          15. Another one of Wicker-Wicker-Wicker's earliest designs was

19    the Tiny Tim chair (catalog item W2010). Additionally, in 1990, Wicker-



20    Wicker-Wicker added the Fishtail Design table base to its collection of

21    wicker furniture (catalog item W1704).

22          16. Wicker-Wicker-Wicker's designs were also recognized as pieces of art, with their

23    unique combination of aesthetic, non-functional elements (including bold, oversized

24    dimensions, white cotton cushions, natural and light color combinations, large diameter reeds,

25    graceful curves and angles and other design elements culminating in what came to be known as

26    the "California Look"). On May 17, 1993, the San Francisco Museum of Modern Art accepted

27    the Large Jennifer Chair as part of its permanent collection.

28          17. In 1998, Wicker-Wicker-Wicker also added the Square End Table to its collection

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

(catalog item W2201). The Square End Table and the Fishtail Design table base were never ordered, sold, placed, commissioned, promoted or introduced into commerce by Michael Taylor, as they were added to Wicker-Wicker-Wicker's collection of furniture designs after Michael Taylor's death.

**Michael Taylor Designs, Inc.**

18. In 1985, Michael Taylor formed a corporation, defendant Michael Taylor Designs, Inc. That corporation focused upon the design and sale of furniture *other than* wicker designs.

19. However, shortly after Michael Taylor's death in 1985, his business partner and the new president of Michael Taylor Designs, Inc. – Paul Weaver – expressed interest in buying the Wicker-Wicker-Wicker business from Ivy Rosequist. These efforts reached a peak in the spring and summer of 1990, but to Mr. Weaver's frustration, the efforts failed. For while Michael Taylor Designs, Inc. wanted to acquire the entirety of Wicker-Wicker-Wicker's business, including its catalog of designs, production contracts and arrangements, customer lists and the like, Ivy Rosequist desired a collaborative relationship in which Michael Taylor Designs, Inc. would act as a sales agent and distributor for Wicker-Wicker-Wicker, in exchange for a 25% commission on all wicker sales.

20. The impasse lasted for sixteen years. Over those years, Wicker-Wicker-Wicker's furniture designs were regularly featured in architectural and design magazines. And Wicker-Wicker-Wicker enjoyed steady business, critical acclaim and a loyal following. Over those same sixteen years, defendant Michael Taylor Designs, Inc. continued to sell, without exception, furniture *other than* wicker furniture.

**The July 26, 2000 License Agreement**

21. Consistent with Michael Taylor's focus as an interior designer prior to his death in 1985, Michael Taylor Designs, Inc. from 1985 onward focused on the sale of antique reproduction furniture and accent pieces, and new designs that emulated and evoked antique aesthetics. This was an area where Ivy Rosequist had substantial experience and expertise, spanning three decades starting in 1959 with her employment at Gumps in San Francisco.

6

22. Ivy Rosequist's expertise and design skills were precisely what Michael Taylor Designs, Inc. needed, and Ivy Rosequist accordingly collaborated with Michael Taylor Designs, Inc. to update, improve and broaden the appeal for many of the core furniture and accent pieces that Michael Taylor Designs, Inc. sold through its 5 showrooms nationwide.

23. On July 26, 2000, Michael Taylor Designs, Inc. and Ivy Rosequist entered into a written license and royalty agreement covering Ivy Rosequist's contribution to the furniture and accent pieces in Michael Taylor Designs, Inc.'s catalog. A true and correct copy of that written agreement is attached hereto as Exhibit B, duly signed by the party to be charged, defendant Michael Taylor Designs, Inc.

24. Under the July 26, 2000 agreement, Michael Taylor Designs, Inc. secured a license to use Ivy Rosequist's design additions and elements, in exchange for a royalty payment to Ivy Rosequist computed at 5% of the net sales price for all items that were sold. The agreement provided for a five-year term, renewable automatically in one year increments unless terminated in writing by either party, with Michael Taylor Designs, Inc.'s right to sell the licensed designs extinguished at the same time as the termination of the agreement.

25. Michael Taylor Designs, Inc. acknowledged the agreement by its course of performance from 2000 through approximately September of 2007, regularly providing royalty reports to Ivy Rosequist along with quarterly royalty payments of approximately $15,000 each quarter.

26. But by the fourth quarter of 2007 – at roughly the same time that Michael Taylor Designs, Inc. was shipping Wicker-Wicker-Wicker's furniture samples off to be copied with cheap synthetic knock-offs (addressed below) – Michael Taylor Designs, Inc. stopped paying royalties under the July 26, 2000 agreement for its use of Ivy Rosequist's design elements.

27. Under that agreement, Ivy Rosequist could only terminate the agreement with thirty days notice following four consecutive quarters of non-payment by Michael Taylor Designs, Inc. In June of 2009, after more than four consecutive quarters of non-payment by Michael Taylor Designs, Inc., plaintiff, as the successor-in-interest to Ivy Rosequist, provided written notice to Michael Taylor Designs, Inc. of the default and demanded that Michael Taylor

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

7

Designs, Inc. either affirm the agreement or terminate it and cease sale of the products covered by the July 26, 2000 agreement. Michael Taylor Designs, Inc. provided no response. By service of this complaint, plaintiff gives further notice that it has elected to terminate the agreement.

28. Michael Taylor Designs, Inc. refused, and continues to refuse, to account for or pay the sums due under the July 26, 2000 agreement. By virtue of its material breach and the termination of the agreement, Michael Taylor Designs, Inc. no longer has any right to sell any of the furniture and accent pieces covered by the agreement – items for which Ivy Rosequist was a significant contributor to the final product design.

**Exclusive Distributorship Agreement – Oral Contract**

29. After nearly six years of successful collaboration pursuant to the July 26, 2000 agreement addressed above, in 2006 Paul Weaver, on behalf of defendant Michael Taylor Designs, Inc., finally agreed to the proposal that Ivy Rosequist had suggested 16 years earlier. Thus, Wicker-Wicker-Wicker orally agreed to exclusively sell its furniture through Michael Taylor Designs, Inc.'s showrooms, with the payment of a 25% commission to Michael Taylor Designs, Inc. on each furniture sale. Michael Taylor Designs, Inc., in turn, acting through its president Paul Weaver, agreed that Wicker-Wicker-Wicker would be the exclusive source of wicker furniture in its showrooms.

30. Michael Taylor Designs, Inc. immediately announced the exclusivity agreement with a promotional mailing that was widely distributed (and which is attached hereto as Exhibit C.) The mailing prominently featured a color photograph of the Large Jennifer Chair and matching ottoman.

31. At all times, Wicker-Wicker-Wicker honored the agreement, and forwarded a 25% commission payment to Michael Taylor Designs, Inc. even if customers contacted Ivy Rosequist directly or stopped by Wicker-Wicker-Wicker's San Francisco business location.

32. Wicker-Wicker-Wicker also paid significant sums for inventory samples to be manufactured and delivered to each of Michael Taylor Designs, Inc.'s five showrooms, where the samples were intended to be displayed to attract customers and sales. Instead of using the

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

8

floor samples to generate sales pursuant to its exclusive distributorship agreement with Wicker-Wicker-Wicker, however, Michael Taylor Designs, Inc. caused the core pieces from the floor samples at the New York showroom to be shipped overseas to be reverse engineered, copied and reproduced as cheap, synthetic knock-off s of the true designs. Michael Taylor Designs, Inc. provided no advance notice to Wicker-Wicker-Wicker, and sought no permission for stealing and reproducing plaintiff's furniture designs.

**Synthetic Knock-Offs Reach the Sales Floor**

33. Rather, on February 13, 2008, Paul Weaver faxed a letter to Wicker-Wicker-Wicker announcing – after the fact -- that Michael Taylor Designs, Inc. had decided to create copies of Wicker-Wicker-Wicker's designs in a synthetic wicker material. Over the years, Wicker-Wicker-Wicker had occasionally had its designs manufactured in a synthetic wicker material. Michael Taylor Designs, Inc.'s February 13, 2008 letter was thus not proposing a unique or new manufacturing process. Rather, it was proposing to steal Wicker-Wicker-Wicker's designs, and it purported to unilaterally establish a 10% royalty fee for the use of Wicker-Wicker-Wicker's established designs. A true and correct copy of the February 13, 2008 letter is attached hereto as Exhibit D.

34. Wicker-Wicker-Wicker responded on March 10, 2008 and unambiguously demanded that Michael Taylor Designs, Inc. "immediately cease any and all efforts to produce, promote, advertise or sell unauthorized copies of Wicker Wicker Wicker's designs." A true and correct copy of the March 10, 2008 response is attached hereto as Exhibit E.

35. After a further exchange of correspondence, Michael Taylor Designs, Inc. on March 20, 2008 stated by faxed letter that "To address your concerns, MTD has abandoned development of items exclusively offered by WWW." The letter also announced that "Michael Taylor Designs will no longer act as sales agent for Wicker Wicker Wicker" and it gave plaintiff until April 11, 2008 to remove furniture samples from the five showrooms. A true and correct copy of the March 20, 2008 letter is attached hereto as Exhibit F.

36. The very next day, Wicker-Wicker-Wicker made arrangements with a moving company to remove its furniture samples from Michael Taylor Designs, Inc.'s Los Angeles

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
**Attorneys at Law**

9

1  showroom, only to discover that the furniture had already been removed from the showroom

2  weeks earlier, without any notice to plaintiff. And on the showroom floor where

3  Wicker- Wicker-Wicker's furniture had previously been displayed were almost exact knockoffs

4  in a natural colored synthetic wicker weave, including direct copies of plaintiff's Lattice Chair

5  (both open and closed weave), the Tiny Tim chair, the Jennifer Large Chair, the Fishtail Design

6  table base, and the Square End Table. These unauthorized synthetic knock-offs were displayed

7  in *precisely* the same location that Wicker-Wicker-Wicker's floor samples had previously

8  occupied, and were even adorned with cushions that were owned Wicker-Wicker-Wicker and

9  offered for sale only with *genuine* Wicker-Wicker-Wicker furniture designs.

10      37. The synthetic knock-offs in the Los Angeles showroom are shown in the photograph

11  below:



23      38. Contrary to the letter of March 20, 2008, Michael Taylor Designs, Inc. had plainly

24  not abandoned its plans to copy Wicker-Wicker-Wicker's designs after all. Rather, the letter

25  was apparently a ruse to postpone plaintiff's discovery that Michael Taylor Designs, Inc. was

26  selling knock-offs until after the international design show called Westweek that began on

27  March 26, 2008 in the Pacific Design Center where Michael Taylor Designs, Inc. has its Los

28  Angeles showroom.

**Seiler Epstein Ziegler & Applegate LLP**
Attorneys at Law

10

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

39. The promotional materials widely circulated by Michael Taylor Designs, Inc. for the patrons of Westweek included traditional advertising flyers and similar written publications that contained photographs of Wicker-Wicker-Wicker's actual furniture (which Michael Taylor Design, Inc. had removed from its showroom and was no longer selling), thus creating a false and disparaging message to consumers that the cheap imitation synthetic knock-offs that were simultaneously displayed on the showroom floors *were* Wicker-Wicker-Wicker's products. The written publications thus directly disparaged the quality of Wicker-Wicker-Wicker's goods.

40. Further, during the period that Michael Taylor Designs, Inc. placed the synthetic knock-offs on its showroom floors (from roughly January through April of 2008), Michael Taylor Designs, Inc.'s sales employees orally told potential customers that the cheap synthetic knock-offs displayed on the showroom floors were Wicker-Wicker-Wicker's goods, thus again disparaging the quality and origin of Wicker-Wicker-Wicker's actual furniture.

41. With its website, Michael Taylor Designs, Inc. also sowed confusion and disparaged the quality and origin of Wicker-Wicker-Wicker's goods, by depicting Wicker-Wicker-Wicker's actual designs when the goods physically displayed on defendant's showroom floors were cheap synthetic knock-offs.

42. Moreover, on its web site, in its written promotional materials, and in the oral sales presentations provided by its employees, Michael Taylor Designs, Inc. changed the title of an outdoor lounge chair that had long been part of its line of designs – a chair constructed through a molding process using reinforced glass fiber. Historically, that chair had been designated and known by the title "faux stone chair," a title bestowed upon it by Michael Taylor before he died.

43. But Michael Taylor Designs, Inc. changed the designation and title of the "faux stone chair" to the "Jennifer chair" – a title and slogan that had been used by Wicker-Wicker-Wicker since its inception in 1976 as a shorthand for the story of the wicker furniture piece's inception as a show piece and favored luxury furniture item for the art collector and film star Jennifer Jones. From its consistent use for over thirty years of the title and slogan "Jennifer chair," Wicker-Wicker-Wicker secured common law ownership of the slogan and title – ownership that was directly infringed by Michael Taylor Designs, Inc.'s change for the title of a non-wicker

11

outdoor chair from the "faux stone chair" to the "Jennifer chair."

44. This lawsuit followed.

IV.

First Cause of Action

(Violation of the Lanham Act)

45. Plaintiff incorporates by reference as though set forth in full the allegations of paragraphs 1 through 44, above.

46. Plaintiff's furniture designs, including without limitations its designs for the Lattice Chair (both open and closed weave), the Jennifer Large Chair, the Tiny Tim chair, the Fishtail Design table base, and the Square End Table, all are highly distinctive, original and unique designs that incorporate nonfunctional elements, including shape, texture, look and feel.

47. Michael Taylor Designs, Inc. has directly copied those nonfunctional and distinctive elements and has displayed the copied furniture for sale in its showrooms.

48. Plaintiff's furniture designs have acquired a secondary meaning, in that knowledgeable consumers associate the overall design and visual elements of, without limitations, the Lattice Chair (both open and closed weave), the Jennifer Large Chair, the Tiny Tim chair, the Fishtail Design table base, and the Square End Table, with Wicker-Wicker-Wicker, and recognize that these furniture pieces have their origin with Wicker-Wicker-Wicker.

49. Consumers are likely to be confused and will naturally assume that the knock-offs that were displayed in Michael Taylor Designs, Inc.'s showrooms in early 2008 were plaintiff's products.

50. By creating, promoting and offering for sale knock-offs and imitations of plaintiff's established furniture designs, including without limitation the Lattice Chair (both open and closed weave), the Jennifer Large Chair, the Tiny Tim chair, the Fishtail Design table base, and the Square End Table, Michael Taylor Designs, Inc. has infringed upon plaintiff's trade dress, in violation of the provisions of section 43(a) of the Lanham Act, 15 U.S.C. §1125.

51. In addition, plaintiff for over 30 years has used the non-descriptive title and slogan "Jennifer" as a designator for its most popular line of furniture. Plaintiff is informed and

12

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
Attorneys at Law

1   believes, and thereon alleges, that in promoting the synthetic knock-offs of plaintiff's designs,

2   Michael Taylor Designs, Inc. is also using the Jennifer title, slogan and mark.

3   52. Further, in its oral, written and internet publications, Michael Taylor Designs, Inc.

4   has changed the designation and title of the "faux stone chair" to the "Jennifer chair" – a title

5   and slogan that had been used by Wicker-Wicker-Wicker since its inception in 1976 as a

6   shorthand for the story of the wicker furniture piece's inception as a show piece and favored

7   luxury furniture item for the art collector and film star Jennifer Jones.  From its consistent use

8   for over thirty years of the title and slogan "Jennifer chair," Wicker-Wicker-Wicker secured

9   common law ownership of the slogan and title – ownership that was directly infringed by

10  Michael Taylor Designs, Inc.'s change for the title of its non-wicker outdoor chair from the

11  "faux stone chair" to the "Jennifer chair."

12  53. Defendant's actions, unless enjoined, will cause irreparable harm and injury to

13  plaintiff and to consumers, in that it will substantially dilute and tarnish plaintiff's established

14  trade dress, disparage the origin and quality of plaintiff's goods, and mislead consumers about

15  the true origins and nature of the cheap synthetic knock-offs.  In addition to money damages,

16  plaintiff is accordingly entitled to both a preliminary and permanent injunction prohibiting the

17  display, promotion, sale or offering for sale of any wicker furniture (a) copied from plaintiff's

18  established furniture designs; (b) attributed to the design work by Michael Taylor; (c) designated

19  in any way as part of the Jennifer collection; or (d) likely to cause confusion to consumers about

20  the origin of the furniture.

21  54. Plaintiff has and will continue to be damaged by virtue of defendant's unlawful

22  conduct, in a sum as yet undetermined but reasonably believed to exceed $100,000.

23  55. Under section 35 of the Lanham Act (15 U.S.C. §1117), the court may award up to

24  three times plaintiff's actual damages and, since exceptional circumstances exist, plaintiff is

25  entitled to recover not only its costs of suit, but also reasonable attorney's fees.

26  WHEREFORE, Plaintiff prays for relief as set forth below.

27  //

28  //

13

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
Attorneys at Law

V.

Second Cause of Action

(Breach of Oral Contract)

56.  Plaintiff incorporates by reference as though set forth in full the allegations of paragraphs 1 through 55, above.

57.  In 2006, plaintiff and defendant entered into an oral contract, whereby Wicker-Wicker-Wicker agreed to exclusively sell its furniture through Michael Taylor Designs, Inc.'s showrooms, with the payment of a 25% commission to Michael Taylor Designs, Inc. on each furniture sale.  Michael Taylor Designs, Inc., in turn, acting through its president Paul Weaver, agreed that Wicker-Wicker-Wicker would be the exclusive source of wicker furniture in its showrooms, and agreed to use its best efforts to promote and sell Wicker-Wicker-Wicker's furniture.

58. By virtue of the covenant of good faith and fair dealing, as well as industry custom and practice, the parties also agreed to act in a commercially reasonable manner with respect to such things as providing notice of the termination of the exclusive relationship.

59. Plaintiff performed all tasks required of it under the parties' agreement.

60. Michael Taylor Designs, Inc. breached the parties' agreement by:  (a) failing since approximately November of 2007 to exercise reasonable efforts to market and sell Wicker-Wicker-Wicker's designs; (b) abusing its position of trust as plaintiff's exclusive sales agent to create knock-offs of plaintiff's designs to be sold in direct competition to plaintiff; (c) removing plaintiff's furniture from its showrooms without notice to plaintiff; and (d) terminating the agreement without reasonable commercial notice and without the opportunity for an orderly transition to a new sales agent.

61. By virtue of Michael Taylor Designs, Inc.'s breach of the parties' contract, plaintiff has been damaged in a sum to be proved at trial and reasonably believed to exceed $50,000.

WHEREFORE plaintiff prays for relief as set forth below.

//

//

14

VI.

Third Cause of Action

(Breach of Written Contract)

62. Plaintiff incorporates by reference as though set forth in full the allegations of paragraphs 1 through 61, above.

63. On July 26, 2000, Michael Taylor Designs, Inc. and Ivy Rosequist entered into a written license and royalty agreement covering the royalty and licensing rights arising from Ivy Rosequist's contribution to the (non-wicker) furniture and accent pieces in Michael Taylor Designs, Inc.'s catalog. A true and correct copy of that written agreement is attached hereto as Exhibit B, duly signed by the party to be charged, defendant Michael Taylor Designs, Inc.

64. Under the July 26, 2000 agreement, Michael Taylor Designs, Inc. secured a license to use Ivy Rosequist's design additions and elements, in exchange for a royalty payment computed at 5% of the net sales price for all items that were sold. The agreement provided for a five-year term, renewable automatically in one year increments unless terminated in writing by either party.

65. Michael Taylor Designs, Inc. acknowledged the agreement by its course of performance from 2000 through approximately September of 2007, regularly providing royalty reports to Ivy Rosequist with quarterly royalty payments of approximately $15,000 each quarter.

66. But by the fourth quarter of 2007 – at roughly the same time that Michael Taylor Designs, Inc. was shipping Wicker-Wicker-Wicker's furniture samples off to be copied with cheap synthetic knock-offs (addressed in the first cause of action above) – Michael Taylor Designs, Inc. stopped paying royalties under the July 26, 2000 agreement for its use of Ivy Rosequist's designs.

67. Under that agreement, Ivy Rosequist could only terminate the agreement with thirty day's notice following four consecutive quarters of non-payment by Michael Taylor Designs, Inc. In June of 2009, after more than four consecutive quarters of non-payment by Michael Taylor Designs, Inc., plaintiff, as the successor-in-interest to Ivy Rosequist, provided

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

15

written notice to Michael Taylor Designs, Inc. of the default and demanded that Michael Taylor Designs, Inc. either affirm the agreement or terminate it and cease sale of the products covered by the July 26, 2000 agreement. Michael Taylor Designs, Inc. provided no response.

68. Michael Taylor Designs, Inc. refused, and continues to refuse, to account for or pay the sums due under the July 26, 2000 agreement.

69. Plaintiff, in contrast, has performed all obligations required of it under the written agreement.

70. By virtue of its material breach and the termination of the agreement, Michael Taylor Designs, Inc. no longer has any right to sell any of the furniture and accent pieces covered by the agreement.

71. By virtue of defendant's breach of the July 26, 2000 agreement, plaintiff has been damaged in a sum, according to proof, believed to exceed $100,000.

72. Further, defendant's continuing sale of furniture pieces for which it no longer has a license is, in addition to a breach of the parties' written agreement, a violation of the Lanham Act and an unfair and unlawful business practice under California law.

73. Under section 35 of the Lanham Act (15 U.S.C. §1117), the court may award up to three times plaintiff's actual damages and, since exceptional circumstances exist, plaintiff is entitled to recover not only its costs of suit, but also reasonable attorney's fees.

WHEREFORE, Plaintiff prays for relief as set forth below.

VII.

Fourth Cause of Action

(Slander of Goods / Slander of Title)

74. Plaintiff incorporates by reference as though set forth in full the allegations of paragraphs 1 through 73, above.

75. Through its acts and omissions as set forth above, Michael Taylor Designs, Inc. has through written publication, oral publication and through electronic publication, including on its internet site, disparaged the quality and origin of Wicker-Wicker-Wicker's goods.

76. The promotional materials widely circulated by Michael Taylor Designs, Inc. for the

16

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

patrons of Westweek included traditional advertising flyers and similar written publications that contained photographs of Wicker-Wicker-Wicker's actual furniture (which Michael Taylor Design, Inc. had removed from its showroom and was no longer selling), thus creating a false and disparaging message to consumers that the cheap imitation synthetic knock-offs that were simultaneously displayed on the showroom floors *were* Wicker-Wicker-Wicker's products.  The written publications thus directly disparaged the quality of Wicker-Wicker-Wicker's goods.

77. Further, during the period that Michael Taylor Designs, Inc. placed the synthetic knock-offs on its showroom floors (from roughly January through April of 2008), Michael Taylor Designs, Inc.'s sales employees orally told potential customers that the cheap synthetic knock-offs displayed on the showroom floors were Wicker-Wicker-Wicker's goods, thus again disparaging the quality and origin of Wicker-Wicker-Wicker's actual furniture.

78. With its website, Michael Taylor Designs, Inc. also sowed confusion and disparaged the quality and origin of Wicker-Wicker-Wicker's goods, by depicting Wicker-Wicker-Wicker's actual designs when the goods physically displayed on defendant's showroom floors were cheap synthetic knock-offs.

79. The damage to Wicker-Wicker-Wicker by the disparagement is serious and continuing, and believed to exceed $100,000.

80. Further, Michael Taylor Designs, Inc. has misleadingly and without reasonable cause slandered plaintiff's title to that personalty consisting of:  (a) plaintiff's trade dress rights in its furniture designs and goods; (b) plaintiff's common law rights to the ownership of the title, designation, slogan and mark "Jennifer chair"; and (c) plaintiff's ownership of and right to use the wicker designs that are the foundation of its business.

81. The disparagement and slander of plaintiff's title, including through the letter attached hereto as Exhibit F and the cross-complaint filed herein, has caused severe damage and distress to Wicker-Wicker-Wicker's business, preventing plaintiff from establishing new sales outlets for its furniture designs.  After all, why would anyone incur the costs of adding a furniture line to their portfolio in the face of Michael Taylor Designs, Inc.'s threatened and asserted right to undercut the market with cheap, reverse-engineered and illegally copied knock-

17

1    offs?

2        82. By virtue of Michael Taylor Designs, Inc.'s slander of plaintiff's title,

3    Wicker-Wicker-Wicker has been further damaged in a sum to be proved at trial and reasonably

4    believed to exceed $500,000.

5        WHEREFORE plaintiff prays for relief as set forth below.

6                                          VIII.

7                            Fifth Cause of Action

8              (Damage and Destruction of Personal Property)

9        83. Plaintiff incorporates by reference as though set forth in full the allegations of

10   paragraphs 1 through 82, above.

11       84. Following the 2006 oral agreement that is the subject of the second cause of action,

12   above, Wicker-Wicker-Wicker, at its own expense, caused inventory and floor samples of its

13   furniture designs to be sent to Michael Taylor Designs, Inc.'s five showrooms.  Title and

14   ownership of these furniture pieces at all times remained vested in plaintiff.

15       85. By virtue of the agency and fiduciary relationship between the parties, however,

16   physical control and custody of the inventory and floor samples rested with defendant Michael

17   Taylor Designs, Inc.

18       86. Michael Taylor Designs, Inc. destroyed, lost or absconded with several furniture

19   pieces that had been placed by plaintiff in Michael Taylor Designs, Inc.'s New York showroom,

20   forever failing to return these pieces to plaintiff and instead shipping them overseas to be

21   reverse-engineered and copied so that Michael Taylor Designs, Inc. could sell illegal, synthetic

22   knock-offs of plaintiff's furniture designs.

23       87. In addition, Michael Taylor Designs, Inc. damaged further inventory pieces,

24   including those placed in the Los Angeles showroom, by recklessly, carelessly and in

25   contravention of the agreement between the parties, removing the pieces from the showroom

26   floor and placing them, unprotected, in a dusty and dirty storage facility.

27       88. By these acts and omissions, defendant has caused physical loss and damage to

28   personal property owned by plaintiff, causing damage to plaintiff in a sum to be proved at trial

*SEILER EPSTEIN ZIEGLER & APPLEGATE LLP*
*Attorneys at Law*

18

and believed to exceed $50,000.

WHEREFORE plaintiff prays for relief as set forth below.

IX.

Sixth Cause of Action

(Negligence)

89. Plaintiff incorporates by reference as though set forth in full the allegations of paragraphs 1 through 88, above.

90. Through its acts and omissions as set forth above, Michael Taylor Designs, Inc. failed to comport itself with the reasonable care and prudence exercised by like-situated businesses in the community. Michael Taylor Designs, Inc. was careless in its handling of plaintiff's inventory and floor samples, and Michael Taylor Designs, Inc. was careless in its statements, advertising and publications.

91. By reason of Michael Taylor Designs, Inc.'s negligence, plaintiff has been damaged in a sum, to be proved at trial, reasonably believed to exceed $100,000.

WHEREFORE plaintiff prays for relief as set forth below.

X.

Seventh Cause of Action

(False Promise)

92. Plaintiff incorporates by reference as though set forth in full the allegations of paragraphs 1 through 91, above.

93. Plaintiff is informed and believes, and thereon alleges, that when it entered into the oral agreement that is the subject of the second cause of action above, Michael Taylor Designs, Inc. had no intention of abiding by the contractual agreement but rather intended from the outset to become established as the exclusive sales agent for Wicker-Wicker-Wicker so that Michael Taylor Designs, Inc. could secure access to plaintiff's inventory, designs and floor samples in order to create cheap duplicates and effectively steal plaintiff's business.

94. Plaintiff's belief is based upon: (a) the short period between defendant's entry into the oral agreement and its introduction of cheap, synthetic knock-offs of plaintiff's designs;

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

19

(b) defendant's sixteen year refusal to accept anything other than a complete acquisition of plaintiff's business; (c) Ivy Rosequist's ill-health that created an opportunity for defendant to take advantage of her physical inability to closely monitor the performance or misfeasance of Michael Taylor Designs, Inc.; (d) the content and tone of the correspondence from Michael Taylor Designs, Inc., attached hereto as Exhibits D and F; (e) defendant's simultaneous refusal and failure to pay the royalties due to plaintiff under the July 26, 2000 agreement; and (f) defendant's uncharacteristic failure to document the parties' agreement in writing.

95. Plaintiff believed and relied upon Michael Taylor Designs, Inc.'s promises, as part of the oral agreement that is the subject of the second cause of action above, to act as the exclusive sales agent for Wicker-Wicker-Wicker. Among other things, plaintiff expended in excess of $70,000 to place inventory and floor samples in Michael Taylor Designs, Inc.'s five showrooms. And plaintiff forewent other distributorship opportunities, all in the reasonable and good faith reliance upon defendant's representations and promises.

96. Defendant responded to plaintiff's reliance by abusing its position of trust as Wicker-Wicker-Wicker's exclusive sales agent, and instead used its access to Wicker-Wicker-Wicker's designs and floor samples to create almost exact duplicates of Wicker-Wicker-Wicker's most famous and successful designs.

97. By virtue of defendant's fraud, plaintiff has been damaged in a sum to be proved at trial and reasonably believed to exceed $500,000.

98. In its acts and misfeasance as set forth above, Michael Taylor Designs, Inc. acted with fraud, oppression and malice, and with a conscious intent and desire to harm plaintiff, abscond with plaintiff's rightful intellectual property and business assets and goodwill, utilizing and resorting to despicable conduct and embarking on a loathsome strategy to take financial advantage of Ivy Rosequist at a time that she was deathly ill. Accordingly, in addition to actual damages, defendants should be subjected to and required to pay punitive and exemplary damages, by way of punishment and example.

WHEREFORE plaintiff prays for relief as set forth below.

//

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

20

FIRST AMENDED COMPLAINT

<u>Prayer</u>

Plaintiff prays for relief as follows:

1.  For general damages according to proof in a sum exceeding $500,000;

2.  For a preliminary and permanent injunction prohibiting the display, promotion, sale or offering for sale of any wicker furniture (a) copied from plaintiff's established furniture designs; (b) attributed to the design work by Michael Taylor; (c) designated in any way as part of the Jennifer collection; or (d) likely to cause confusion to consumers.

3.  For a trebling of plaintiff's actual damages pursuant to section 35 of the Lanham Act;

4.  On the seventh cause of action, for punitive damages by way of punishment and example;

5.  For costs of suit incurred;

6.  For reasonable attorney's fees; and

7.  For such further relief as the Court deems to be just and proper.

DATED:  October 21, 2009

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP


By:  _____/s/_____
       Douglas A. Applegate

Attorneys for plaintiff William Giffen,
successor-in-interest to Ivy Rosequist, individually
and dba Wicker-Wicker-Wicker

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

FIRST AMENDED COMPLAINT

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED:  October 19, 2009

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP


By:  _____/s/_____
        Douglas A. Applegate

Attorneys for plaintiff William Giffen,
successor-in-interest to Ivy Rosequist, individually
and dba Wicker-Wicker-Wicker

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

FIRST AMENDED COMPLAINT