1

**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Andrew M. Sussman (SBN 112418)
18400 Von Karman, Suite 300
Irvine, California  92612
Telephone:      (949) 553-1010
Facsimile:      (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com
ams@gauntlettlaw.com

Attorneys for Plaintiff
Michael Taylor Designs, Inc.

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA**

11

**SAN FRANCISCO DIVISION**

12

13

14

MICHAEL TAYLOR DESIGNS, INC., a
California corporation,

15

Plaintiff,

16

vs.

17

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, a Connecticut
corporation

18

19

Defendant.

20

Case No.:  C10-02432 RS

Hon. Richard Seeborg

**PLAINTIFF MICHAEL TAYLOR
DESIGNS, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
TRAVELERS PROPERTY CASUALTY
COMPANY'S DUTY TO DEFEND**

Date:          August 5, 2010
Time:          1:30 p.m.
Courtroom:     3, 17th Floor

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     SUMMARY OF ARGUMENT ................................................................. 1

II.    THE COMPLAINT ALLEGATIONS COMPEL A DEFENSE UNDER THE
       POLICY ................................................................................................... 2

       A.    Travelers' CGL Policy's Web Xtend Liability Endorsement ................. 2

       B.    Wicker's Complaint Allegations of Implicit Disparagement ................. 3

III.   TENDER OF CLAIM AND TRAVELERS' INITIAL DENIAL ................. 4

IV.    TRAVELERS' DUTY TO DEFEND ARISES WHERE THERE IS MERELY A
       POTENTIAL FOR COVERAGE ............................................................ 5

       A.    The Duty to Defend Is *Not* Equivalent to the Duty to Indemnify ......... 5

       B.    A Factual Dispute About Whether Disparagement Is Alleged Itself
             Creates a Duty to Defend Here ............................................................ 7

       C.    Facts Pled or Reasonably Inferable, Not Legal Labels, Trigger Duty to
             Defend ................................................................................................. 8

V.     DISPARAGEMENT      COVERAGE      IS      IMPLICATED      BY      FACT
       ALLEGATIONS ...................................................................................... 9

       A.    Elements Required to Trigger Coverage ............................................. 9

             1.     Publication .............................................................................. 9

             2.     "Disparages a [] Organization's Goods [or] Products" ............. 9

             3.     Damages ................................................................................. 12

       B.    The Doctrine of Relation-Back Requires a Defense from the Date the
             Original Complaint Was First Tendered ............................................ 13

       C.    Facts Available to Travelers Independently Triggered a Duty to Defend ......... 17

       D.    Disparaging Conduct Occurred During Travelers' Policy Period ........ 20

VI.    MTD IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS'
       FEES AND PREJUDGMENT INTEREST ............................................ 21

       A.    MTD Is Entitled to Reasonable Attorneys' Fees Without Limitation by
             California Civil Code § 2860 ............................................................ 21

       B.    Travelers Acknowledged MTD's Right to "Reasonable and Necessary"
             Defense Expenses Not Limited by §2860 Incurred From October 21, 2009
             Through January 12, 2010 .................................................................. 22

       C.    MTD Is Entitled to Prejudgment Interest from the Date of Each Invoice ......... 24

VII.   CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Align Technology, Inc. v. Federal Ins. Co.,*
673 F. Supp. 2d 957 (N.D. Cal. 2009) ..................................................................... 5

*American Guar. & Liab. Ins. Co. v. Vista Med. Supply,*
699 F. Supp. 787 (N.D. Cal. 1988) .......................................................................... 8

*American Simmental Ass'n v. Coregis Ins. Co.,*
75 F. Supp. 2d 1023 (D. Neb. 1999) ...................................................................... 15

*American Simmental Ass'n v. Coregis Ins. Co.,*
107 F. Supp. 2d 1064 (D. Neb. 2000) .................................................................... 15

*American Simmental Ass'n v. Coregis Ins. Co.,*
282 F.3d 582 (8th Cir. (Neb.) 2002) ...................................................................... 15

*Anthem Electronics, Inc. v. Pacific Employers Ins. Co.,*
302 F.3d 1049 (9th Cir. 2002) .......................................................................... 6, 17

*Arnette Optic Illusions, Inc. v. ITT Hartford Group,*
43 F. Supp. 2d 1088 (C.D. Cal. 1998) ............................................................. 18, 21

*Atmel Corp. v. St. Paul Fire & Marine,*
426 F. Supp. 2d 1039 (N.D. Cal. 2005) ................................................................. 23

*DecisionOne Corp. v. ITT Hartford Ins. Group,*
942 F. Supp. 1038 (E.D. Pa. 1996) .......................................................................... 4

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.,*
590 F. Supp. 2d 1244 (N.D. Cal. (San Jose Div.) 2008) ........................................ 11

*Fireman's Fund Ins. Co. v. National Bank for Cooperatives,*
849 F. Supp. 1347 (N.D. Cal. 1994) ...................................................................... 18

*Hyundai Motor Am. v. National Union Fire Ins. Co. of Pittsburgh, PA,*
600 F.3d 1092 (9th Cir. (Cal.) 2010) ..................................................................... 18

*New Hampshire Ins. Co. v. R.L. Chaides Constr. Co., Inc.,*
847 F. Supp. 1452 (N.D. Cal. 1994) ...................................................................... 17

*Pension Trust Fund v. Federal Ins. Co.,*
307 F.3d 944 (9th Cir. 2002) ................................................................................... 8

*State Farm Mut. Auto. Ins. Co. v. Martinez-Lozano,*
916 F. Supp. 996 (E.D. Cal. 1996) ........................................................................ 18

*Trustees of Univ. of Penn. v. Lexington Ins. Co.,*
815 F.2d 890 (3d Cir. 1987) .................................................................................. 24

**STATE CASES**

*American Cyanamid Co. v. American Home Assur. Co.*,
    30 Cal. App. 4th 969 (1994) ........................................................................ 7

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
    100 Cal. App. 4th 1017 (2002) .................................................................... 8

*Barnett v. Fireman's Fund Ins. Co.*,
    90 Cal. App. 4th 500 (2001) ........................................................................ 8

*Belmonte v. Employers Ins. Co.*,
    83 Cal. App. 4th 430 (2000) ........................................................................ 6

*CalFarm Ins. Co. v. Krusiewicz*,
    131 Cal. App. 4th 273 (2005) .................................................................... 23

*California Shoppers, Inc. v. Royal Globe Ins. Co.*,
    175 Cal. App. 3d 1 (1985) .......................................................................... 18

*CNA Cas. of Cal. v. Seaboard Sur. Co.*,
    176 Cal. App. 3d 598 (1986) ................................................................ 5, 18

*Egan v. Mutual of Omaha Ins. Co.*,
    24 Cal. 3d 809 (1979) ................................................................................ 17

*Eigner v. Worthington*,
    57 Cal. App. 4th 188 (1997) ................................................................ 17, 18

*Frontier Oil Corp. v. RLI Ins. Co.*,
    153 Cal. App. 4th 1436 (2007) .................................................................... 7

*Intergulf Development v. Superior Court*,
    183 Cal. App. 4th 16 (2010) ...................................................................... 22

*KPFF, Inc. v. California Union Ins. Co.*,
    56 Cal. App. 4th 963 (1997) ...................................................................... 18

*Liberty Mut. Ins. Co. v. OSI Indus., Inc.*,
    831 N.E.2d 192 (Ind. Ct. App. 2005) ........................................................ 11

*Mirpad, LLC v. California Ins. Guar. Ass'n*,
    132 Cal. App. 4th 1058 (2005) .................................................................... 7

*Montrose Chemical Corp. v. Superior Ct.*,
    6 Cal. 4th 287 (1993) .............................................................................. 5, 6

*Motorola, Inc. v. Associated Indem. Corp.*,
    878 So. 2d 824 (La. Ct. App. 2004) ............................................................ 7

*North American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.*,
    137 Cal. App. 4th 627 (2006) ...................................................................... 6

*Scottsdale Ins. Co. v. MV Transp.*,
    36 Cal. 4th 643 (2005) ............................................................................ 7, 8

*Stark Liquidation Co. v. Florists' Mut. Ins. Co.*,
   243 S.W.3d 385 (Mo. Ct. App. 2007) ........................................................................ 7

*State of Cal. v. Pacific Indem. Co.*,
   63 Cal. App. 4th 1535 (1998) ................................................................................... 21


**DOCKETED CASES**

*Arquilla v. International Ins. Co.*,
   No. C-86-5980 MHP, 1988 U.S. Dist. LEXIS 17576 (N.D. Cal. July 15, 1988) ........................ 18

*Concept Enters., Inc. v. Hartford Ins. Co. of the Midwest*,
   No. CV 00-7267 NM (JWJx), 2001 WL 34050685 (C.D. Cal. May 22, 2001) ...................... 21, 22

*Copart, Inc. v. Travelers Indem. Co.*,
   No. C-97-1862-VRW, 1999 WL 977948 (N.D. Cal. Oct. 22, 1999) ................................... 24

*Fossil, Inc. v. Fireman's Fund Ins. Co.*,
   No. C99-5023 MHP (N.D. Cal. (S.F.) July 12, 2000) ................................................. 13

*Fossil, Inc. v. Fireman's Fund Ins. Co.*,
   No. C99-5023 MHP (N.D. Cal. (S.F.) June 22, 2001) ................................................ 13

*Hudson Ins. Co. v. Colony Ins. Co.*,
   No. EDCV 07-01497-SGL (OPx), 2008 WL 5504572 (C.D. Cal. Dec. 16, 2008)................ 20, 21

*JACO Environmental, Inc. v. American International Specialty Lines Ins. Co.*,
   No. 2:09-cv-0145 JLR, 2009 WL 1591340 (W.D. Wash. May 19, 2009) .............................. 16

*LensCrafters, Inc. v. Liberty Mutual Fire Ins. Co.*,
   No. C 04-1001-SBA, 2005 WL 146896 (N.D. Cal. Jan. 20, 2005) .................................... 9

*Longs Drug Stores Calif., Inc. v. Federal Ins. Co.*,
   No. C 03-01746 JSW, 2005 WL 2072296 (N.D. Cal. Aug. 26, 2005) ............................ 24, 25

*Nelson v. West Am. Ins. Co.*,
   No. B143838, 2004 WL 1302500 (Cal. Ct. App. June 14, 2004) ................................ 8, 18-19

*Pennfield Oil Co. v. American Feed Indus. Ins. Co. Risk Retention Group, Inc.*,
   No. 8:05CV315, 2007 WL 1290138 (D. Neb. March 12, 2007) ..................................... 11

*UMG Recordings, Inc. v. American Home Assur. Co.*,
   No. 06-56076, 2008 WL 4107315 (9th Cir. (Cal.) Sept. 2, 2008) ..................................... 4


**FEDERAL RULES**

CIVIL LOCAL RULE 7-2 .................................................................................... 1

CIVIL LOCAL RULE 56-1 .................................................................................. 1

FED. R. CIV. P. 56 ......................................................................................... 1

**STATE STATUTES**

CAL. CIV. CODE § 2860 ................................................................................................ 21, 22, 23

CAL. CIV. CODE § 3289 .......................................................................................................... 24

CAL. CIV. CODE § 3289(b) ...................................................................................................... 25

**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**CASE NO. C10-02432 RS**

**PLEASE TAKE NOTICE** that, pursuant to Fed. R. Civ. P. 56 and Civil Local Rules 56-1 and 7-2 of the United States District Court for the Northern District of California, at the United States Courthouse, 17th Floor, Courtroom 3, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Michael Taylor Designs, Inc. ("MTD") will move on August 5, 2010 at 1:30 p.m. or as soon thereafter as counsel may be heard, for summary judgment on the ground that Defendant Travelers Property Casualty Company of America ("Travelers") owed a duty to defend MTD in the case styled as *Ivy Rosequist, individually and doing business as Wicker-Wicker-Wicker v. Michael Taylor Designs, Inc.*, Northern District of California, Case No. 08-1588-SBA ("the *Rosequist* action") and then breached this duty to defend.

Plaintiff MTD moves for a summary judgment in its favor that:  (1) The factual allegations in the underlying Complaint and the extrinsic evidence available and known to Travelers evidenced potential coverage triggering Travelers' duty to defend MTD in the *Rosequist* action from the date of notice, March 31, 2008; and (2) By refusing to pay MTD's defense expenses from the date of tender until the filing of the First Amended Complaint on October 21, 2009, as well as from the filing of the First Amended Complaint until Travelers' appointment of counsel on January 12, 2010, Travelers breached its duty to defend MTD in the *Rosequist* action.

## I.       SUMMARY OF ARGUMENT

Travelers belatedly recognized that a defense is due to MTD in light of the fact allegations of disparagement in the underlying First Amended Complaint ("FAC").    Thereafter, Travelers appointed defense counsel and is currently defending the *Rosequist* action.  Nevertheless, the same facts were alleged in the original complaint.  The FAC merely labeled a new cause of action for disparagement clarifying but not significantly expanding the earlier fact allegations evidencing a potential disparagement claim.  Travelers, therefore, had a duty to defend from the inception of the *Rosequist* action.  Yet it refused to defend and thereby breached its duty to MTD.

The underlying original complaint ("Complaint") expressly alleged that MTD's conduct was "disparaging," thereby triggering potential coverage under the policy's "personal injury" "oral [or] written … publication of material that … disparages a[n] … organization's … goods [or] products …" offense.  The Complaint alleged that MTD and the underlying claimant ("Wicker") had

1    an agreement making MTD the exclusive distributor, and Wicker the exclusive supplier, of critically

2    acclaimed premium wicker furniture.  After a time, MTD terminated the agreement and allegedly

3    began to produce and display its own allegedly "cheap synthetic knockoffs" of Wicker's furniture.

4    However, in advertising its "cheap synthetic knockoffs," MTD allegedly used photographs of

5    Wicker's premium furniture in its promotional materials.  This conduct allegedly misled consumers

6    as to the origins of MTD's "cheap synthetic knockoffs," influencing them to believe that the inferior

7    furniture was produced by Wicker, especially since Wicker had long been MTD's exclusive

8    supplier.

9         Consumers were allegedly influenced to believe that Wicker produced "cheap" and

10   "synthetic" wicker furniture.  This purportedly allegedly diluted and tarnished Wicker's products.

11   Wicker necessarily asserted by implication that MTD's public statements disparaged its products by

12   influencing customers to believe that the cheap synthetic knockoffs offered by MTD were produced

13   by Wicker, causing customers to think less of Wicker's furniture.

14        Although Wicker more specifically alleged in its FAC that this very conduct was

15   "disparaging," inferences from the Complaint, viewed in light of the allegations of the FAC, compel

16   a finding that the defense duty arose upon initial notice to Travelers of the Complaint.  An

17   independent duty to defend also arose because the facts available to Travelers through MTD's

18   website established a basis for potential coverage under the "disparagement" offense.

19        By denying MTD a defense from the date the Complaint was tendered until the filing of the

20   FAC, Travelers breached its duty to defend.  MTD is therefore entitled to reimbursement for all

21   necessary and reasonable defense fees incurred from the initial tender as well as prejudgment interest

22   at the legal rate of 10% per annum from the date of each invoice.

23   **II.    THE COMPLAINT ALLEGATIONS COMPEL A DEFENSE UNDER THE POLICY**

24        **A.    Travelers' CGL Policy's Web Xtend Liability Endorsement**

25        Travelers' "Web Xtend Liability" endorsement to MTD's Commercial General Liability

26   Policy ("CGL"), No. Y-630-0797C933-TIL-07 for the period September 14, 2007 through

27   September 14, 2008, requires Travelers to defend and indemnify MTD for damages caused by a

28   "Personal Injury" offense of disparagement committed during the policy period.  It states in pertinent

part:

**COVERAGE B.  PERSONAL INJURY, ADVERTISING INJURY AND WEB SITE INJURY LIABILITY**
**1.     Insuring Agreement**
**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" . . . to which this insurance applies.  **We will have the right and duty to defend** the insured against any "suit" seeking those damages.
                    . . . .
**b.**     This insurance applies to:
            (1)     "**Personal injury" caused by an offense arising out of your business**, excluding advertising, publishing, broadcasting or telecasting done by or for you; or . . . .
. . . .
"Personal injury" means injury, other than "bodily injury", arising from one or more of the following offenses:
. . . .
            **d.**     Oral, written or electronic **publication of material that** slanders or libels a person or organization or **disparages a person's or organization's goods, products or services**, provided the claim is made or "suit" is brought by a person or **organization** that claims to have been slandered or libeled, or **whose goods, products or services have allegedly been disparaged** . . . .

[Kroon Decl. ¶ 3, **Exhibit "1"** (emphasis added)]

**B.     Wicker's Complaint Allegations of Implicit Disparagement**

Wicker filed its Complaint against MTD on March 31, 2008 in a suit styled *Ivy Rosequist, individually and doing business as Wicker-Wicker-Wicker v. Michael Taylor Designs, Inc.*, Northern District of California, Case No. 08-1588-SBA ("the *Rosequist* action").   The original Complaint alleged:

            27.     **The promotional materials widely circulated by [MTD] for the patrons of Westweek includes (sic) photographs of   Wicker-Wicker-Wicker's actual furniture (which [MTD] has removed from its showroom and is no longer selling), compounding the high risk that customers will visit [MTD] looking for Wicker-Wicker-Wicker's furniture, only to be unknowingly steered instead to cheap imitation knockoffs.**
. . . .
            32.     Plaintiff's furniture designs have acquired a secondary meaning, in that knowledgeable customers associate the overall design and visual elements of [the above-identified furniture] and recognize that these furniture pieces have their origin with Wicker-Wicker-Wicker.

            33.     **Consumers are likely to be confused and will naturally assume that the knock-offs currently being displayed in [MTD's] showrooms are plaintiff's products.**
. . . .
            36.     Defendant's action, unless enjoined, will cause irreparable harm and injury to plaintiff and to consumers, in that **it will substantially dilute and tarnish plaintiff's established trade dress and mislead consumers about the true origins and nature**

1    **of the cheap synthetic knock-offs**.  [Emphasis added.]

2    [Kroon Decl. ¶ 4, **Exhibit "2"**]

3         The fact allegations in the *Rosequist* Complaint created a potential for coverage under the

4    disparagement "personal injury" offense in Travelers' policy.  " 'Disparagement' has been held to

5    include 'statements about a competitor's goods . . . that are untrue or misleading and are made to

6    influence potential purchasers not to buy.' "[1]  Since MTD's promotional materials using Wicker

7    photographs allegedly misled potential purchasers into believing that Wicker produced "cheap

8    synthetic knockoff" furniture, it potentially influenced consumers not to buy Wicker products.

9    Therefore, the fact allegations trigger Travelers' duty to defend under the Complaint.

10    **III.    TENDER OF CLAIM AND TRAVELERS' INITIAL DENIAL**

11         MTD gave notice of the Complaint to Travelers on March 31, 2008.  [Kroon Decl. ¶ 7]

12    Travelers denied coverage of the *Rosequist* action on April 15, 2008 on the grounds that "none of

13    [Wicker's] claims implicate any of the offenses enumerated in the definition of 'personal injury',

14    'advertising injury' or 'web site injury' " in the CGL policy.  [Kroon Decl. ¶ 8, **Exhibit "4"**]

15    Nowhere in its letter did Travelers assert any exclusions in the CGL policy that it claimed barred

16    coverage of the *Rosequist* action.  [Kroon Decl. ¶ 8, **Exhibit "4"**]  MTD retendered the *Rosequist*

17    action and requested that Travelers reconsider its position on February 27, 2009, but Travelers did

18    not respond to MTD's request despite several attempts by MTD to obtain a response.  [Kroon Decl.

19    ¶¶ 9, 10, **Exhibits "5," "6," "7"**]

20         William Giffen[2] ("Giffen"), the successor-in-interest to Ivy Rosequist's estate, then filed a

21    first amended complaint ("FAC") in the *Rosequist* action on October 21, 2009.  The suit was restyled

22    as *William Giffen, an individual and successor-in-interest to Ivy Rosequist, individually and doing*

23    *business as Wicker-Wicker-Wicker v. Michael Taylor Designs, Inc.*, Northern District of California,

---

24    [1]*UMG Recordings, Inc. v. American Home Assur. Co.*, No. 06-56076, 2008 WL 4107315, at *2 (9th
25    Cir. (Cal.) Sept. 2, 2008), citing *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1035
(2002).  *See also DecisionOne Corp. v. ITT Hartford Ins. Group*, 942 F. Supp. 1038, 1043 (E.D. Pa.
26    1996) (quoting Black's Law Dictionary (6th ed. 1990) in arriving at the three-element test for
"disparagement").

27    [2]Following the May 29, 2008 death of plaintiff Ivy Rosequist, by stipulation and order entered on
February 23, 2009 William Giffen was substituted as the lawsuit's new plaintiff.  Kroon Decl. ¶ 5,
28    **Exhibit "12."**

1  Case No. 08-1588-SBA.

2       MTD then gave Travelers notice of the FAC on October 21, 2009, the same day the FAC was

3  filed.  [Kroon Decl. ¶ 11, **Exhibit "8"**]  Travelers acknowledged receipt of the FAC on November 5,

4  2009.  [Kroon Decl. ¶ 13, **Exhibit "10"**]  Travelers finally agreed to provide a defense under a

5  reservation of rights on December 15, 2009.  [Kroon Decl. ¶ 14, **Exhibit "11"**]  This was nearly

6  twenty months after the first notice to Travelers of the disparaging fact allegations.

7       In its December 15, 2009 reservation of rights letter, Travelers appointed Ropers, Majeski,

8  Kohn, and Bentley ("RMKB") as panel counsel to defend MTD in the *Rosequist* action.  [**Exhibit**

9  **"11,"** p. 9.] Travelers would only reimburse MTD's "reasonable and necessary expenses" from the

10  FAC notice date through the period of time "reasonably necessary in order to transition defense to

11  the Ropers firm."  [*Id*.]

12       Although Travelers has acknowledged its defense duty as of the FAC's notice date, it has

13  denied its duty to defend the *Rosequist* suit from the date MTD first provided notice of the action to

14  Travelers on March 31, 2008.  [Kroon Decl. ¶ 17]

15  **IV.   TRAVELERS' DUTY TO DEFEND ARISES WHERE THERE IS MERELY A POTENTIAL FOR COVERAGE**

16
17       **A.   The Duty to Defend Is *Not* Equivalent to the Duty to Indemnify**

18       Travelers' duty to defend is broad, requiring only the potential for coverage in order to

19  trigger Travelers' defense obligation.   The duty to defend is much broader than the duty to

20  indemnify.[3]  The distinction between the duties is profound.  An insurer must defend when the facts

21  pled in the complaint demonstrate a mere *potential* of a covered claim under the policy.[4]  On the

22  other hand, the insurer's duty to indemnify requires the existence of a claim that is actually, rather

23  than only potentially, covered by the policy.[5]

24       The duty to defend extends to all suits in which it is merely *possible* that the insured will be

25  found liable for covered damages while only a "bare potential or possibility of coverage" is required

26  _____

27  [3]*CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 605 (1986).
    [4]*Montrose Chemical Corp. v. Superior Ct.*, 6 Cal. 4th 287, 300 (1993).

28  [5]*Align Technology, Inc. v. Federal Ins. Co.*, 673 F. Supp. 2d 957, 972 (N.D. Cal. 2009).

to implicate Travelers' duty to defend.  *See Belmonte v. Employers Ins. Co.*, 83 Cal. App. 4th 430, 433 (2000) ("Even the bare possibility of coverage is sufficient to trigger [the duty to defend].");  *Montrose*, 6 Cal. 4th at 300 ("Indeed, in that case we said that 'the insurer need not defend if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage*.'  The quoted language cannot reasonably be understood to refer to anything beyond a bare 'potential' or 'possibility' of coverage as the trigger of a defense duty." (citation omitted; emphasis in original)).  To avoid that duty Travelers must prove that under no conceivable theory can the policies cover the claimed damages.[6]

Travelers' burden to avoid the duty to defend is much heavier than MTD's burden to trigger the duty.  MTD only needs to make a showing of any potentially covered liability (by reference to the complaint's factual allegations, extrinsic evidence, and the policy terms) to prevail in a dispute about Travelers' duty to defend.[7]  The burden then shifts to Travelers to demonstrate conclusively that there is no conceivable possibility of coverage.[8]  "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor."[9]  "[T]he insured is entitled to a defense if the underlying complaint . . . might be amended to give rise to a liability that would be covered under the policy."[10]

Where fact allegations or extrinsic evidence raise the possibility of coverage, an insurer must defend even if the claims triggering coverage are completely lacking in merit.  The validity or likelihood of success of an underlying claim is irrelevant.  The existence of potential coverage is not

---

[6]*North American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 637 (2006) (bold emphasis added) (" 'To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*.  In other words, the insured need only show that the underlying claim *may* fall within policy coverage; **the insurer must prove it *cannot*.**' ").

[7]*Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1054, 1059 n.3 (9th Cir. 2002).

[8]*Montrose*, 6 Cal. 4th at 304.  *See also Anthem Electronics*, 302 F.3d at 1054 ("[O]nce the insured has established [a] potential[ly covered] liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured intends to rely, **the insurer must assume its duty to defend unless and until it can *conclusively* refute that potential.**" (citation omitted; bold emphasis added)).

[9]*Montrose*, 6 Cal. 4th at 299-300.

[10]*Anthem Electronics*, 302 F.3d at 1054, citing *Montrose*, 6 Cal. 4th at 299.

determined by whether the underlying claim could survive a motion to dismiss because coverage exists where fact allegations or extrinsic evidence potentially encompass a covered offense even if "the claims against the insured are 'groundless, false, or fraudulent.' "[11]

This duty to defend exists "and is not extinguished until the insurer *negates all facts* suggesting potential coverage."[12]   Other jurisdictions applying the same potentiality standard as California have expressly stated that " '[t]he duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case *and is not dependent on the probable liability* to pay based on the facts ascertained through trial.' "[13]   "[E]ven if a plaintiff's claim against an insured probably lacks merit, the insurer must defend its insured, if the claim conceivably falls within its coverage."[14]

## B.   A Factual Dispute About Whether Disparagement Is Alleged Itself Creates a Duty to Defend Here

As Judge Croskey stated:

> If coverage depends on an unresolved dispute over a *factual* question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend.[15]

The standard is so liberal that if this Court were to believe that there is a factual dispute about whether disparagement is possibly alleged by the Complaint or extrinsic evidence, "the very existence of that dispute would establish a possibility of coverage and thus a duty to defend."[16] Travelers cannot meet its heavy burden here because the policy terms, Wicker's allegations, and extrinsic evidence establish Travelers' defense duty under California's liberal insurance law.  Thus,

---

[11]*Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1465 (2007).

[12]*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005) (emphasis added).

[13]*Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 392 (Mo. Ct. App. 2007) (emphasis added).

[14]*Motorola, Inc. v. Associated Indem. Corp.*, 878 So. 2d 824, 836 (La. Ct. App. 2004).

[15]*Mirpad, LLC v. California Ins. Guar. Ass'n*, 132 Cal. App. 4th 1058, 1068 (2005) (emphasis in original).

[16]*Mirpad*, 132 Cal. App. 4th at 1068; *American Cyanamid Co. v. American Home Assur. Co.*, 30 Cal. App. 4th 969, 975 (1994), quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1085 (1993) ("If the parties dispute whether the insured's alleged misconduct is potentially within the policy coverage, and if the evidence submitted does not permit the court to eliminate either party's view, . . . 'the duty to defend is then *established* . . . .' ").

where fact allegations of tarnishment and denigration of Wicker's trade dress rights were allegedly asserted by MTD, these fact allegations necessarily compel a defense.

**C.   Facts Pled or Reasonably Inferable, Not Legal Labels, Trigger Duty to Defend**

Travelers' duty to defend is not triggered by the Complaint's legal labels, but by the facts actually pled in the Complaint as well as facts reasonably inferable from such allegations. Although Wicker did not originally label a cause of action as "Disparagement," that does not affect Travelers' defense duty. The facts pled and known or knowable to the insurer, not pleading labels, govern the duty to defend.[17] Several California decisions have expressly found defamation implicated where the torts asserted were for tortious interference but the fact allegations supported a claim for defamation.[18]

Even "remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty."[19] A defense duty also arises when, as here, there are facts known or reasonably inferable from those known that would support an amended complaint expressly pleading a covered claim.[20]

---

[17] *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) ("The scope of the duty [to defend] does not depend on the labels given to the causes of action in the third party complaint . . . .").

[18] *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 (2001) ("[T]he duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party."); *American Guar. & Liab. Ins. Co. v. Vista Med. Supply*, 699 F. Supp. 787, 793-94 (N.D. Cal. 1988) (where underlying claimant pleaded wrongful termination count but not defamation count, holding insurer had duty to defend employer despite that wrongful termination was not covered by policy because defamation was covered and insurer was on notice of fact allegations by claimant that would support a defamation claim).

[19] *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002).

[20] *MV Transp.*, 36 Cal. 4th at 654 ("[T]hat the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, **under the facts alleged, reasonably inferable, or otherwise known,** the complaint could fairly be amended to state a covered liability." (emphasis added));

*Nelson v. West Am. Ins. Co.*, No. B143838, 2004 WL 1302500, at *9 (Cal. Ct. App. June 14, 2004) ("[A]n insurer is required to provide a defense against *unpled* claims that fall within policy coverage, provided that facts – whether extrinsic or alleged – available to the insurer sufficiently indicate that the third party could assert such claims.").

## V.    DISPARAGEMENT COVERAGE IS IMPLICATED BY FACT ALLEGATIONS

### A.    Elements Required to Trigger Coverage

The elements for disparagement coverage under Travelers' policy are:  (1) the "publication of material" (2) that "disparages" an organization's "goods [or] products" and (3) damages.[21]  All three elements are pled by Wicker.

#### 1.    Publication

The Complaint allegations meet the publication element of the policy's disparagement offense.  Publication is undefined in the policy but this Court has declared that " 'publication . . .' does not require widespread disclosure. . . . [A] less-than-public dissemination of information, such as that alleged in the complaint, could constitute a 'publication' . . . ."[22]  The publication at issue in *LensCrafters* was far less widespread than that at issue here where MTD relied upon "promotional materials widely circulated by [MTD] for the patrons" of the Westweek design show.  [**Exhibit "2,"** Complaint ¶ 27]  By contrast, the "publication" in *LensCrafters* occurred through a direct mail program involving only a select number of patients who participated in one-on-one medical history interviews.[23]  The number of patients contacted was likely a smaller and more defined segment of the general public than that targeted by MTD's widespread promotional activities.

Like the patients in *LensCrafters* who were part of the insured's direct mail program, MTD's promotional materials were widely circulated to the patrons of the Westweek design show.[24]  Therefore the publication element is satisfied by the allegations in the Complaint.

#### 2.    "Disparages a [] Organization's Goods [or] Products"

The disparagement element is also satisfied because MTD's alleged conduct implicitly

---

[21]To trigger coverage the Complaint must allege **damages** because of "**publication** of material that . . . **disparages** a[n] . . . organization's goods, products or services."  [Kroon Decl. ¶ 3, **Exhibit "1,"** Policy, p. 4 of 5 (emphasis added)]

[22]*LensCrafters, Inc. v. Liberty Mutual Fire Ins. Co.*, No. C 04-1001-SBA, 2005 WL 146896, at *10 (N.D. Cal. Jan. 20, 2005); *id.* at *8 ("LensCrafters transfer[s] to a database the information they elicit from the patients during the medical history interviews and optometric examinations, and use this information and database to conduct a direct mail program to those patients for the purpose of encouraging those patients to purchase additional products from LensCrafters.").

[23]*Id.*

[24][Kroon Decl. ¶ 4, **Exhibit "2,"** Complaint ¶ 27]

disparaged Wicker's natural wicker furniture. The Complaint alleges that MTD sold "cheap synthetic knock-offs" [**Exhibit "2,"** Complaint ¶ 36] as if they were Wicker's actual products, thereby denigrating Wicker's actual goods and demeaning the value of its trade dress.

These alleged wrongful acts included MTD's distribution of its promotional materials that included photographs of Wicker's actual furniture, to patrons of the Westweek design show in order to mislead consumers into purchasing MTD's "cheap imitation knockoffs."   [**Exhibit "2,"** Complaint ¶ 27]  The alleged synthetic knock-off was a "bait and switch" according to Wicker because the promotional materials, using Wicker's photographs, suggested premium natural wicker furniture, but the product allegedly sold by MTD was "synthetic" and "cheap."  Therefore, according to Wicker, by misleading customers into believing that MTD's "cheap" inferior furniture was produced by Wicker, MTD's conduct tarnished the reputation of Wicker's actual furniture, thereby potentially disparaging Wicker's products.   [**Exhibit "2,"** Complaint ¶ 36]  This potentially disparaging conduct was especially damaging because MTD had been the exclusive distributor of Wicker's furniture for years, thus increasing the risk that consumers would believe that the "cheap synthetic knockoffs" in MTD's showrooms had been produced by Wicker.  [**Exhibit "2,"** Complaint ¶¶ 19, 24]

MTD's potentially disparaging conduct was alleged in the Complaint as follows:

19.     In 2006, Wicker-Wicker-Wicker orally agreed to exclusively sell its furniture through Michael Taylor Designs, Inc.'s showrooms . . . . Michael Taylor Designs, Inc., in turn . . . agreed that Wicker-Wicker-Wicker **would be the exclusive source of wicker furniture in its showrooms**.
. . . .
24.     . . . Michael Taylor Designs, Inc. on March 20, 2008 stated by faxed letter that . . . "[it] will no longer act as sales agent for Wicker Wicker Wicker" . . . .
. . . .
27.     The **promotional materials widely circulated by Michael Taylor Designs, Inc. for the patrons of Westweek includes photographs of  Wicker-Wicker-Wicker's actual furniture** (which Michael Taylor Designs, Inc. has removed from its showroom and is no longer selling), compounding the high risk that customers will visit Michael Taylor Designs, Inc. looking for Wicker-Wicker-Wicker's furniture, only to be unknowingly **steered instead to cheap imitation knockoffs.**
. . . .
33.     Consumers are likely to be confused and **will naturally assume that the knock-offs currently being displayed in Michael Taylor Designs, Inc.'s showrooms are plaintiff's products**.
. . . .
36.     Defendant's actions, unless enjoined, will cause irreparable harm and injury to plaintiff and to consumers, in that **it will substantially dilute and tarnish plaintiff's**

**established trade dress and mislead consumers about the true origins and nature of the cheap synthetic knock-offs**.  [**Exhibit "2,"** Complaint (emphasis added)]

It does not matter if the Complaint only made implied allegations of disparagement.  This is because implicit disparagement is fully actionable in California as Judge Ware of this District noted last year.[25]  The court said that "disparagement by implication is actionable under California law."[26]  In *E.piphany*, the court found coverage under implicit disparagement where the insured allegedly falsely stated that it was the "only" producer of "all Java" and "fully J2EE" software solutions.  The fact that the insured's false statement was only directed at the underlying claimant "by implied comparison with [the insured's] products does not alter this outcome."[27]

The ruling in *E.piphany* is consistent with those of other courts, finding fact allegations less specific than those in the Wicker Complaint were sufficient to trigger a defense.  In two cases applying California law, courts readily found that statements were about another's product even though the "other" was not named in the promotional communication at issue.  The first court found implicit disparagement, noting that a statement may impliedly be "about" a competitor's goods without directly mentioning the competitor or its products.[28]  The second court found implicit disparagement because the insured's claims to ownership of unique oven technology "creat[ed] confusion" over who had the rights to the underlying claimant's oven.[29]

As in *E.piphany*, Wicker's "allegations show a claim for disparagement by 'clear implication.' "[30]  But instead of implicit disparagement existing through an assertion of superiority,

---

[25] *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1253-54 (N.D. Cal. (San Jose Div.) 2008).

[26] *Id.* at 1252.

[27] *Id.* at 1254.

[28] *Pennfield Oil Co. v. American Feed Indus. Ins. Co. Risk Retention Group, Inc.*, No. 8:05CV315, 2007 WL 1290138, at *8 (D. Neb. March 12, 2007) ("Pennfield's dissemination of allegedly misleading advertisements and materials that allegedly hurt Alpharma's sales, profits and good will . . . *implicitly disparage* Alpharma's product because Alpharma is the only other manufacturer of the product with FDA approval." (emphasis added)).

[29] *Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192, 199 (Ind. Ct. App. 2005) ("Liebermann's statements disparaged the 'Thermodyne Oven' by creating confusion about the product and the technology in the marketplace because it was unclear as to which company, OSI/Beltec or Thermodyne, had the rights to and was producing an oven with the unique technology.").

[30] *E.piphany, Inc.*, 590 F. Supp. 2d at 1253.

11

1    as in *E.piphany*, the implicit disparagement here comes from MTD's alleged association of Wicker

2    goods with *inferior* products.  Wicker expressly alleged that there was a dilution and tarnishment of

3    Wicker's good name and established trade dress and that customers were misled into associating

4    Wicker's goods with MTD's "cheap synthetic knockoffs."

5         This inference of disparagement alleged in the Complaint is far from unreasonable because

6    the same conduct was expressly labeled "disparagement" in the FAC (which Travelers conceded

7    triggers a duty to defend).   The FAC explicitly states that the "promotional materials widely

8    circulated by [MTD] . . . created[ed] a false and disparaging message to consumers that the cheap

9    imitation synthetic knock-offs that were simultaneously displayed on the showroom floors *were*

10   [Wicker's] products."  [**Exhibit "3,"** FAC ¶39]

11        39.    The promotional materials widely circulated by Michael Taylor Designs, Inc.
         for the patrons of Westweek included traditional advertising flyers and similar written
12       publications that contained photographs of Wicker-Wicker-Wicker's actual furniture
         . . . thus creating a false and **disparaging** message to consumers that the cheap
13       imitation synthetic knock-offs that were simultaneously displayed on the showroom
         floors *were* Wicker-Wicker-Wicker's products.  The written publications thus directly
14       **disparaged** the quality of Wicker-Wicker-Wicker's goods.

15        40.    Further, during the period that Michael Taylor Designs, Inc. placed the
         synthetic knock-offs on its showroom floors (from roughly January through April of
16       2008), Michael Taylor Designs, Inc.'s sales employees orally told potential customers
         that the cheap synthetic knock-offs displayed on the showroom floors were Wicker-
17       Wicker-Wicker's goods, thus again **disparaging** the quality and origin of Wicker-
         Wicker-Wicker's actual furniture.
18
19        41.    With its website, Michael Taylor Designs, Inc. also sowed confusion and
         **disparaged** the quality and origin of Wicker-Wicker-Wicker's goods, by depicting
20       Wicker-Wicker-Wicker's actual designs when the goods physically displayed on
         defendant's showroom floors were cheap synthetic knock-offs.  [**Exhibit "3,"** FAC
21       (emphasis added)]

22        Therefore, the "disparages a person's or organization's goods, products or services" element

23   is met by both the Complaint and the FAC.

24            **3.    Damages**

25        The Complaint alleged that MTD's publication of the disparaging material caused Wicker's

26   damages.  The Complaint states that "[MTD's] actions . . . will cause irreparable harm and injury to

27   plaintiff . . . .  In addition to *money damages*, plaintiff is accordingly entitled to both a preliminary

28   and permanent injunction . . . ."  [**Exhibit "2,"** Complaint ¶ 36 (emphasis added)]   Since Wicker

1   alleged damages because of the disparagement "personal injury" offense, the damages element is

2   met.

3       Therefore all elements under the policy's disparagement personal injury offense are met by

4   the allegations in the Complaint, establishing Travelers' duty to defend MTD in the *Rosequist* action

5   from the date of first tender.

6       **B.     The Doctrine of Relation-Back Requires a Defense from the Date the Original
        Complaint Was First Tendered**

7

8       Travelers' duty to defend from the Complaint's initial notice date is also triggered under the

9   relation-back doctrine.   The relation-back doctrine requires that Travelers' defense duty be

10  established from the date the Complaint was first tendered because it raised the possibility of

11  coverage which was then made more concrete by the FAC.

12      Judge Patel specifically addressed the relation-back doctrine as it pertained to claims of trade

13  dress infringement in *Fossil, Inc. v. Fireman's Fund Ins. Co.*, No. C99-5023 MHP (N.D. Cal. (S.F.)

14  July 12, 2000). There the underlying third amended complaint's trade dress claim, through

15  incorporation of earlier paragraphs, "explicitly stated that Fossil [insured's] belts had an appearance

16  'virtually identical to Leegin [underlying claimant's] belts right down to the words "genuine

17  leather." ' " *Id.* at p. 15.  The court found that coverage existed because Leegin "itself made a direct

18  connection between trade dress infringement and the labeling of the alleged knock-offs as 'genuine

19  leather' . . . ." *Id.*

20      In a subsequent order of June 22, 2001, the court addressed the issue of when the duty to

21  defend was triggered.  Although Leegin did not allege a trade dress infringement claim until the third

22  amended complaint, the court found that coverage was triggered from the date the *original*

23  complaint was tendered.[31]  The court reasoned that because the allegations in the original complaint

24  "raised the possibility of claims of trade dress infringement," that triggered the insurer's obligation

25  to defend in the underlying action.  *Id.* at p. 7.  Specifically, the court referred to the original

26  complaint's allegations that Leegin's belts were " 'highly distinctive leather belts' as displayed for

27

28  _____

    [31]*Fossil, Inc. v. Fireman's Fund Ins. Co.*, No. C99-5023 MHP (N.D. Cal. (S.F.) June 22, 2001), pp.
    6-7.

1   sale on racks using 'hang-tags' and not otherwise packaged," and that Fossil allegedly " 'copies or

2   'knocks-off' the designs of Leegin's leather products.' " *Id.* at pp. 6-7.  Since trade dress "may

3   encompass the overall presentation of the product – including packaging . . . and appearance," and

4   the belts' design served as their packaging, the court found that Fossil's alleged knock-offs raised the

5   possibility of a trade dress infringement claim.[32]

6          Consistent with *Fossil*'s analysis and like Leegin's original complaint that raised the

7   possibility of a covered trade dress claim, here the Complaint's allegations raise the possibility for a

8   covered claim of disparagement.  The Complaint alleges that through "promotional materials widely

9   circulated" by MTD using "photographs of Wicker-Wicker-Wicker's actual furniture," MTD

10  "steered [consumers] to cheap imitation knock-offs."  [**Exhibit "2,"** Complaint ¶ 27]  And that such

11  conduct would "substantially dilute and tarnish plaintiff's established trade dress and mislead

12  consumers about the true origins and nature of the cheap synthetic knock-offs."  [**Exhibit "2,"**

13  Complaint ¶ 36]

14         In *Fossil*, allegations that the insured copied the claimant's "highly distinctive" leather belts,

15  including the "genuine leather" labeling, raised the possibility of a trade dress infringement claim

16  because the belts were alleged to be so unique that they merely required "hang tags" and no other

17  packaging when displayed for purchase.  Similarly here, the Complaint's allegations that MTD's

18  promotional materials tarnished and diluted Wicker's goods raises the possibility of a disparagement

19  claim because the promotional materials allegedly used Wicker photographs, suggesting that the

20  source of the "cheap" furniture in MTD's showrooms was Wicker.

21         Just as the amended complaint in *Fossil* clarified the existence of a trade dress infringement

22  claim by expressly making a "direct connection" between the "genuine leather" labeling and a claim

23  for trademark infringement, so too has Wicker clarified the existence of a disparagement claim by

24  making a direct connection between MTD's promotional materials and its disparaging effect on

25  Wicker's goods.

26         The FAC here explicitly alleges, "The promotional materials widely circulated by Michael

27

28  _____
    [32]July 12, 2000 Order, p. 15; June 22, 2001 Order, pp. 6-7.

Taylor Designs, Inc. . . . . contained photographs of Wicker-Wicker-Wicker's actual furniture . . . thus creating a false and **disparaging** message to consumers that the cheap imitation synthetic knock-offs that were simultaneously displayed on the showroom floors *were* Wicker-Wicker-Wicker's products." [**Exhibit "3,"** FAC ¶ 39 (bold emphasis added)]   The FAC also makes the same allegation in a new cause of action titled "Slander of Goods/Slander of Title." [**Exhibit "3,"** FAC ¶ 76]

Wicker's Complaint allegations therefore raised the possibility of disparagement coverage because they asserted that MTD's promotional materials misled consumers into thinking that MTD's "cheap synthetic knock-off" furniture was actually produced by Wicker, thus denigrating the quality of its goods.

In *American Simmental Ass'n v. Coregis Ins. Co.*, 282 F.3d 582 (8th Cir. (Neb.) 2002), the court also applied the relation-back doctrine.   Rejecting the insurer's assertion that coverage was triggered only from the second amended complaint, the court held that that the insurer's "duty to defend arose at the time ASA [the insured] tendered the original Blue Dane complaint." *Id.* at 588. In the referenced lower court decision, the district court noted that "because the Blue Dane initial Complaint contains all of the factual allegations necessary to my previous conclusion that the Second Amended Complaint triggered St. Paul's duty to defend, I likewise conclude that the facts alleged in the initial Complaint triggered that duty."[33]

The original complaint alleged that ASA wrongfully used the underlying claimants' "fullblood" designation to advertise its cattle.[34]   The original complaint did not contain the Lanham Act infringement claims alleged in the second amended complaint that clarified coverage under the policy's misappropriation/infringement coverage.   However, the original complaint "basically claimed that ASA, in part through its advertising, usurped (took) or impinged upon (infringed) the fullblood designation . . . ."[35]   The original complaint therefore contained "all of the factual

---

[33]*American Simmental Ass'n v. Coregis Ins. Co.*, 107 F. Supp. 2d 1064, 1073 (D. Neb. 2000).

[34]*American Simmental Ass'n v. Coregis Ins. Co.*, 75 F. Supp. 2d 1023, 1031 (D. Neb. 1999), quoted in *American Simmental Ass'n*, 107 F. Supp. 2d at 1073.

[35]*Id.*

1   allegations necessary" to trigger coverage under the misappropriation/infringement policy offenses.

2      Similarly here, although Wicker's original Complaint did not expressly allege

3   "disparagement," it did, like the initial complaint in *American Simmental*, make all factual

4   allegations necessary for the disparagement claim, later made explicit.

5      The Complaint alleged that MTD's promotional materials using photographs of Wicker's

6   furniture were used by MTD to "steer[] [customers] instead to cheap imitation knockoffs" in the

7   hope that the customers believed the allegedly inferior products were produced by Wicker.[36]  This

8   conduct was potentially disparaging and subsequently clarified as such in Wicker's FAC.  Like the

9   amended complaint in *American Simmental*, whose Lanham Act allegations of infringement clarified

10  that the insured's use of "fullblood" encompassed "infringement of title," the FAC clarified that

11  MTD's promotional materials were in fact "disparaging," thus encompassing the disparagement

12  "personal injury" offense.  Since the underlying factual allegations were always present in the initial

13  complaint, potential coverage is triggered from the date notice was given of the initial complaint.

14     More recently a Washington federal court, in a case directly analogous to this, found that

15  defense fees related back to an earlier complaint.  *JACO Environmental, Inc. v. American*

16  *International Specialty Lines Ins. Co.*, No. 2:09-cv-0145 JLR, 2009 WL 1591340 (W.D. Wash. May

17  19, 2009).  There the original complaint alleged that "JACO [the insured] misrepresented the nature

18  of the subject matter claimed in the [JACO] patent to electric utilities and local government entities."

19  *Id.* at *6.  Later, through discovery, it was revealed that the underlying claimant "alleged that 'JACO

20  made false and misleading representations regarding the nature, characteristics, and origin of the

21  subject matter of the ... Patent in the following documents . . . .' "  *Id.*  In finding that coverage was

22  triggered from the date of the original complaint, the court reasoned that the "only substantive

23  difference between these allegations is that the later one is specific as to the particular utility to

24  whom the misrepresentation was made, and the date upon which it was made."  *Id.*  The court

25  continued that, if as the insurer conceded, "the substance of the later statement potentially implicates

26  the 'personal and advertising injury' coverage of the policy so as to trigger its duty to defend, then

27

28  _____
    [36][Kroon Decl. ¶ 4, **Exhibit "2,"** Complaint ¶ 27]

1    certainly the substance of the initial allegation in the complaint did too."  *Id*.

2         Like the insurer in *JACO*, Travelers has acknowledged a defense duty under the FAC but not

3    the Complaint even though the only difference between the allegations regarding MTD's allegedly

4    disparaging promotional materials in the Complaint and the FAC is that the FAC specifically

5    characterizes such material as "disparaging."  A defense duty is nevertheless triggered because, like

6    *JACO*, "the substance of the initial allegation[s] in the complaint" is the same.  Both complaints

7    allege that MTD widely distributed promotional materials that used Wicker photographs to mislead

8    consumers into believing that the "cheap" "synthetic" furniture displayed in MTD's showrooms was

9    produced by Wicker.  [**Exhibit "2,"** Complaint ¶¶ 27, 33; **Exhibit "3,"** FAC ¶ 39]  The alleged

10   conduct that implicitly disparages MTD in the Complaint is the same conduct specifically alleged to

11   be disparaging in the FAC.

12        Since the Complaint allegations raising the possibility of a disparagement claim were made

13   more concrete by the FAC, the doctrine of relation-back requires a defense from the date the

14   Complaint was first tendered to Travelers.

15        **C.     Facts Available to Travelers Independently Triggered a Duty to Defend**

16        The extrinsic facts available to Travelers when it initially refused to defend triggered

17   Travelers' duty to defend when considered with the Complaint allegations.

18        Travelers failed to properly investigate potential coverage "based solely on a review of the

19   complaint which, on its face, should have alerted a reasonable insurer of the need to further

20   investigate."[37]  Travelers' duty to investigate required it to consider the facts available to it at the

21   time of tender beyond those merely alleged in the complaint.[38]

22        As the California Supreme Court held in *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809,

---

[37]*Eigner v. Worthington*, 57 Cal. App. 4th 188, 198 (1997).

[38]*New Hampshire Ins. Co. v. R.L. Chaides Constr. Co., Inc.*, 847 F. Supp. 1452, 1455 (N.D. Cal. 1994) ("NHICO's duty to defend 'must be analyzed and determined **on the basis of any *potential* liability arising from facts available to [NHICO] from the [Aukerman] complaint or other sources** available to it at the time of the tender of defense.' " (bold emphasis added));

   *Anthem Electronics*, 302 F.3d at 1054 ("Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. . . . Furthermore, an insurer must undertake a reasonable investigation into the circumstances of the claim before denying coverage.").

819 (1979), the insurer must "fully inquire into possible bases that might support the insured's claim" and "cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial."  An important corollary to the duty to investigate is the duty to evaluate claims against its insured on the basis of the complaint or other sources **available** to the insurer.[39]

There is an interrelationship between these two legal obligations to inquire and to evaluate.[40]  Travelers had a legal duty to fully investigate the original Wicker Complaint and is chargeable with knowledge of all facts that a reasonable investigation would have revealed.  Thus, the scope of what was **"available"** to Travelers includes what Travelers actually knew and facts that a reasonable investigation would have revealed.  The allegations of "implicit disparagement" appear on the face of the Wicker Complaint.[41]  Travelers cannot rely on its own lack of diligence in pursuing evidence of the "implicit disparagement" claims which a cursory review of MTD's website would have readily revealed.[42]  A number of California cases have clarified the breadth of the facts available doctrine available here.[43]

---

[39] *Fireman's Fund Ins. Co. v. National Bank for Cooperatives,* 849 F. Supp. 1347, 1363 (N.D. Cal. 1994).

[40] *KPFF, Inc. v. California Union Ins. Co.*, 56 Cal. App. 4th 963, 973 (1997); *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 37 (1985).

[41] *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 610 (1986) ("The duty to defend cannot be adjudged on the basis of hindsight.  It must be determined from the facts and **inferences** known to an insurer from the pleadings, available information and its own investigations at the time of the tender of defense." (emphasis added; citation omitted)).

[42] *Hyundai Motor Am. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 600 F.3d 1092, 1099 (9th Cir. (Cal.) 2010) ("In some circumstances, however, we also may consider 'extrinsic facts known to the insurer.' . . . Here, **it is safe to assume that Defendants had access to Hyundai's website and could view** the BYO feature **in making their determination whether to defend.**" (emphasis added)).

[43] *Arnette Optic Illusions, Inc. v. ITT Hartford Group,* 43 F. Supp. 2d 1088, 1098 (C.D. Cal. 1998) ("Based on the facts available to Hartford at the time of tender, at least the *potential* for coverage existed under the policy.  Moreover, Hartford had *no proof* that any exclusion applied or that the facts underlying the Pouilloux action were outside the scope of the policy."); *Arquilla v. International Ins. Co.*, No. C-86-5980 MHP, 1988 U.S. Dist. LEXIS 17576, at *25 (N.D. Cal. July 15, 1988) ("**The evidence will not be limited to what was actually known by [the insurer]**, because such an evidentiary limitation would undermine the insurer's obligation to investigate all claims." (emphasis added; footnote omitted)); *State Farm Mut. Auto. Ins. Co. v. Martinez-Lozano*, 916 F. Supp. 996, 1005 (E.D. Cal. 1996); *Eigner v. Worthington*, 57 Cal. App. 4th 188 (1997) (The court found that **the underlying complaint put the insurer on notice** that the complaint's emotional distress claims potentially included physical injury, which should have led the insurer to

A case involving a defamation claim made this point even more saliently.  In *Nelson v. West Am. Ins. Co.*, No. B143838, 2004 WL 1302500 (Cal. Ct. App. June 14, 2004), the court stated that " '[t]he risk that an insurer takes when it denies coverage without investigation is that the insured may later be able to prove that a reasonable investigation would have uncovered evidence to establish coverage or a potential for coverage.' "  *Id*. at *5.  The court emphasized this point by noting that "an insurer is required to provide a defense against *unpled* claims that fall within policy coverage, provided that facts – whether extrinsic or alleged – available to the insurer sufficiently indicate that the third party could assert such claims." *Id*. at *9.

Here, the disparaging conduct in Wicker's Complaint reflected in the allegations that MTD's "cheap synthetic knockoffs" denigrated Wicker's reputation by leading the public to believe that it was the source of shoddy goods was further established by review of facts beyond the face of the pleadings that were available to Travelers:

- MTD's **website** that allegedly wrongfully displayed Wicker's "Jennifer" chair design during the period of time that Travelers was making its coverage determination in March/April 2008.  [Kroon Decl. ¶ 18]

- The **promotional materials** widely circulated by MTD for the patrons of the Westweek design show, which included photographs of Wicker's actual furniture, before and after the show's start date on March 26, 2008. [Kroon Decl. ¶ 18]

- **Advertising flyers** used by MTD in March/April of 2008 which allegedly used pictures of actual Wicker furniture to advertise MTD's alleged cheap knock-off goods. [Kroon Decl. ¶ 18]

These facts extrinsic to the Complaint independently raised the possibility of a disparagement claim.  Wicker's allegations that MTD was distributing promotional materials that associated Wicker's products with "cheap synthetic knock-offs" should have put Travelers on notice that MTD may be engaged in other, potentially disparaging, promotional acts not alleged in the complaint.  At the time MTD provided notice of the Complaint to Travelers on March 31, 2008, MTD's website

further investigate the claims.).

1   was using photographs of Wicker's "Jennifer" chair design to promote MTD's own version of the

2   "Jennifer" chair.  [**Exhibit "3,"** FAC ¶ 41]

3         During the same time period, MTD also distributed advertising flyers promoting its products

4   using pictures of actual Wicker furniture to advertise MTD's alleged cheap knock-off goods.  Had

5   Travelers undertaken its duty to investigate, it would have easily come across these readily

6   discoverable extrinsic facts which raise the possibility of a disparagement claim.

7         It was these very facts that Wicker expressly alleged were "disparaging" in the FAC.  The

8   FAC alleges that "[w]ith its website" MTD "sowed confusion and **disparaged** the quality and origin

9   of Wicker-Wicker-Wicker's goods, by depicting Wicker-Wicker-Wicker's actual designs when the

10  goods physically displayed on defendant's showroom floors were cheap synthetic knock-offs."

11  [**Exhibit "3,"** FAC ¶ 41 (emphasis added)]  The FAC also alleges "advertising flyers . . . contained

12  photographs of Wicker-Wicker-Wicker's actual furniture . . . thus creating a false and **disparaging**

13  message to consumers that the cheap imitation synthetic knock-offs that were simultaneously

14  displayed on the showroom floors *were* Wicker-Wicker-Wicker's products."  [**Exhibit "3,"** FAC

15  ¶ 39 (bold emphasis added)]

16        The facts extrinsic to the Complaint, and available to Travelers at the time it made its

17  coverage determination, also triggered Travelers' duty to defend from the first notice of the

18  Complaint.

19        **D.     Disparaging Conduct Occurred During Travelers' Policy Period**

20        MTD's allegedly disparaging conduct occurred during the policy period of 9/14/07 to

21  9/14/08.  In a recent case, addressing the duty to defend where a policy period issue arose, the court

22  found that the insurer had a duty to defend under a policy beginning on May 14, 2005 when the

23  complaint alleged the covered conduct occurred "sometime in May 2005."

24            The Underlying Complaint alleges that some time in May, 2005, NFL
          Properties [the underlying claimant] became aware that the insured was offering for
25        sale counterfeit jerseys. . . . The [insurance] policy was incepted May 14, 2005.
          Although this allegation leaves open the possibility that first publication occurred
26        during the first two weeks of May (and thus, would be outside the relevant policy
          period), it also raises the possibility that first publication occurred *within* the relevant
27        policy period.  Thus, the duty to defend is not negated by [the first publication]

28

1   exclusion.[44]

2   The court also noted the different burdens of proof on the issue, which burdens favored the insured.

3   "Although 'the insured need only show that the underlying claim may fall within policy coverage[,]

4   the insurer must prove it cannot.' "[45]

5       The Complaint stated that MTD's allegedly disparaging promotional materials were widely

6   circulated "for the patrons of [the] Westweek" design show which was set to begin on March 26,

7   2008."   [**Exhibit "2,"** Complaint ¶¶ 26, 27]   The exact date of when the allegedly disparaging

8   materials were circulated is not alleged.  However as in *Arnette Optic Illusions, Inc. v. ITT Hartford*

9   *Group*,[46] "the possibility exist[s] that the complained of activity . . . occurred after the inception of

10  the policy," especially since the circulated material was distributed in connection with the March 26,

11  2008 design show, in the middle of the policy period.  Therefore MTD's alleged wrongful conduct

12  disparaging Wicker potentially occurred during the policy period.

13  **VI.    MTD IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES AND PREJUDGMENT INTEREST**

14
15      **A.    MTD Is Entitled to Reasonable Attorneys' Fees Without Limitation by California Civil Code § 2860**

16      MTD is entitled to its reasonable attorneys' fees and Travelers cannot retroactively limit the

17  amount of attorneys' fees recoverable by MTD under Cal. Civ. Code § 2860.  Section 2860 only

18  governs circumstances where the insurer has agreed to defend and then seeks to limit defense

19  counsel's fees to those it customarily pays its panel counsel under similar circumstances.  That does

20  not apply here.

21      As noted in *State of Cal. v. Pacific Indem. Co.*, 63 Cal. App. 4th 1535, 1544 (1998), where

22  "[the insurer] materially breached its duty to defend, and therefore had forfeited its right to

23  participate in or control the . . . defense, whether based on Civil Code section 2860 or otherwise,"

---

24
25  [44]*Hudson Ins. Co. v. Colony Ins. Co.*, No. EDCV 07-01497-SGL (OPx), 2008 WL 5504572, at *2 (C.D. Cal. Dec. 16, 2008).

26  [45]*Id.* at *1, quoting *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993).

27  [46]*Arnett Optic*, 43 F. Supp. 2d at 1091, 1097-98 (The counterclaim alleged that the wrongful conduct began "no earlier than *1991*," and the insurance policy ran from April 1992 to April 1996.  Based on

28  the allegations, the court thus concluded that, as here, "[t]he *possibility* existed that the complained of activity . . . occurred after the inception of the policy.").

1   there was no right to a lower payment than that owed pursuant to a reasonableness standard.

2       Making that specific finding, Judge Manella observed in *Concept Enters., Inc. v. Hartford*

3   *Ins. Co. of the Midwest*, No. CV 00-7267 NM (JWJx), 2001 WL 34050685, at *3 (C.D. Cal. May 22,

4   2001) that "[t]o take advantage of the provisions of § 2860, an insurer must meet its duty to defend

5   and accept tender of the insured's defense, subject to a reservation of rights." *Id*.  After noting the

6   insurer's failure to "defend entirely" and thereby failing "to satisfy the factual predicate to § 2860,"

7   the court would not allow the insurer to "belatedly invoke that section's arbitration and rate

8   provisions." *Id*.

9       Very recently the court in *Intergulf Development v. Superior Court*, 183 Cal. App. 4th 16, 21

10  (2010) reiterated this point in ruling on whether the insurer could compel arbitration under § 2860

11  where it only partially reimbursed the insured's defense fees.  The court found that if the insurer's

12  conduct constituted a breach of the duty to defend, it "would place [§ 2860] procedures out of [the

13  insurer's] reach."

14      The rule is simple:  by refusing to honor its obligation to defend immediately and completely,

15  an insurer loses any opportunity to claim the benefits of Cal. Civ. Code § 2860 prior to the date the

16  insurer honors its defense obligation.  Travelers refused to acknowledge its defense duty to MTD in

17  the *Rosequist* action before October 21, 2009, more than 18 months after MTD provided it the

18  Complaint on March 31, 2008.  In so doing, Travelers breached its duty to immediately and entirely

19  defend MTD.  Cal. Civ. Code § 2860 rates are inapplicable prior to the date that Travelers fully

20  performs its defense obligations.  The rate limitations cannot benefit a breaching insurer.

21      Here, Travelers did not meet its defense obligations until its appointed counsel assumed full

22  responsibility for the *Rosequist* defense on January 12, 2010. [Kroon Decl. ¶ 16, **Exhibit "12"**]  So

23  MTD is entitled to reimbursement of all reasonable and necessary fees actually charged by its

24  defense counsel in defending the *Rosequist* action from March 31, 2008 through January 12, 2010.

25      **B.    Travelers Acknowledged MTD's Right to "Reasonable and Necessary" Defense
26             Expenses Not Limited by §2860 Incurred From October 21, 2009 Through
               January 12, 2010**

27      In reimbursing MTD's defense expenses from October 21, 2009, Travelers sought to impose

28  Cal. Civ. Code § 2860 limits on the defense fees incurred by MTD after 12/15/2009 (the date

Travelers accepted a defense under a reservation of rights).  [Aboutalib Decl. ¶ 2, **Exhibit "13"**]  As explained above, Travelers cannot impose § 2860 limits from 12/16/2009 because by that time its appointed counsel had not yet assumed full responsibility for MTD's defense in the *Rosequist* action. Also, by the terms of its own reservation of rights letter Travelers agreed to reimburse MTD for all reasonable defense fees incurred until the defense was transferred to its appointed counsel. Travelers stated in its 12/15/2009 reservation of rights letter that not only will it "reimburse the reasonable and necessary defense expenses . . . from the date of tender to today's date" but:

> In addition, we will reimburse the Gauntlett firm for reasonable and necessary expenses during the period of time reasonably necessary in order to transition defense to the Ropers firm.

[Kroon Decl. ¶ 15, **Exhibit "11,"** p. 9]

In assuming MTD's defense, Travelers expressly agreed to reimburse MTD for "reasonable and necessary expenses" so long as they were incurred during the time it took to transition the defense to the Ropers firm.  Nowhere did Travelers suggest that such fees would be subject to Civil Code § 2860 rates, instead using the same "reasonable and necessary" reimbursement standard it applied to reimbursing defense fees incurred before 12/16/2009.  Travelers is therefore estopped from denying its obligation to reimburse fees incurred for the defense of MTD prior to RMBK's substitution as counsel in the *Rosequist* suit.[47]

The RMKB firm did not substitute as counsel for MTD until at least January 12, 2010. No court has excused an insurer from a duty to reimburse defense fees incurred prior to the date appointed counsel assumed its defense duties.[48] All defense fees incurred before this time were reasonable and necessary to MTD's defense and all defense fees incurred after 1/12/2010 were directly related to the transition of the defense to the Ropers firm. Therefore, according to Travelers' 12/15/2009 reservation of rights letter, MTD is entitled to all unreimbursed reasonable and necessary

---

[47] *CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 285 (2005) (In finding that insurer was estopped from denying payment because its attorney had previously promised that insurer would pay, the court stated:  "DeGrave's representations, including the statement CalFarm would have 'no choice' but to pay the arbitrator's award if it was made in a general verdict, can be construed as a clear and unambiguous promise to pay the full amount of the arbitrator's award . . . regardless of CalFarm's own coverage determination.").

[48] *Atmel Corp. v. St. Paul Fire & Marine*, 426 F. Supp. 2d 1039 (N.D. Cal. 2005) ("To take advantage of the provisions of § 2860, an insurer must meet its duty to defend . . . .").

1   fees incurred from the date of tender through January 12, 2010.

2   **C.    MTD Is Entitled to Prejudgment Interest from the Date of Each Invoice**

3   MTD is also entitled to an award of prejudgment interest at the legal rate of 10% per annum

4   on all unpaid defense expenses in the *Rosequist* suit from the date each invoice was issued.  Cal. Civ.

5   Code § 3289.

6   Under California law a damage amount due based on invoices (like here) is a liquidated sum

7   entitling the plaintiff to an award of prejudgment interest.  California courts have so held specifically

8   in situations like this, that is, where the insured's damages are based on its defense counsel's

9   invoices that the insurer refused to pay.  *See Longs Drug Stores Calif., Inc. v. Federal Ins. Co.*, No.

10  C 03-01746 JSW, 2005 WL 2072296, at *4 (N.D. Cal. Aug. 26, 2005) ("The Court concludes that

11  the date on which Federal [the insurer] could have computed the amount owed was on the date

12  Longs [the insured] was billed for the attorneys fees and costs in the [relevant] action." (emphasis

13  omitted)); *Copart, Inc. v. Travelers Indem. Co.*, No. C-97-1862-VRW, 1999 WL 977948, at *2-3

14  (N.D. Cal. Oct. 22, 1999) (finding that damages were capable of being computed by insurer on the

15  date that the insured was billed by defense counsel).

16  Other jurisdictions agree.[49]  The Third Circuit awarded prejudgment interest on a settlement

17  payment by an insured, following the standards of the Restatement (Second) of Contracts.  The

18  insurer had argued that it only owed a "reasonable" settlement and because it disputed the

19  reasonableness of the settlement, there was no fixed amount upon which to calculate interest.  The

20  court found "[t]he mere fact that parties dispute the amount does not prevent it from being

21  ascertainable by reference to a standard fixed in the contract."  *Id.* at 908.  The policy required the

22  insurer to fund its share of the settlement so long as the settlement was reasonable and in good faith.

23  The court found that Lexington could not escape payment of prejudgment interest by disputing the

24  reasonableness of the settlement.  *Id.*  Likewise here, Travelers cannot escape prejudgment interest

25  by contesting the reasonableness or amount of MTD's defense bills in the *Rosequist* suit, as a

26  number of California cases have found.[50]

27  _____

[49] *See, e.g., Trustees of Univ. of Penn. v. Lexington Ins. Co.*, 815 F.2d 890, 908 (3d Cir. 1987).

28  [50] *See Copart*, 1999 WL 977948, at *2-3 (awarding prejudgment interest and finding insurer

The statutory prejudgment rate of interest under California law is 10% per annum.[51]   An insured is entitled to prejudgment interest at that rate from the date of each invoice.[52]   MTD is entitled to 10% prejudgment interest on the *Rosequist* defense expenses from the date MTD was billed.

## VII.   CONCLUSION

Travelers owed MTD a defense in the *Rosequist* action from the date it was first given notice because facts evidencing disparagement were asserted against MTD in the Complaint.   Extrinsic evidence also independently established Travelers' duty to defend.   The "relation-back" doctrine also triggered a defense because the Complaint allegations raised the possibility that MTD's conduct was disparaging and these facts were clarified by the FAC which specifically characterized MTD's conduct as disparaging.

Travelers' duty to defend arose from the date of the Complaint's initial tender.   Travelers is required to pay all reasonable fees incurred from March 31, 2008 through January 12, 2010 (when its appointed counsel took over this defense) plus prejudgment interest at 10% per annum from the date of each invoice.

Dated:  June 14, 2010

**GAUNTLETT & ASSOCIATES**

By:     /s/  James A. Lowe
        David A. Gauntlett
        James A. Lowe
        Andrew M. Sussman

Attorneys for Plaintiff
Michael Taylor Designs, Inc.

---

challenge to amount or reasonableness of defense bills does not make the damage amount uncertain because the insurer could have calculated damages and its exposure by looking to the reasonable market value of legal services); *Longs*, 2005 WL 2072296, at *2-5 (even though the insurer challenged the reasonableness of the defense bills on numerous grounds and successfully as to one issue, the court awarded the insured prejudgment interest because the insurer could have computed the amount owed with certainty on the date the insured was billed); *Foxfire, Inc. v. New Hampshire Ins. Co.*, Nos. C-91-2940 MHP ARB, C-91-4364 MHP, 1994 WL 361815, at *4-5 (N.D. Cal. July 1, 1994) (insurer challenge to amount of defense fees properly awarded as damages based on argument that some billing entries should be allocated to non-covered claims does not make damages unliquidated nor preclude prejudgment because the damages are still readily calculable).

[51] CAL. CIV. CODE § 3289(b).

[52] *Longs*, 2005 WL 2072296, at *2-5.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28