SEDGWICK, DETERT, MORAN & ARNOLD LLP
BRUCE D. CELEBREZZE  Bar No. 102181
bruce.celebrezze@sdma.com
GREGORY C. READ  Bar No. 049713
gregory.read@sdma.com
MATTHEW C. LOVELL  Bar No. 189728
matthew.lovell@sdma.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone:     (415) 781-7900
Facsimile:     (415) 781-2635

Attorneys for Defendant TRAVELERS PROPERTY
CASUALTY COMPANY OF AMERICA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TAYLOR DESIGNS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>Defendant. | CASE NO. C10-02432-RS<br><br>**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:       September 9, 2010<br>Time:      1:30 p.m.<br>Judge:     Hon. Richard Seeborg<br>Court:     Courtroom 3, 17th Floor |

Defendant Travelers Property Casualty Company of America ("Travelers") submits this

memorandum in opposition to the motion of plaintiff Michael Taylor Designs, Inc. ("MTD") for

partial summary judgment and in support of Travelers' cross-motion for partial summary judgment.

SF/1713498v1

CASE NO. C10-02432-RS

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

# TABLE OF CONTENTS

**PAGE NO.**

I.    SUMMARY OF ARGUMENT .................................................................. 1

II.   STATEMENT OF FACTS ..................................................................... 3

    A.    The Travelers Policy ................................................................. 3

    B.    The Underlying *Rosequist* Action ............................................ 4

        1.    The Allegations of the Original Complaint ................. 4

        2.    MTD's Tender Of The Original Complaint And Travelers' Declination, And MTD's Erroneous Reliance On Deleted Policy Provisions ........................... 5

    C.    Rosequist Amends The Complaint To Plead Disparagement ................................ 6

III.  ARGUMENT ...................................................................................... 8

    A.    California Rules For Determining Whether A Duty To Defend Exists .................. 8

        1.    Speculative, Unpled Claims Cannot Create A Duty To Defend ................ 9

        2.    The Insured Must Advise The Insurer Of Any New Facts Indicating A Potential For Coverage ................ 9

    B.    There Was No Potential For Coverage For The Original Rosequist Complaint Because Neither The Causes of Action Pled Nor The Facts Alleged Therein Created A Potential That MTD Would Be Held Liable To Rosequist For Disparagement ........................... 10

        1.    The Elements Of Disparagement ............................. 10

        2.    As A Matter Of Law, Claims That Sound In "Imitation" Cannot Create Potential Liability For Disparagement ............................. 10

        3.    The Original Complaint Did Not Allege That MTD Made False Statements About Rosequist's Goods, Products Or Services ................ 11

    C.    In A Long Line Of Similar Cases, Courts Applying California Law Have Declined To Find Coverage For Disparagement ........................ 13

        1.    Aetna Cas. & Surety Co., Inc. v. Centennial Ins. Co., 838 F.2d 346 (9th Cir. 1988) ................. 14

        2.    Microtec Res. v. Nationwide Mutual Ins. Co., 40 F.3d 968 (9th Cir. 1994) ................. 16

    D.    The Cases Cited By MTD Do Not Support Its Claims ........................ 18

        1.    MTD Cannot Prove A Potential for Coverage Under an "Implied Disparagement" Theory ................. 18

    E.    No Extrinsic Evidence Indicated That MTD Disparaged Rosequist ................ 19

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

# TABLE OF CONTENTS

**PAGE NO**.

    1.    The Extrinsic Evidence On Which MTD Seeks To Rely Is Inadmissible, And Would Not Support A Claim for Disparagement In Any Event ................................................................... 20

    2.    MTD Overstates An Insurer's Duty Of Inquiry ......................................... 21

F.    MTD's Invocation Of The "Relation Back" Doctrine Ignores The Decisive Differences Between The Original And The First Amended Complaints ........................................................................................................ 22

    1.    The FAC Alleged, For The First Time, That MTD Published False, Disparaging Material That Caused Rosequist Damages ................ 23

G.    MTD's Claim It Is Entitled To All Its Attorneys Fees Has No Basis In Law Or Fact. ...................................................................................................... 24

H.    MTD's Prayer For An Award Of Prejudgment Interest Is Premature ................. 25

IV.    CONCLUSION .................................................................................................... 25

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

# TABLE OF AUTHORITIES

PAGE NO.

### Federal Cases

*American Simmental Ass'n ("ASA") v. Coregis Ins. Co.*
  107 F.Supp. 2d 1064 (D.Neb. 2000) ............................................................ 23

*Anthem Electronics, Inc. v. Pacific Empl. Ins. Co.*
  302 F.3d 1049 (9th Cir. 2002) .................................................................... 21

*Blue Bell Bio-Med. v. Cin-Bad, Inc.*
  864 F.2d 1253 (5th Cir. 1989) .................................................................... 14

*Dennis Produce, Inc. v. Hartford*
  260 Fed.Appx. 989 U.S. App. LEXIS 30027 (9th Cir. 2007) .......................... 17

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*
  590 F.Supp.2d 1244 (N.D. Cal. 2008) ............................................ 10, 18, 19

*Foxfire, Inc. v. New Hampshire Ins. Co.*
  1994 U.S. Dist. LEXIS 9249 ....................................................................... 25

*Haeger Potteries v. Gilner Potteries*
  123 F.Supp. 261 (S.D.Cal. 1954) ................................................................ 16

*Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*
  97 F.Supp.2d 913 (S.D. Ind. 2000) ............................................................. 13

*Homedics, Inc. v. Valley Forge Ins. Co.*
  315 F.3d 1135 (9th Cir. 2003) .............................................................. 11, 17

Hyundai Motor America v. National Union Fire Ins. Co. of Pittsburgh, PA
  600 F.3d 1092 (9th Cir. 2010) .................................................................... 22

*Karsant Family Ltd. Partnership v. Allstate Ins. Co.*
  2009 U.S. Dist. LEXIS 7558 (N.D.Cal. Jan. 27, 2009) .................................. 24

*Pennfield Oil Co. v. American Feed Industry Ins. Co. Risk Retention Group, Inc.*
  2007 U.S. Dist. LEXIS 21456 (D.Neb. 2007) .............................................. 19

*Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*
  203 F.Supp.2d 587 (E.D.Va. 2002) ..................................................... 13, 14

*Two Pesos, Inc. v. Taco Cabana, Inc.*
  505 U.S. 763, 778 n.5, 120 L.Ed.2d 615, 112 S.Ct. 2753 (1992) .................... 14

### State Cases

*ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*
  147 Cal.App.4th 137 (2007) .......................................................................... 9

*American Intern. Bank v. Fidelity & Deposit Co. of Md.*
  49 Cal.App.4th 1558 (1996) ........................................................................ 21

*Bank of the West v. Superior Court*
  2 Cal.4th 1254 (1992) ................................................................................... 8

*Davis v. Farmers Ins. Group*
  134 Cal.App.4th 100 (2005) .......................................................................... 9

*Erlich v. Etner*
  224 Cal.App.2d 69 (1964) ........................................................................... 10

# TABLE OF AUTHORITIES

**PAGE NO**.

*Friedman Prof. Mgmt. Co., Inc. v. Norcal Mut. Ins. Co.*
   120 Cal.App.4th 17 (2004) ........................................................................ 9

*Gunderson v. Fire Ins. Exch.*
   37 Cal.App.4th 1106 (1995) ............................................................... 9, 21

*Hurley Constr. Co. v. State Farm Fire & Cas. Co.*
   10 Cal.App.4th 533 (1992) ....................................................................... 9

*Industrial Indem. Co. v. Apple Computer, Inc.*
   79 Cal.App.4th 817 (1999) ....................................................................... 9

*Leonardini v. Shell Oil Co.*
   216 Cal.App.3d 547, 572 (1989) ............................................................ 10

*Liberty Mut. Ins. Co. v. OSI Industries, Inc.*
   831 N.E.2d 192 (Ind.App. 2005) ............................................................ 19

*Montrose Chem. Corp. v. Superior Ct.*
   6 Cal.4th 287 (1993) ................................................................................. 9

*Nichols v. Great Am. Ins. Cos.*
   169 Cal.App.3d 766 (1985) ............................................... 10, 11, 12, 15

*Safeco Ins. Co. v. Parks*
   122 Cal.App.4th 779 (2004) ..................................................................... 9

*Scottsdale Ins. Co. v. MV Transp.*
   36 Cal.4th 643 (2005) ........................................................................... 8, 9

*Total Call Int'l, Inc. v. Peerless Ins. Co.*
   181 Cal.App.4th 161 (2010) ................................................................... 12

### Statutes

Fed. R. Civ. P. 56 .......................................................................................... 1

Lanham Act, 15 U.S.C. § 1125 .................................................................... 14

### Local Rules

Civil Local Rule 7-2 ...................................................................................... 1

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 56 and Civil Local Rule 7-2, on September 9, 2010, at 1:30 p.m., or as soon thereafter as counsel may be heard, defendant Travelers Property Casualty Company of America ("Travelers") will appear in this court, at 450 Golden Gate Avenue, San Francisco, California, Courtroom 3, 17th Floor, and move the Court for partial summary judgment on the ground that there is no genuine issue as to any material fact, and Travelers is entitled to a determination as a matter of law that it had no duty to defend plaintiff Michael Taylor Designs, Inc. ("MTD") against the allegations made in the original complaint in the action *Ivy Rosequist, ind. and dba Wicker-Wicker-Wicker v. Michael Taylor Designs, Inc.*, N.D. Cal., Case No. 08-1588-SBA ("the *Rosequist* action").

Travelers makes this motion on the ground that neither the facts alleged in the original *Rosequist* complaint nor any extrinsic evidence created any potential for coverage under the insurance policy Travelers issued to MTD.  As such, Travelers is entitled to an order determining as a matter of law that it had no duty to defend MTD against the allegations in the original *Rosequist* complaint.

## I.  <u>SUMMARY OF ARGUMENT</u>

For many years, Ivy Rosequist, a furniture designer/manufacturer dba "Wicker-Wicker-Wicker" ("Rosequist"), and Michael Taylor Designs, Inc. ("MTD"), a San Francisco furniture design service and sales outlet, were engaged in a business relationship in which MTD acted as the exclusive sales agent for Rosequist's line of wicker furniture.  In early 2008, the relationship deteriorated rapidly, and Rosequist filed a two-count complaint against MTD in this court.

The essential allegations of Rosequist's original complaint against MTD were set out in two causes of action:  MTD distributed to its customers promotional materials that contained photographs of Rosequist's furniture, which was of exceptional quality.  MTD pulled a "bait-and-switch" on its customers, however, by displaying in its showroom "cheap synthetic knock-offs" of Rosequist's goods and products.  This conduct created a risk that consumers would be confused and misled, such that they might believe that the "cheap synthetic" furniture was Rosequist's design.  Rosequist claimed this conduct "dilute[d] and tarnish[ed] (her) trade dress[.]"

Travelers issued a commercial general liability insurance policy to MTD, which provided coverage for suits for damages for injury caused by "oral or written publication of material that …

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

1   disparages a person's or organization's goods, products or services."  In this action, and in its own

2   cross-motion for partial summary judgment, this is the only provision of the policy that MTD claims

3   potentially covers the allegations of the original *Rosequist* complaint.

4        MTD argued emphatically to Travelers that the allegations of the original complaint stated a

5   claim for trade dress infringement, even though the policy does not cover such offenses.  The issue

6   now presented is whether the allegations in Rosequist's original complaint create a potential for

7   coverage under the "disparagement" offense, and hence a duty to defend.  They do not.  The original

8   complaint did not allege that MTD made any false statements "concerning the quality" of

9   Rosequist's goods or products, a necessary element for an actionable disparagement claim under

10  California law.  Nor did it allege that the publication of any materials, by itself, damaged Rosequist.

11  Rather, the damage did not allegedly occur until an <u>act</u> had taken place <u>after</u> the challenged

12  publication:  the replacement of Rosequist's goods in the MTD showroom with "cheap, synthetic

13  knock-offs."

14       Nineteen months after filing the original complaint, Rosequist's successor-in-interest filed a

15  first amended complaint ("FAC"), which contained twice as many pages, pled five new causes of

16  action, and described MTD's alleged wrongful conduct in greater detail than in the original

17  complaint.  The FAC differed from its predecessor in one decisive way:  it asserted entirely new

18  factual allegations along with this new cause of action, and created *for the first time* a potential for

19  coverage under the Travelers policy.  MTD re-tendered to Travelers.

20       Travelers agreed to provide a defense as of the date of the tender of the FAC.  Even though

21  Travelers accepted the defense in full, MTD filed this action seeking a ruling that Travelers owed a

22  duty to defend it against the original complaint from the initial tender date.

23       Because the allegations in the original complaint neither directly nor implicitly stated a cause

24  of action against MTD for "disparagement," there was no potential for coverage and Travelers had

25  no duty to defend MTD against such allegations.  Accordingly, Travelers is entitled to an order:

26  (1) determining as a matter of law that Travelers had no duty to defend MTD against the allegations

27  in the original *Rosequist* complaint; and (2) denying MTD's motion for partial summary judgment in

28  its entirety.

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

1    **II.      STATEMENT OF FACTS**

2              A.      The Travelers Policy

3         Travelers issued a commercial general liability (policy no. Y-630-0797C933-TIL-07) to

4    MTD, for the period September 14, 2007 to September 14, 2008 ("the Policy").  *See* Decl. of J.

5    Zacharski, ¶ 2, Ex. 1.  The Policy consists of the coverage parts and endorsements.  *Id.* at TRV-POL

6    004.  The Policy contained a section, "Coverage B," which provided coverage for "Personal and

7    Advertising Injury Liability."  That provision defined the "personal and advertising injury" offenses

8    to include, among others:

9            e.   Oral or written publication, in any manner, of material that slanders or libels a
                 person or organization or disparages a person's or organization's goods,
10               products or services; …

             g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement."
11

12   *Id.*, ¶ 3. Ex. 1; TRV-POL 086, 095.

13        The Policy's "Web Xtend Liability" endorsement (no. CG D2 34 01 05), however, "deleted

14   in its entirety" Coverage B ("personal and advertising injury" liability), TRV-POL 110, 113, and

15   replaced it with the following provisions relevant to these cross-motions and this action:

16           1.   Insuring Agreement

17           a**.**  We will pay those sums that the insured becomes legally obligated to pay
                 as damages because of "personal injury" [or] advertising injury … to
18               which this insurance applies.  We will have the right and duty to defend"
                 the insured against any "suit" seeking those damages.  However, we will
19               have no duty to defend the insured against any "suit" seeking damages for
                 "personal injury" [or] advertising injury … to which this insurance does
20               not apply. …

             b**.**  This insurance applies to:
21
                 (1) "Personal injury" caused by an offense arising out of your business,
22                   excluding advertising, publishing, broadcasting or telecasting done by
                     or for you;[or]
23
                 (2) "Advertising injury" caused by an offense committed in the course of
24                   advertising your goods, products or services

                 (3) "Web site injury" caused by an offense committed in the course of the
25                   visual or audio presentation of material on "your web site" or in the
                     numerical expression of computer code used to enable "your web
26                   site";

27           but only if the offense was committed … during the policy period.

28   *Id.* at TRV-POL 113.

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

The Web Xtend Liability endorsement contains the following definitions which govern here:

"Personal injury" means injury, other than "bodily injury", arising from one or more of the following offenses:

> d.  Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided the claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged …[1]

*Id.* at TRV-POL 113.  The endorsement's personal injury offense of "disparagement" is the only provision of the Policy on which MTD relies to support its claim that Travelers owed MTD a duty to defend the underlying lawsuit.  *See* MTD Memo., at 2:24-3:12; MTD Cmplt., Dkt. No. 1, at ¶¶ 9, 12. The endorsement does not contain within its definitions – and hence provides no coverage for – the offense of "infringing upon another's copyright, trade dress or slogan."

To summarize, as relevant to this action, the Travelers policy applies to claims for injury caused by "oral, written or electronic publication of material that … disparages a person's or organization's goods, products or services."  Such injury is deemed "advertising injury" if it results from the advertising of MTD's goods, products, or services, or "personal injury" if it does not result from MTD's advertising, but otherwise results from its business activities.  Travelers has a duty to defend only where there is a potential that the action against its policyholder states covered claims.

B.    The Underlying *Rosequist* Action

On March 24, 2008, Rosequist filed a lawsuit in this court against MTD.  *See generally* Complt., *Ivy Rosequist, ind., and dba Wicker-Wicker-Wicker v. Michael Taylor Designs, Inc.*, N.D. Cal., Case No. 08-1588-SBA, Travelers Req. Jud. Not. ("RJN") Ex. 1.  The complaint described a long-term business relationship that deteriorated quickly, leading to the hasty filing of the lawsuit.

1.    *The Allegations of the Original Complaint*

Rosequist alleged that, in 2006, she entered into an oral distributorship agreement with MTD, by which Rosequist would exclusively sell her furniture through MTD's showrooms, and pay MTD a commission.  *Id.* ¶ 19, 5:21-25.  MTD agreed that Rosequist would be the exclusive source of

---

[1]    The Policy defines "Advertising injury" to include the identical offenses listed in subsection "d." quoted above.

wicker furniture in its showrooms.  *Id.*  According to Rosequist, MTD "immediately announced the exclusivity agreement with a promotional mailing that was widely distributed" (presumably in 2006, and which is attached as Exhibit B to the *Rosequist* complaint).  *Id.* ¶ 20, 5:26-6:2.  The mailing allegedly "prominently featured a color photograph" of a Rosequist chair and ottoman.  *Id.* ¶ 20, 5:28-6:1.  Exhibit B depicts furniture and a card which reads:

MICHAEL TAYLOR DESIGNS, INC.

IS PLEASED TO ANNOUNCE

THE EXCLUSIVE REPRESENTATION OF

wicker. wicker. wicker

"ADD WICKER TO A ROOM AND YOU ADD LIFE"

-       Michael Taylor

*See* Ex. B to Rosequist Cmplt., RJN Ex. 1.

Rosequist went on to allege that MTD sent her a letter on February 13, 2008 "announcing that (MTD) had decided to create copies of (Rosequist)'s designs in a synthetic wicker material." *Id.,* ¶ 22, Ex. C.  This triggered Rosequist's "unambiguous" demand, on March 10, 2008, that MTD "cease and desist" the marketing or sale of unauthorized copies of Rosequist's designs.  *Id.,* ¶ 23, Ex. D.  Rosequist also alleged that, as of March 20, 2008, MTD "had plainly not abandoned its plans to copy (Rosequist's) designs[.]"  *Id.,* ¶ 26.  The implosion of the business relationship was complete when Rosequist filed her two-count complaint on March 24, 2008.

> 2.      *MTD's Tender Of The Original Complaint And Travelers' Declination, And MTD's Erroneous Reliance On Deleted Policy Provisions*

The original complaint pled only two causes of action:  breach of contract and violation of the Lanham Act, 15 U.S.C. § 1125.  *See generally* RJN, Ex. 1.  MTD sent Travelers the original complaint.  In April 2008, Travelers declined to participate in the defense or indemnification of the *Rosequist* action, explaining the reasons for its coverage determination.  *See* Decl. of Joseph Tancredy, ¶ 2 and Ex. 1 (Apr. 15, 2008 ltr. to MTD).  Travelers also explained that the Web Xtend Liability endorsement provided the operative coverage for personal injury and advertising injury offenses, observed that the complaint pled trade dress infringement, but pointed out that "[t]rade dress infringement does not fall within any of (those offenses)."  *Id.* at 5, 7.

1    In February 2009, more than ten months after Travelers sent its declination letter, a lawyer

2  from Gauntlett & Associates ("Gauntlett"), which was defending MTD in the *Rosequist* action and is

3  MTD's counsel in this action, wrote Travelers a 15-page letter to "explain why the denial (of the

4  tender) was erroneous," and why there was potential coverage for Rosequist's allegations under "the

5  'personal and advertising injury' offense of trade dress infringement."  *See* Tancredy Decl., ¶ 3, Ex.

6  2 (Feb. 27, 2009 ltr. from Gauntlett to J. Tancredy) at 1, 2.

7    MTD chastised Travelers, because its April 15, 2008 declination letter:

8       did not discuss, disprove the applicability or even mention … **"**infringing upon
        another's ... trade dress ... in your advertisement" - even though that definition
9       immediately and indisputably raises the potential for coverage and Travelers'
        duty to defend MTD because **trade dress infringement through MTD's**
10      **advertisements is what Rosequist expressly pled**.  The most reasonable
        inference is that Travelers deliberately ignored the provision and avoided
11      mentioning it because applying it to Rosequist's allegations would require
        Travelers to provide a defense.  [¶]  One can scarcely imagine a more egregious
12      example of insurer bad faith than here.

13  *Id.*, Ex. 2, at 14.  To "explain why the denial was erroneous," MTD relied only on the trade dress

14  infringement offense, *even though it had been deleted by the Web Xtend Liability endorsement*, as

15  Travelers had explained in its declination letter.  *See supra*, at 5:25-28.  Nowhere in this letter did

16  MTD argue that the allegations of the *Rosequist* action created a potential for coverage for the

17  offense of "disparagement", which was defined in the same manner in both Coverage B (upon

18  which MTD initially based its tender) and the endorsement.  *See generally* Feb. 27, 2009 Gauntlett

19  ltr.; *cf.* Zacharski Decl. ¶ 2. Ex. 1; TRV-POL 095 (Coverage B), and TRV-POL 113 (endorsement).

20    On March 9, 2009, Travelers Senior Technical Specialist Joseph Tancredy spoke by

21  telephone with MTD's counsel to again advise that the trade dress infringement coverage had been

22  deleted by the Web Xtend Liability endorsement at the time the Policy was issued.  *Id.* ¶ 4.  MTD's

23  counsel stated that he had not seen the endorsement, *id.*, even though Travelers' April 2008

24  declination letter had relied on it.  *Id.; see also* Tancredy Decl., Ex. 1, at 5-7.

25    C.    Rosequist Amends The Complaint To Plead Disparagement

26    On October 21, 2009, William Giffen, acting as Rosequist's successor-in-interest after her

27  death in 2008, filed the FAC.  *See* RJN, Ex. 2, at 1.  It purported to state causes of action for:

28  (1) violation of the Lanham Act, (2) breach of oral contract, (3) breach of written contract,

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

1   (4) damage and destruction of personal property, (5) negligence, (6) false promise, and (7) slander of

2   goods.  *Id.*

3        In addition to paragraphs 19 and 24 of the original complaint cited above, concerning the

4   formation and termination of the exclusive sales agency agreement, MTD has identified the

5   following paragraphs in the original and first amended complaints that, it contends, allege at least

6   "potentially disparaging conduct."  MTD Memo. at 3:14-4:2, 10:17-11:2 (quoting from the original

7   complaint); and 11:7-21 (quoting from the FAC).

| **Original Complaint** | **First Amended Complaint** |
| --- | --- |
| 27.  The promotional materials widely circulated by (MTD) for the patrons of Westweek includes [sic] photographs of (Rosequist's) actual furniture (which (MTD) has removed from its showroom and is no longer selling), compounding the high risk that customers will visit (MTD) looking for (Rosequist's) furniture, only to be unknowingly steered instead to cheap imitation knockoffs. | 75.  Through its acts and omissions as set forth (in paragraphs 1 through 74) above, (MTD) has through written publication, oral publication and through electronic publication, including on its internet site, **disparaged** the qualify and origin of (Rosequist's) goods. |
| 32.  Plaintiff's furniture designs have acquired secondary meaning, in that knowledgeable customers associate the overall design and visual elements of [the above-identified furniture] and recognize that these furniture pieces have their origin with (Rosequist). | 76.  The promotional materials widely circulated by (MTD) for the patrons of Westweek included traditional advertising flyers and similar written publications that contained photographs of (Rosequist's) actual furniture ... thus creating a **false** and **disparaging** message to consumers that the cheap imitation synthetic knock-offs that were simultaneously displayed on the showroom floors *were* (Rosequist's) products.  The written publication thus directly **disparaged** the quality of (Rosequist's) goods. |
| 33.  Consumers are likely to be confused and will naturally assume that the knock-offs currently being displayed in (MTD's) showrooms are plaintiff's products. | 77.  Further, during the period that (MTD) placed the synthetic knock-offs on its showroom floors … (MTD)'s sales employees orally told potential customers that the cheap synthetic knock-offs displayed on the showroom floors were (Rosequist's) goods, thus again **disparaging** the quality and origin of (Rosequist's) actual furniture. |
| 36.  Defendant's action, unless enjoined, will cause irreparable harm and injury to plaintiff and to consumers, in that it will substantially | 78.  With its website, (MTD) also sowed confusion and **disparaged** the quality and origin of (Rosequist) goods, by depicting (Rosequist's) actual designs whe |

| Original Complaint | First Amended Complaint |
|---|---|
| dilute and tarnish plaintiff's established trade dress and mislead consumers about the true origins and nature of the cheap synthetic knock offs. | the goods physically displayed on defendant's showroom floors were cheap synthetic knock-offs.[2] |

*See* Cmplt., RJN, Ex. 1, at ¶¶ 27, 32, 33, and 36; FAC, RJN Ex. 2 at ¶¶ 75-78 (italics in original, bold emphasis added).

MTD tendered the FAC to Travelers in October 2009.  *See* Tancredy Decl. ¶ 5, Ex. 3 (Oct. 21, 2009 Gauntlett ltr. to J. Tancredy).  In November 2009, Travelers acknowledged receipt of the FAC and advised: "[s]hould we find that there is coverage for this matter …, we will assume the defense and reimburse your reasonable and necessary defense costs pursuant to Civil Code Section 2860."  Tancredy Decl., ¶ 6, Ex. 4 (Nov. 5, 2009 ltr. to MTD/Gauntlett).

In December 2009, Travelers advised MTD it would retain counsel to defend MTD in the *Rosequist* action based solely on the potentially covered offense of disparagement, and reimburse the "reasonable and necessary defense expenses" of the Gauntlett firm from the date of the tender of the FAC going forward.  Tancredy Decl., ¶ 7, Ex. 5 (Dec. 15, 2009 ltr. to MTD/Gauntlett) at 1, 7, 9.

## III.   ARGUMENT

The issue before the court is whether Travelers owed MTD a duty to defend against the original *Rosequist* complaint at the time of the tender of the original complaint to Travelers.  As demonstrated below, as a matter of law, Travelers owed no such duty.

### A.   California Rules For Determining Whether A Duty To Defend Exists

The determination of whether a duty to defend exists in a particular case is a question of law as it involves the interpretation of a written contract.  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992).  An insurer must defend its insured only against lawsuits containing claims which create a potential for indemnity under the policy.  *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 654 (2005).  An insurer is excused from any defense obligation, however, when a third-party complaint (such as the original complaint in the *Rosequist* action) "can by no conceivable

---

[2]   In its discussion of the "slander of goods" cause of action in the FAC, MTD's memorandum quotes from paragraphs 39 through 41 of the FAC.  *See* MTD Memo., at 12:11-21.  Those paragraphs are repeated, verbatim, in paragraphs 76 through 78.

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

theory raise a single issue which could bring it within the policy coverage." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal.4th 287, 300 (1993).  "[I]f, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." *Scottsdale*, *supra*, 36 Cal.4th at 655.

> 1.      *Speculative, Unpled Claims Cannot Create A Duty To Defend*

The insured has the burden of showing that a claim falls within the scope of coverage in the first instance.  *Davis v. Farmers Ins. Group*, 134 Cal.App.4th 100, 104 (2005).  "To support the duty to defend … a potential for coverage must be based on known facts, not 'potential facts.'  An imaginative insured can always conjure a possible factual scenario in which a covered claim might arise." *Industrial Indem. Co. v. Apple Computer, Inc.*, 79 Cal.App.4th 817, 832 (1999).  Similarly, "[a]n insured is not entitled to a defense just because one can *imagine* some additional facts which would create the potential for coverage." *Friedman Prof. Mgmt. Co., Inc. v. Norcal Mut. Ins. Co.*, 120 Cal.App.4th 17, 35 (2004) (italics added).  California law is ironclad: an insured "may not speculate about unpled third party claims to manufacture coverage." *Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal.App.4th 533, 538 (1992).

> 2.      *The Insured Must Advise The Insurer Of Any New Facts Indicating A Potential For Coverage*

The scope of the duty to defend is determined at the time of tender, and depends on "the nature and kinds of risks covered by the insurance policy." *ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal.App.4th 137, 145 (2007).  There is no continuing duty to investigate the potential for coverage if the insurer has made an informed decision, based on the underlying complaint, the policy, and the facts known to the insurer at the time of tender, that it has no duty to defend. *Safeco Ins. Co. v. Parks*, 122 Cal.App.4th 779, 794 (2004).  It is the insured's burden to bring to the insurer's attention new facts indicating a potential for coverage.  If the insured fails to do so, the insurer cannot be liable for declining a defense because it has "no way to know of these new facts, and no obligation to find them out by itself." *Gunderson v. Fire Ins. Exch.*, 37 Cal.App.4th 1106, 1117 (1995).

/ / /

1    B.    There Was No Potential For Coverage For The Original Rosequist Complaint
2          Because Neither The Causes of Action Pled Nor The Facts Alleged Therein Created
          A Potential That MTD Would Be Held Liable To Rosequist For Disparagement

3          The Travelers policy extends coverage to claims for injury caused by "oral, written or

4    electronic publication of material that slanders or libels a person or organization or disparages a

5    person's or organization's goods, products or services."  The central issue in this case is whether,

6    prior to the filing of the FAC, any of the statements that MTD allegedly made to third parties

7    "disparage[d]" Rosequist's "goods, products or services."  As a matter of law, Rosequist's original

8    complaint did not create a potential for coverage for disparagement.

9                    *1.*    *The Elements Of Disparagement*

10         Under California law, to trigger coverage for "disparagement", a complaint must allege facts

11   which would support a claim for the tort of "product disparagement," also known as "trade libel."

12   *Nichols v. Great Am. Ins. Cos.*, 169 Cal.App.3d 766, 772-73 (1985).  "Trade libel" has been defined

13   as "encompassing all false statements *concerning the quality of services or product* of a business

14   which are intended to cause that business financial harm and in fact do so."  *Leonardini v. Shell Oil*

15   *Co.*, 216 Cal.App.3d 547, 572 (1989) (emphasis added).  *Accord*: *E.piphany, Inc. v. St. Paul Fire &*

16   *Marine Ins. Co.*, 590 F.Supp.2d 1244, 1252 (N.D. Cal. 2008) ("[t]rade libel and product

17   disparagement are 'injurious falsehoods that interfere with business.'") (quoting *Aetna Cas. & Sur.*

18   *Co. v. Centennial Ins. Co.,* 838 F.2d 346, 351 (9th Cir. 1988).  The *Aetna* court noted that trade libel

19   is "an intentional disparagement of the quality of property, which results in pecuniary damage."

20   *Aetna*, *supra*, 838 F.2d at 351 (quoting *Erlich v. Etner*, 224 Cal.App.2d 69, 73 (1964)).

21         In summary, a disparaging statement is one that falsely casts doubt on the quality of a

22   competitor's goods or business so the competitor's prospective customers do not deal with them.

23   *Aetna*, *supra*, 838 F.2d at 351 (trade libel "requires: (1) a publication, (2) which induces others not

24   to deal with plaintiff, and (3) special damages.").

25
                  *2.*    *As A Matter Of Law, Claims That Sound In "Imitation" Cannot Create*
26                        *Potential Liability For Disparagement.*

27         As MTD's counsel asserted in his letter of February 2009, Rosequist charged MTD with

28   trade dress infringement – a distinct tort – by capitalizing on her reputation to peddle "cheap

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

synthetic knock-offs", i.e., imitations.  The Ninth Circuit has recognized, however, that business torts based on allegations of wrongful imitation cannot constitute a claim for disparagement.  *See Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135 (9th Cir. 2003).  There, Nikken sued Homedics for patent infringement.  *Id.* at 1137.  Homedics tendered its defense to its general liability insurer, arguing that the infringement claims "potentially fall under" the disparagement coverage in the policy, which was identical to the one in the Travelers Policy.  *Id.* at 1141.

The Ninth Circuit upheld the trial court's dismissal of Homedics' complaint:

> One cannot read Nikken's complaints and reasonably conclude that there are allegations that Homedics was disparaging its goods.  Essentially, **Nikken's complaints only allege that Homedics imitated its product**, thereby infringing its patent.  It does not follow that because an entity imitated the design of a product, it is, therefore, disparaging it.  In point of fact, it's quite the opposite--as has been oft said: **imitation is the highest form of flattery**.

1142 (9th Cir. 2003) (emphasis added).  This pithy statement of an intuitive principle of law describes in microcosm the coverage theory MTD advances here, and then debunks it.  This court should follow the lead of *Homedics* and the extensive, similar authority cited below in section IV.C and grant Travelers' motion.

> ### 3. *The Original Complaint Did Not Allege That MTD Made False Statements About Rosequist's Goods, Products Or Services*

MTD identifies only a handful of paragraphs from the original complaint that (it contends) constitute the allegations that exposed MTD to potential liability for disparagement.  *See* MTD Memo. at 10:17-11:2.  Among those paragraphs, only <u>one</u> (paragraph 27) can be read as a *statement* attributed to MTD.  *See supra* at 7:8-8:3.  The other paragraphs allege only *conduct*, i.e.., that MTD placed "knockoffs" in its showrooms and steered customers to them.  They do not allege "the publication of material," as both the Policy – and the law of trade libel – require.

For 25 years, courts in California and elsewhere have declined to find coverage for disparagement absent allegations that the insured made negative *statements* about the claimant's goods, products or services.  In *Nichols v. Great American Ins. Cos.*, 169 Cal.App.3d 766 (1985), in the underlying action, the supplier of a pay television subscription service (Calsat) sued Nichols (the insured), for "airwave piracy," based on Nichols' alleged sale of devices designed to intercept pay television signals.  *Id.* at 770.  Nichols tendered his defense to his insurer, Great American.  He

1   argued that the allegations of the Calsat complaint set forth a cause of action for trade libel or

2   disparagement within the policy's definition of "personal injury," which included "the publication or

3   utterance of a libel or slander or of other defamatory or disparaging material."  *Id*. at 772.

4       The court implicitly recognized that the policy covered trade libel or disparagement.  *Id.* at

5   772-73.  It held, however, that Calsat's allegations did not state a claim for trade libel, because they

6   did not attribute any statement or conduct to Nichols which "directly cast aspersions on either

7   Calsat's equipment or license."  *Id.* at 774.  The *Nichols* court concluded that "the Calsat complaint

8   cannot be tortured to state a cause of action for trade libel.  The necessary element of a defamatory

9   publication or utterance is missing from the complaint and cannot be supplied by reference to reports

10  in which the defamatory innuendo appears only inferentially."  *Id.* at 775.

11      The law remains the same after 25 years.  A recent decision emphasizes that disparagement

12  must be evident from the allegedly false publication *itself*, without the need to consult other sources.

13  In *Total Call Int'l, Inc. v. Peerless Ins. Co.*, 181 Cal.App.4th 161 (2010), the insured, Total Call

14  International ("TCI"), sold prepaid telephone cards.  TCI's competitor (IDT) sued, alleging that TCI

15  deceptively advertised its product by misleading its customers as to the amount of call minutes TCI

16  actually delivered for the specified price.  IDT alleged that TCI's deceptive advertising destroyed

17  much of IDT's market share, "as consumers have been misled to ignore [IDT's] cards and instead

18  purchase [d]efendant's calling card by promises of long-distance minutes that were never delivered

19  by [d]efendants."  *Id*. at 169

20      The Court of Appeal rejected TCI's contention that the complaint sought damages for the

21  publication of disparaging material.  *Id.* at 171.  The court found that TCI's advertisement, "<u>by itself,</u>

22  carried *no* implication that IDT's comparable cards cost more or less than TCI's cards; <u>to ascertain</u>

23  <u>such information, a consumer would have to consult IDT's own advertising</u>."  *Id.* (italics in original,

24  underlining added).  In other words, there can be no disparagement if a consumer must go beyond

25  the published material to infer the disparaging meaning of a statement.

26      The same result as in *Nichols* and *TCI* should follow here, where there was: (1) no allegation

27  in the original complaint that MTD made any false statement or publication that disparaged

28  Rosequist's goods, and (2) the insured is compelled to resort to other alleged statements or conduct

(in *TCI*, the plaintiff's own advertising; in *Rosequist*, MTD's act of placing "knockoffs" on the showroom floor) to try to show the underlying plaintiffs sought damages for disparagement.

In *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 203 F.Supp.2d 587, 598 (E.D.Va. 2002), *aff'd on other grounds*, 332 F.3d 215 (4th Cir. 2003), the insured manufactured and sold replicas of the Ford Cobra.  The insured was sued for trademark infringement and other claims by Ford and Carroll Shelby, the Cobra's creator.  The insured asserted that the suit could be read to allege disparagement, because its advertisements "suggested that its products were similar to Shelby's products."  *Id.* at 600.  The court rejected this argument, holding that there could be no actionable "disparagement" because "there are no allegations that (the insured) made any statements regarding the quality of the products manufactured or sold by Shelby or Ford."  *Id.* at 600-01.  *See also Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F.Supp.2d 913, 932 (S.D. Ind. 2000) (APT, the insured, was not entitled to a defense for a patent infringement suit, where the underlying plaintiff "simply fail[ed] to claim that APT said anything negative about its piping, which negative connotation is, after all, the essence of disparagement.").

Here too, the original complaint did not charge MTD with the publication of materials that disparaged Rosequist's "goods, products or services," as required to prove a potential for coverage. The published materials that formed the basis of Rosequist's Lanham Act claim in the original complaint were merely <u>photographs</u>.  There is no allegation whatsoever that the photographs included or constituted false, injurious statements, direct or implied, about the quality of Rosequist's products; thus, there is *no* plausible basis on which to interpret them as disparaging.[3]

    C.    <u>In A Long Line Of Similar Cases, Courts Applying California Law Have Declined To Find Coverage For Disparagement.</u>

In a letter to Travelers, MTD's counsel thoroughly explained the (correct) theory that the original *Rosequist* complaint sounded in trade dress infringement (not disparagement):

---

[3]    Indeed, viewed in context, the mere act of including photographs of Rosequist's furniture designs in MTD's promotional materials should properly be construed as *complimentary*, not disparaging:  MTD allegedly included such photographs to entice customers to come in to its showrooms.  The alleged harm to Rosequist took place, not as a result of the publication of materials that disparaged Rosequist's goods, but as a result of MTD's subsequent <u>conduct</u>, i.e., the act of placing "cheap synthetic knock-offs" on the showroom floor instead of Rosequist's authentic wicker furniture.  *See* §III.E.1, *infra*, 21:2-15 (discussing 2006 promotional materials).

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

1
2
3
      Claim One of Rosequist's complaint alleges MTD's violations of the Lanham
      Act, 15 U.S.C. § 1125, based on its alleged infringement of both Rosequist's
      "Jennifer Chair" trademark and of Rosequist's "trade dress;" that is, the allegedly
      unique design elements of the numerous specific types and items of furniture
      alleged in the language of the Complaint.

4    *See* Tancredy Decl. ¶ _, Ex. 2 (Feb. 27, 2009 ltr. from Gauntlett), at 12.

5          "A trade dress infringement action" – such as that Rosequist initially pled against MTD –

6    "'prohibits a manufacturer from "passing off" his goods or services as those of another maker by

7    virtue of substantial similarity between the products.'" *Superformance Int'l, Inc. v. Hartford Cas.*

8    *Ins. Co.*, 332 F.3d 215, 223 (4th Cir. 2003) (quoting *Blue Bell Bio-Med. v. Cin-Bad, Inc.*, 864 F.2d

9    1253, 1256 (5th Cir. 1989)).  The common law tort of "passing off" is also known as "palming off."

10   *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 778 n.5, 120 L.Ed.2d 615, 112 S.Ct. 2753

11   (1992) (Stevens, J., concurring) (citation omitted).

12         In her original complaint, Rosequist accused MTD of substantially similar conduct, even

13   though she did not expressly accuse MTD of the tort of "palming off.  *See*, *e.g.*, Cmplt., RJN Ex. 1 ¶

14   31 ("[MTD] has directly *copied* those nonfunctional and distinctive elements [of Rosequist's

15   furniture] and has displayed the *copied* furniture for sale in its showrooms.") (emphasis added).  *See*

16   *also id.* ¶¶ 27, 33, and 36 (alleging that customers will be "unknowingly steered instead to cheap

17   imitation knockoffs," confused, and misled).  In several "palming off" cases, the Ninth Circuit found

18   no coverage for disparagement, where (as in the original *Rosequist* complaint) the underlying

19   plaintiff asserted that the insured tried to mislead customers that the insured's products were actually

20   those of another entity, yet there were no allegations that the insured made any negative statements

21   about the quality of the underlying plaintiff's goods, products or services.

22
23
           1.    *Aetna Cas. & Surety Co., Inc. v. Centennial Ins. Co., 838 F.2d 346 (9th*
                 *Cir. 1988)*

24         In *Aetna*, the insured, International Identification ("International"), a manufacturer of

25   identification tags for animals and livestock, was sued under several causes of action.  The

26   underlying plaintiffs (collectively, "Allflex") claimed that International had engaged in unfair

27   competition by advertising Allflex's distinctive animal tags as its own.  *Id.* at 349.  The appeal arose

28   from the contribution action among International's insurers.  The trial court had ruled that the

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

1   primary insurers had no duty to defend because there was no potential for coverage.  *Id.* at 348.

2         The policies at issue covered liability for "the publication or utterance of a libel or slander or

3   of other defamatory or disparaging material."  *Id.* at 350.  International suggested that Allflex's

4   claims could be variously characterized as trade libel or disparagement (among other theories).  *Id.*

5   The Ninth Circuit began its analysis by noting that Allflex's cause of action for false designation of

6   origin under the Lanham Act, "has no arguable relation to any of the primary coverages" for libel,

7   slander, or disparagement.  *Id.*[4]

8                   a.    No Coverage For "Palming Off."

9         The court then moved to the crux of the dispute.  Allflex's cause of action for "unfair

10  competition" was premised on International's "intent of trading upon and profiting from the

11  reputation and good will that [Allflex] owns from their extensive and long standing marketing of

12  (its) products. ..."  *Id.* at 351.  International contended that this cause of action raised a form of trade

13  libel, which the policies covered.  *Id.*  The *Aetna* court rejected this argument, concluding:

14       <u>The gravamen of Allflex's charges</u> against (International) <u>is that they "palmed</u>
         <u>off" Allflex's products as their own.</u>  Appellants suggest that this is enough to

15       make out a trade libel action.  This contention was rejected in the *Nichols* case,
         which we follow here.  <u>Allflex did not, as appellants suggest, charge that</u>

16       <u>(International) had disparaged their products, but rather, had appropriated them</u>
         <u>for their own use.</u>  <u>Although trade libel is covered</u> under the primary policies, <u>we</u>

17       <u>hold that Allflex's action does not raise a possibility of liability on this ground.</u>

18  *Id.* at 351 (underlining added).  There is no principled way to distinguish this holding from the facts

19  of the instant coverage dispute.  Rosequist alleged that MTD used images of her products to entice

20  customers into MTD's showroom to buy MTD's "cheap, synthetic knock-offs," as though they

21  were Rosequist's distinctive authentic designs.  As such, Rosequist alleged that MTD appropriated

22  her products as its own, and for its own use.  Consistent with the holding in *Aetna*, such action

23  "does not raise a possibility of liability" for trade libel or disparagement.

24  ///

25  ///

26  ─────────────────
    [4]   MTD's counsel likened Rosequist's allegations of trade dress infringement to a "false

27  designation of origin" claim under the Lanham Act.  Tancredy, Decl. ¶ 3, and Ex. 2 (Feb. 27,
    2009 Gauntlett Ltr.) at 12.  As the *Aetna* court noted, however, such claims "have no

28  arguable relation" to the disparagement coverage available under the Travelers policy.

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

1

                          b.     <u>Claims For "Injury To Business Reputation" Based On Allegations</u>
<u>Of Copying Another's Goods Do Not Constitute Disparagement</u>

2

3        The Ninth Circuit also considered – and rejected – the suggestion that Allflex's claim of

4  "injury to business reputation" made out a case of disparagement.  *Id.* at 351.  The court stated that

5  such injury, "like a charge of trade libel, would *seem* to be covered under the primary policy," *id.* at

6  352 (italics added), but "appellants must show that the alleged inferior quality of (International's)

7  product constitutes disparagement, and thus an injury to Allflex's business reputation."  *Id.*

8  International, the policyholder in *Aetna*, did not do so, nor has MTD done so here.

9        The *Aetna* court observed that "copying another's goods, except as to quality, constitutes a

10  tort of unfair competition or trade mark infringement, not disparagement."  *Id.* at 352 (citing *Haeger*

11  *Potteries v. Gilner Potteries*, 123 F.Supp. 261, 270 (S.D.Cal. 1954).  The court noted that "even if

12  (International)'s animal tags were inferior in quality … this does not constitute a tort coverable

13  under the policy."  *Id.*  Based on this authority, Rosequist's repeated allegations that MTD copied

14  her goods through the marketing of the "knock-offs," and thereby damaged her business reputation,

15  do <u>not</u> create a potential for coverage, because there was no allegation in the original complaint that

16  MTD disparaged Rosequist's goods, products, or services.

17              2.     *Microtec Res. v. Nationwide Mutual Ins. Co., 40 F.3d 968 (9th Cir. 1994)*

18        In *Microtec*, the Ninth Circuit hewed closely to the holding of *Aetna* to conclude that

19  allegations of "palming off" create no potential for coverage for disparagement.  Green Hills

20  Software sued Microtec, "basically for passing off Green Hills' code as Microtec's."  40 F.3d at 969.

21  The claims pled included false designation of origin and unfair competition.  *Id.* at 970.  Microtec

22  tendered its defense to its insurers under the advertising injury or personal injury provisions of the

23  policies, which covered offenses such as "written or spoken material made public which belittles the

24  products or works of others," and the identical terms at issue in these motions:  "oral or written

25  publication of material that … disparages a person's or organization's goods, products or services."

26  *Id.* at 969-70.  The insurers denied coverage, and Microtec sued.  *Id.* at 969.  The district court

27  determined on summary judgment that the insurers did not owe Microtec a duty to defend against

28  the Green Hills suit, and the Ninth Circuit affirmed.  *Id.*

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

In trying to show a potential for coverage, Microtec pointed to Green Hills' allegations that it had "earned a reputation in the computer software market for being such a market leader," but Microtec threatened and undermined that reputation. *Id.* at 970-71. The court noted that the complaint "uses some words, such as 'marketing,' 'threatened that reputation,' and 'representing,' which seem, if taken in isolation, to suggest a claim for advertising injury. But read in context, they do not. *Green Hills did not aver that Microtec had said anything negative about Green Hills.*" *Id.* (emphasis added). Accordingly, the court rejected Microtec's claim that it faced a potential liability for: (1) libel or slander, or (2) disparagement. As to the first claim, the court noted that:

> The closest the underlying complaint gets to alleging libel or slander is its allegation that Microtec, "by marketing Plaintiff's and Microtec's compilers under Microtec's name, threatens that reputation by representing that Microtec has independently developed compilers that equal or surpass those of Plaintiff." The complaint does not allege Microtec made any false statements about Green Hills, only that Microtec was falsely representing that it developed the compilers independently.

*Id.* at 972. To support its claims it faced potential liability for disparagement, Microtec argued that Green Hills alleged that Microtec disparaged or belittled Green Hills and its products by advertising that Microtec's products were better. *Id.* The court summarily rejected that theory:

> The Green Hills complaint does not state a claim for trade disparagement for the same reason it does not state a claim for slander or libel. The claims raised were that Microtec "palmed off" Green Hills' compilers, not that Microtec made a false or injurious statement about the quality of Green Hills' compilers. See *Aetna*, 838 F.2d at 351-52.

*Id. See also*: *Dennis Produce, Inc. v. Hartford*, 260 Fed.Appx. 989, 991-92; U.S. App. LEXIS 30027 (9th Cir. 2007) (under California law, allegations that an insured 'palmed off' a competitor's products as its own do not trigger coverage for "disparagement of another's products.").

*Homedics*, *Aetna*, *Microtec*, and *Dennis Produce* are all Ninth Circuit cases construing California law, are closely on point, and illustrate that the word "disparage" must be interpreted in accordance with its plain and ordinary meaning. Allegations that one tried to confuse customers about the origin of a product do *not* suffice to trigger coverage for disparagement. The original complaint charged MTD with infringement of trade dress, and accused it of trying to mislead its customers that its "cheap, synthetic knock-offs" were Rosequist's distinctive goods. The Travelers policy provides no coverage for such offenses.

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

1    Rosequist did not initially purport to plead a cause of action for disparagement or trade libel,

2    nor did she plead any facts which, no matter how broadly interpreted, would support a cause of

3    action for those torts.  Because she did not plead the *elements* of any covered offense, there was no

4    potential for coverage under the Policy for the allegations in the original complaint.  This court

5    should rule as a matter of law that Travelers owed MTD no duty to defend the original complaint.

6

7        D.    <u>The Cases Cited By MTD Do Not Support Its Claims</u>

8    MTD cites various cases to support its coverage theories.  None withstand scrutiny.

9            1.    *MTD Cannot Prove A Potential for Coverage Under an "Implied Disparagement" Theory*

10    Recognizing that the original *Rosequist* complaint did not specifically allege that MTD

11    disparaged Rosequist's goods, products or services, MTD argues that "[i]t does not matter if the

12    Complaint only made implied allegations of disparagement.  This is because implicit disparagement

13    is fully actionable in California as Judge Ware of this District noted last year."  MTD Memo. at

14    11:3-5.  MTD bases this conclusion on *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590

15    F.Supp.2d 1244 (N.D.Cal. 2008) and two other cases, each of which is easily distinguished.

16    MTD's assertion about "implicit disparagement" is unsupported.  MTD provides no authority

17    for the concept that there can be potential liability for "disparagement by implication" where (a) the

18    falsity of the statements, or (b) the cause of damages (rather than the identity of the victim) is

19    implicit rather than explicit.

20    In *E.piphany*, the insured was sued by one of its competitors (Sigma) under theories of false

21    advertising and unfair competition.  590 F.Supp.2d at 1248.  E.piphany asserted that its insurer was

22    obligated to provide a defense because the underlying complaint alleged "disparagement."  *Id.* at

23    1247, 1251.  The salient dispute was whether E.piphany's publications alleged in the underlying

24    complaint, which did not specifically identify Sigma or any of its products, but made allegedly false

25    representations about E.piphany's *own* products, were "sufficient to demonstrate a potential for

26    'disparagement' coverage."  *Id.* at 1251.

27    Unlike the original *Rosequist* complaint, Sigma "enumerate(d) a host of specific instances in

28    which E.piphany made … allegedly *false claims*" about Sigma, and alleged that its "market share,

1   sales, and reputation were damaged *as a result of E.piphany's allegedly false statements*."  *Id.* at

2   1253 (emphases added).  The *E.piphany* court held that these "disparagement allegations" implicated

3   the potential for coverage, and thus triggered the insurer's duty to defend.  *Id*.

4        At best, the decision in *E.piphany* suggests that the failure to specifically identify Rosequist

5   in any of MTD's promotional materials is not fatal to MTD's coverage claims.  *E.piphany* does <u>not</u>

6   suggest, however, that there can be a potential for liability for disparagement absent allegations that

7   MTD published statements about Rosequist that (a) were false, and (b) caused her damages.

8        The two other "implied disparagement" cases MTD cites are similarly unhelpful to its cause.

9   In *Liberty Mut. Ins. Co. v. OSI Industries, Inc.*, 831 N.E.2d 192 (Ind.App. 2005), the court found that

10  the complaint raised potential claims for "disparagement" based on the insured's statements that it

11  had "absolute ownership" in the technology and components of the underlying plaintiff's competing

12  oven.  *Id.* at 199.  These statements were alleged to be both false and injurious to the

13  competitor/plaintiff.  In contrast, Rosequist's original complaint made no such contentions about any

14  statements she attributed to MTD.

15       In *Pennfield Oil Co. v. American Feed Industry Ins. Co. Risk Retention Group, Inc.*, 2007

16  U.S. Dist. LEXIS 21456 (D.Neb. 2007), the underlying plaintiff, Alpharma, alleged that the insured,

17  Pennfield, falsely advertised that its animal drug feed additive was approved for multiple uses by the

18  FDA, and that such assertions caused Alpharma's lost sales, profits, and good will.  *Id.* at *4.  As in

19  *E.piphany*, the court found, with virtually no discussion and no citation to authority, that such false,

20  injurious statements "implicitly disparage Alpharma's product because Alpharma is the only other

21  manufacturer of the product with FDA approval."  *Id.* at *24.  As in *E.piphany* and *Liberty Mutual*,

22  *Pennfield Oil* tells us nothing more than that the victim's identity can be implied, but not the falsity

23  or damaging nature of the challenged statements.

24       E.    <u>No Extrinsic Evidence Indicated That MTD Disparaged Rosequist</u>

25       MTD spends more than three pages of its brief arguing that extrinsic "facts available to

26  Travelers independently triggered a duty to defend."  MTD Memo. at 17:15-20:18.  To support this

27  claim, MTD cites cases and purports to identify extrinsic evidence to suggest MTD could have been

28  found liable for disparagement based on the allegations in Rosequist's original complaint.  Factually

and legally, however, MTD's effort fails.  Most importantly, the evidence does not support the conclusions for which it is cited.  MTD also overstates an insurer's burden of inquiry.

> 1.    *The Extrinsic Evidence On Which MTD Seeks To Rely Is Inadmissible, And Would Not Support A Claim for Disparagement In Any Event*

MTD identifies three kinds of evidence that (it claims) "independently raised the possibility of a disparagement claim."  MTD Memo., 19:22-23.  This "evidence" consists of (1) MTD's website that allegedly "wrongfully displayed" a Rosequist chair design; (2) promotional materials widely circulated by MTD for the patrons of a design show, which included photographs of Rosequist's furniture; and (3) advertising flyers MTD used, which allegedly used pictures of actual Rosequist furniture "to advertise MTD's alleged cheap knock-off goods."

As an evidentiary foundation for these materials, MTD cites to a single paragraph of the declaration of Robert Kroon, its Chief Operating Officer.  *See* MTD Memo. at 19:15, 19:18, and 19:21.  That paragraph reads in full:

> During the time period of March/April 2008, MTD distributed promotional materials and advertising flyers to promote its furniture.  MTD also promoted its "Jennifer" Collection on its website during the same time period.

Kroon Decl., ¶ 18.  A quick comparison between the substance of the Kroon declaration and the description of its contents in MTD's memorandum reveals that MTD significantly oversells the *evidence*.  The declaration does not mention photographs, which figure prominently in the argument.  Even if the evidence matched the "spin," however, none of the materials described support MTD's theory.  This is so for several reasons.

*First*, MTD does not explain to Travelers or this court how the website "wrongfully displayed a Rosequist chair design."  *Second*, MTD does not even argue that the website, promotional materials, or advertising flyers said *anything* (much less anything derogatory) about the design or quality of the furniture; thus, one cannot infer disparaging content.  *Third*, it defies logic that any depiction of – or statement about – Rosequist's furniture attributed to MTD would have been disparaging.  As the complaint alleges repeatedly, MTD used Rosequist's distinctive, well-regarded designs to lure customers into its showrooms.  MTD (obviously) would have no business motivation to discourage customers from coming to its showrooms by disseminating *unflattering*

information about or images and descriptions of Rosequist's merchandise.

Indeed, there is evidence in the record that underscores the latter point. The original complaint attached (as Exhibit B) a "promotional mailing" that MTD "widely distributed" in 2006 to announce the MTD/Rosequist exclusivity agreement. The mailing allegedly "prominently featured a color photograph" of a Rosequist chair and ottoman. Cmplt.. ¶ 20, 5:28-6:1. MTD stated it was "pleased to announce the exclusive representation of // wicker, wicker, wicker // 'Add wicker to a room and you add life' – Michael Taylor." *See supra*, at 5:5-11.

MTD neither proffered nor discussed *this* evidence. Perhaps MTD did not do so because this "publication of material" took place before the Travelers policy's coverage period. More likely, MTD ignored such evidence because it constitutes MTD's expression of pride and pleasure to associate itself with Rosequist's furniture. Far from disparaging Rosequist's goods and products, the promotional mailing practically *exalts* them. Viewing the allegations of the original complaint as a whole, MTD, which allegedly infringed Rosequist's trade dress to induce customers to buy MTD's "cheap, synthetic knock-offs," would have *no reason* to disparage Rosequist's goods, lest it drive its own prospective customers away from purchasing its knock-offs of Rosequist's designs.

### 2. MTD Overstates An Insurer's Duty Of Inquiry

If there were extrinsic evidence that MTD had disparaged Rosequist's goods, products, or services, it would have been MTD's burden to bring such evidence to Travelers' attention. *See supra* at 9:16-27. MTD offers no evidence that it notified Travelers at the time of tender or later that MTD's website, advertising, or promotional materials constituted statements that could be seen to disparage Rosequist. Travelers had "no way to know of these new facts, and no obligation to find them out by itself." *Gunderson v. Fire Ins. Exch.*, 37 Cal.App.4th 1106, 1117 (1995).

The cases on which MTD relies do not withstand scrutiny for the propositions MTD has advanced. In *Anthem Electronics, Inc. v. Pacific Empl. Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002), the court cited *American Intern. Bank v. Fidelity & Deposit Co. of Md.*, 49 Cal.App.4th 1558 (1996) ("*AIB*"), for the proposition that "an insurer must undertake a reasonable investigation into the circumstances of the claim before denying coverage." However, *AIB* explained that it is the *insured's* burden "to prove that a reasonable investigation would have uncovered evidence to

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

1    establish coverage or a potential for coverage." *Id.* at 1571.  As set forth above, MTD has made no

2    showing that the innocuous contents of its website, marketing, and promotional materials established

3    even a potential for coverage for disparagement of Rosequist's goods.

4          Despite the lack of such evidence, MTD blithely suggests that Travelers shirked a duty to

5    examine MTD's website, which would have "readily revealed" the "implicit disparagement" claims.

6    MTD Memo. at 18:11-13, n.42.  MTD relies on *Hyundai Motor America v. National Union Fire Ins.*

7    *Co. of Pittsburgh, PA*, 600 F.3d 1092 (9th Cir. 2010).  In *Hyundai*, the insured was sued for patent

8    infringement relating to a "build your own vehicle" ("BYO") feature on its website, and tendered its

9    defense to its insurer, claiming that patent infringement was a covered advertising injury offense.  *Id.*

10   at 1095.  MTD quotes the court's observation that "it is safe to assume that (the insurers) had access

11   to Hyundai's website and could view the BYO feature in making their determination whether to

12   defend."  *Id.* at 1099.

13         *Hyundai* is irrelevant to any issue here:  the contents of Hyundai's website were at the heart

14   of that dispute, and were arguably the *first* thing the insurer should have considered in assessing

15   coverage.  In contrast, the original *Rosequist* complaint does not even mention MTD's website.

16   There can be no basis to suggest that Travelers had – and violated -- a duty to investigate MTD's

17   website, without identifying what disparaging materials that investigation would have discovered

18   had Travelers looked at the MTD website.  MTD has not identified any such disparaging content.

19

20         F.    MTD's Invocation Of The "Relation Back" Doctrine Ignores The Decisive
                 Differences Between The Original And The First Amended Complaints

21         MTD's motion argues at length that "[t]he relation-back doctrine requires that Travelers'

22   defense duty be established from the date the (original complaint) was first tendered because it

23   raised the *possibility* of *coverage*, which was then made more concrete by the FAC."  MTD Memo.

24   at 13:9-11 (emphasis added), *see generally id.* at 13-17.  MTD claims that the FAC merely "clarified

25   the existence of a disparagement claim by making a direct connection between MTD's promotional

26   materials and its disparaging effect on (Rosequist)'s goods."  *Id.* at 14:23-25.  In fact, the FAC did

27   far more than that.  Its new factual allegations established several previously missing elements of a

28   trade libel claim.  *Only* these new allegations triggered Travelers' duty to defend.

1

> *1.    The FAC Alleged, For The First Time, That MTD Published False,
> Disparaging Material That Caused Rosequist Damages*

2

3    To support its "relation back" theory, MTD relies largely on three different opinions from a

4 case litigated in the Eighth Circuit, *American Simmental Ass'n ("ASA") v. Coregis Ins. Co.*  MTD

5 Memo. at 15:11-16:13.  At first, the underlying plaintiff in *ASA* did not expressly plead Lanham Act

6 infringement (which would have triggered the policy's misappropriation/infringement coverage).

7 Upon further consideration, however, the trial court concluded that "all the factual allegations

8 necessary" to trigger a duty to defend were alleged in the original complaint."  *ASA, supra*, 107

9 F.Supp. 2d 1064, 1073 (D.Neb. 2000).

10    From this launching point, MTD argues: "[s]imilarly here, although Wicker's original

11 Complaint did not expressly allege 'disparagement,' it did, like the initial complaint in *American*

12 *Simmental*, make all factual allegations necessary for the disparagement claim, later made explicit."

13 (16:2-4).  "Since the underlying factual allegations were always present in the initial complaint,

14 potential coverage is triggered from the date notice was given of the initial complaint." 16:12-13.

15 According to MTD, "[t]he alleged conduct that implicitly disparages MTD in the Complaint is the

16 same conduct specifically alleged to be disparaging in the FAC."  17:9-11.

17    A simple comparison of both complaints refutes MTD's assertions.  In truth, while the FAC

18 elaborated on the prior allegations of infringement of trade dress, it also alleged, for the first time,

19 that MTD's "false" message disparaged the quality and origin of Rosequist's goods.  *Cf.* Cmplt., ¶

20 27 (no claim that promotional materials contained falsehoods that disparaged Rosequist's goods),

21 with FAC, ¶ 76 (alleging that MTD's promotional materials (including "traditional advertising flyers

22 and similar written publications" created a "false and disparaging" message to consumers that

23 "directly disparaged the quality of Rosequist's goods.")  The FAC also contained a brand new,

24 specific allegation of disparagement that did not appear in the original complaint.  *Id.*, ¶ 77 (MTD's

25 sales employees "orally told potential customers that the cheap synthetic knock-offs displayed on the

26 showroom floors were (Rosequist)'s goods, thus again disparaging the quality and origin of

27 (Rosequist)'s actual furniture.").  These new allegations injected claims that MTD spread falsehoods

28 about Rosequist's goods, which "directly disparaged" their quality, and Travelers agreed to defend.

1   The original complaint, which contained no such allegations, did not create a potential for coverage

2   for disparagement.

3        G.        MTD's Claim It Is Entitled To All Its Attorneys Fees Has No Basis In Law Or Fact.

4            Even though Travelers acknowledged its defense duty when it arose, MTD insists that it is

5   "entitled to reasonable attorneys' fees *without limitation* by California Civil Code Section 2860."

6   MTD Memo. at 21:14-15 (emphasis added).  MTD seeks unrestricted payments from March 31,

7   2008 (the date of the tender of the original complaint) through January 12, 2010, when the Ropers

8   firm substituted in for the Gauntlett firm.  *Id.* at 22:22-24.  MTD's effort to deprive Travelers of

9   Section 2860's protections *after* Travelers accepted the tender must fail for several reasons.

10           Section 2860 provides:

11           When the insured has selected independent counsel to represent (it), … [t]he
             insurer's obligation to pay fees to the independent counsel selected by the insured
12           is limited to the rates which are actually paid by the insurer to attorneys retained
             by it in the ordinary course of business in the defense of similar actions in the
13           community where the claim arose or is being defended.

14   Travelers is entitled to rely on Section 2860 from October 2009 (the date of tender of the FAC)

15   forward.  Judge Illston recently ruled that an insurer's delay in accepting its insured's defense did

16   not preclude it from invoking section 2860 with respect to post-acceptance defense fees.  *See*

17   *Karsant Family Ltd. Partnership v. Allstate Ins. Co*., 2009 U.S. Dist. LEXIS 7558 (N.D.Cal. Jan. 27,

18   2009).  In *Karsant*, Allstate initially declined, then accepted, its insured's tender, and provided a

19   defense.  Judge Illston held Allstate could obtain the benefits of Section 2860 after its acceptance of

20   a duty to defend.  *Id.* at *14.  In doing so, she distinguished cases in which the insured had *not*

21   defended the insured.  *Id.* at *13.  Per *Karsant*, Travelers, which provided a defense effective

22   October 2009, may rely in full on Section 2860.

23           MTD also argues that Travelers is estopped from seeking the benefits of Section 2860.  MTD

24   Memo. at 23:15-17.  MTD does so by alternately ignoring and misstating the evidence.  It begins by

25   quoting Travelers' statement in its December 15, 2009 acceptance letter, that Travelers: "will

26   reimburse the Gauntlett firm for reasonable and necessary expenses during the period of time

27   reasonably necessary … to transition defense to the Ropers firm."  *Id*. at 23:8-9.  From that

28   statement, MTD somehow gleans *this*: "according to Travelers' 12/15/2009 reservation of rights

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment

1   letter, MTD is entitled to *all* unreimbursed reasonable and necessary fees incurred from the date of

2   tender until January 12, 2010." *Id.* at 23:22-24:1 (emphasis added).  Travelers' letter, of course, says

3   no such thing.  Finally, MTD claims "nowhere did Travelers suggest that such fees would be subject

4   to … Section 2860 rates[.]" *Id.* at 23:13-14.

5          There are two basic problems with MTD's estoppel theory.  First, MTD wrongly implies that

6   an insurer must *invoke* the statute to benefit from it … but provides no case support.  Second, the

7   theory is not based on the facts.  In its letter acknowledging receipt of the FAC – which letter MTD

8   attached to its motion – Travelers stated "[s]hould we find that there is coverage …, we will assume

9   the defense and reimburse your reasonable and necessary defense costs *pursuant to … Section

10  2860.*"  *See* Tancredy Decl., ¶ 6, Ex. 5 (Nov. 5, 2009 ltr. to MTD/Gauntlett).

11         Because Travelers has demonstrated it is entitled to obtain the benefits of Section 2860, MTD

12  is not entitled to summary judgment on the issue of its claim for its "reasonable" attorneys' fees.

13         H.     MTD's Prayer For An Award Of Prejudgment Interest Is Premature

14         Similarly, the court should reject MTD's request for what amounts to an advisory award of

15  prejudgment interest on invoices for which Travelers has not been proven to be liable.  There has

16  been no determination that Travelers owed a duty to defend MTD for the original complaint.  *Cf.*

17  *Foxfire, Inc. v. New Hampshire Ins. Co.*, 1994 U.S. Dist. LEXIS 9249 at *15-16 (court calculated

18  prejudgment interest only after a jury determined the insurer breached its duty to defend).  As such,

19  the issue is not ripe for determination now, in what amounts to an evidentiary vacuum.

20  **IV.    CONCLUSION**

21         As a matter of law, Travelers had no duty to defend MTD against the allegations in the

22  original *Rosequist* complaint.  Accordingly, Travelers requests that the court grant Travelers' cross-

23  motion for summary judgment and deny MTD's motion for partial summary judgment.

24   DATED: August 5, 2010                    SEDGWICK, DETERT, MORAN & ARNOLD LLP

25

                                             By: _____/s/ Bruce D. Celebrezze_____
26                                              Bruce D. Celebrezze
                                                Attorneys for Defendant TRAVELERS PROPERTY
27                                              CASUALTY COMPANY OF AMERICA

28

Travelers Property Casualty Company of America's Opp. to Plf.'s Motion for Partial Summary Judgment;
Travelers' Motion for Partial Summary Judgment