1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  James A. Lowe (SBN 214383)
   Andrew M. Sussman (SBN 112418)
3  18400 Von Karman, Suite 300
   Irvine, California  92612
4  Telephone:  (949) 553-1010
   Facsimile:  (949) 553-2050
5  info@gauntlettlaw.com
   jal@gauntlettlaw.com
6  ams@gauntlettlaw.com

7  Attorneys for Plaintiff
   MICHAEL TAYLOR DESIGNS, INC.
8

9                    **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11

12
   MICHAEL TAYLOR DESIGNS, INC., a          )   Case No.:  C10-02432-RS
13 California corporation,                   )
                                             )   Hon. Richard Seeborg
14                Plaintiff,                  )
                                             )   **MICHAEL TAYLOR DESIGNS, INC.'S**
15      vs.                                  )   **OPPOSITION TO TRAVELERS**
                                             )   **PROPERTY CASUALTY COMPANY OF**
16                                           )   **AMERICA'S CROSS-MOTION FOR**
                                             )   **PARTIAL SUMMARY JUDGMENT AND**
17 TRAVELERS PROPERTY CASUALTY               )   **REPLY TO TRAVELERS' OPPOSITION**
   COMPANY OF AMERICA, a Connecticut         )   **TO PLAINTIFF'S MOTION FOR PARTIAL**
18 corporation,                              )   **SUMMARY JUDGMENT**
                                             )
19                Defendant.                 )   Date:      September 9, 2010
                                             )   Time:      1:30 p.m.
20                                           )   Ctrm:      3, 17th Floor
                                             )
21 ─────────────────────────────────────────

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     SUMMARY OF ARGUMENT .............................................................. 1

II.    DISPARAGEMENT COVERAGE IS NOT LIMITED TO CLAIMS THAT EXPRESSLY ASSERT ALL ELEMENTS OF AN INJURIOUS FALSEHOOD CLAIM LIKE TRADE LIBEL OR PRODUCT DISPARAGEMENT ........................... 3

    A.   "Disparagement" Encompasses Conduct that "Denigrates, Dishonors or Detracts from Another's Business Reputation" Regardless of the Label of the Cause of Action ........................................................ 3

    B.   Disparagement Can Be Implicit or Explicit .................................. 3

    C.   A Trademark Dilution Claim Premised on Tarnishment Evidences Disparagement ............................................................ 4

III.   THE EXPRESS ALLEGATIONS OF DILUTION BASED ON "TARNISHMENT" IN ADDITION TO "BLURRING" PRECIPITATED BY ORAL OR WRITTEN PUBLICATION MATERIAL EVIDENCES POTENTIAL DISPARAGEMENT COVERAGE .................................. 5

    A.   The Three Elements for "Disparagement" .................................. 5

    B.   The Elements for Proof of Disparagement So As to Trigger Potential Coverage Are Satisfied ...................................................... 6

        1.   Publication of Statements: ...................................... 6

        2.   Statements That Are Untrue or Misleading ........................ 7

        3.   Statements Made to Influence Customers Not to Deal with the Competitor's Goods or Services .................................... 7

    C.   Travelers' Attempts to Distinguish MTD's Cases Fall Short ............... 8

IV.   TRAVELERS IS CHARGEABLE WITH KNOWLEDGE OF ALL EXTRINSIC EVIDENCE PROVIDED TO IT WHILE THE MTD ACTION WAS PENDING AT THE TIME OF RE-TENDER .................................. 9

    A.   The Extrinsic Evidence of "MTD's Advertising Was "Known to Travelers" As It Was Supplied to It in Connection with MTD's Quest for Trade Dress Coverage .................................................... 9

    B.   Covered Trade Dress Infringement Claims in the Complaint Triggered a Defense Therein As Travelers' Web Xtend Endorsement Provided Inadequate Notice of the Reduction in Coverage It Effected to Be Enforceable Against MTD ...................................................... 10

    C.   No Adequate Notice of the Change in Coverage Was Provided to MTD .......... 13

V.    NONE OF TRAVELERS' ARGUMENTS TO AVOID POTENTIAL COVERAGE UNDER ROSEQUIST'S ORIGINAL COMPLAINT PASS

SCRUTINY ............................................................................................... 15

    A.    **None of the Cases Travelers Cites Compel a Contrary Result** ............................. 15

    B.    **Travelers' Out-of-State Cases Are Readily Distinguishable** ................................. 20

    C.    **The "Nature and Kind of Risk" Limitation Has No Application to a Straightforward Disparagement Offense and Its Application to the Pertinent Facts Alleged** ......................................................................... 21

VI.    **TRAVELERS OWED A DEFENSE FROM THE DATE IT RECEIVED NOTICE OF THE COMPLAINT** ......................................................................... 22

    A.    **No Policy Provision, Including That Barring "Voluntary Payments," Relieves Travelers from Having to Pay All Reasonable Fees Incurred from the Date of the Filing of the First Amended Complaint** ............................. 22

    B.    **Once the Date When Travelers' Duty to Defend Arose Is Fixed, Reimbursement Is Subject to a Reasonable Rate, Not That Imposed Pursuant to Civil Code § 2860** ............................................................. 22

    C.    **Pre-judgment Interest at 10% per Annum Is Due on the Defense Fees Incurred from the Date of Invoice** ......................................................... 24

VII.    **CONCLUSION** ............................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Acme United Corp. v. St. Paul Fire & Marine Ins. Co.,*
214 Fed. Appx. 596 (7th Cir. (Wis.) 2007) ............................................................ 4, 8, 21

*Aetna Cas. & Sur. Co. v. Centennial Ins. Co.,*
838 F.2d 346 (9th Cir. (Cal.) 1988) ..................................................................... 17, 18

*Align Tech., Inc. v. Federal Ins. Co.,*
673 F. Supp. 2d 957 (N.D. Cal. 2009) ...................................................................... 15

*Allstate Ins. Co. v. Fibus,*
855 F.2d 660 (9th Cir. (Cal.) 1988) ......................................................................... 14

*Atmel Corp. v. St. Paul Fire & Marine,*
426 F. Supp. 2d 1039 (N.D. Cal. 2005) ..................................................................... 23

*Central Mutual Ins. Co. v. StunFence, Inc.,*
292 F. Supp. 2d 1072 (N.D. Ill. 2003) ...................................................................... 12

*Cool Fuel, Inc. v. Connett,*
685 F.2d 309 (9th Cir. 1982) ..................................................................................... 2

*DecisionOne Corp. v. ITT Hartford Ins. Group,*
942 F. Supp. 1038 (E.D. Pa. 1996) ............................................................................ 6

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.,*
590 F. Supp. 2d 1244 (N.D. Cal. (San Jose Div.) 2008) ...................................... 3, 4, 8, 16

*Heritage Mutual Insurance Co. v. Advanced Polymer Tech., Inc.,*
97 F. Supp. 2d 913 (S.D. Ind. 2000) ......................................................................... 21

*Homedics, Inc. v. Valley Forge Ins. Co.,*
315 F.3d 1135 (9th Cir. (Cal.) 2003) ........................................................................ 16

*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.,*
686 F. Supp. 2d 1005 (N.D. Cal. 2010) ..................................................................... 20

*Microtec Research, Inc. v. Nationwide Mut. Ins. Co.,*
40 F.3d 968 (9th Cir. (Cal.) 1994) ........................................................................... 18

*National Union Fire Ins. Co. of Pittsburgh, PA v. Seagate Tech., Inc.,*
233 Fed. Appx. 614 (9th Cir. (Cal.) 2007) ................................................................... 7

*Pension Trust Fund v. Federal Ins. Co.,*
307 F.3d 944 (9th Cir. (Cal.) 2002) ............................................................................ 4

*Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.,*
___ F. Supp. 2d ___, 2010 WL 21068484 (E.D. Cal. 2010) .......................................... 22

*Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.,*
    332 F.3d 215 (4th Cir. (Va.) 2003) .......................................................................... 4, 20

*UMG Recordings, Inc. v. American Home Assur. Co.,*
    321 Fed. Appx. 553 (9th Cir. (Cal.) 2008) ....................................................................... 1

*Vector Prods., Inc. v. Hartford Fire Ins. Co.,*
    397 F.3d 1316 (11th Cir. (Fla.) 2005) ............................................................................. 8

*Western Int'l Syndication Corp. v. Gulf Ins. Co.,*
    222 Fed. Appx. 589 (9th Cir. (Cal.) 2007) .................................................................. 8, 16

*Winklevoss Consultants, Inc. v. Federal Ins. Co.,*
    11 F. Supp. 2d 995 (N.D. Ill. 1998) ............................................................................. 18

*Zamani v. Carnes,*
    491 F.3d 990 (9th Cir. 2007) ....................................................................................... 20

**STATE CASES**

*Acceptance Ins. Co. v. Syufy Enterprises,*
    69 Cal. App. 4th 321 (1999) ........................................................................................ 22

*Amato v. Mercury Cas. Co.,*
    53 Cal. App. 4th 825 (1997) ........................................................................................ 23

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.,*
    100 Cal. App. 4th 1017 (2002) ........................................................................ 3, 4, 15, 19

*Bank of the West v. Superior Court,*
    833 P.2d 545 (Cal. 1992) ............................................................................................ 21

*Barnett v. Fireman's Fund Ins. Co.,*
    90 Cal. App. 4th 500 (2001) .............................................................................. 5, 17, 19

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,*
    5 Cal. 4th 854 (1993) .................................................................................................. 18

*B & E Convalescent Center v. State Compensation Ins. Fund,*
    8 Cal. App. 4th 78 (1992) ........................................................................................... 10

*Davis v. United Services Auto. Ass'n,*
    223 Cal. App. 3d 1322 (1990) ................................................................................ 13, 14

*Fields v. Blue Shield of Cal.,*
    163 Cal. App. 3d 570 (1985) ....................................................................................... 14

*Gunderson v. Fire Ins. Exch.,*
    37 Cal. App. 4th 1106 (1995) ...................................................................................... 20

*Haynes v. Farmers Ins. Exch.,*
    32 Cal. 4th 1198 (2004) ........................................................................................ 13, 15

*Jamestown Builders, Inc. v. General Star Indem. Co.*,
  77 Cal. App. 4th 341 (1999)..................................................................................... 22

*La Jolla Beach & Tennis Club, Inc. v. Industrial Indem. Co.*,
  9 Cal. 4th 27 (1994)............................................................................................... 21

*Liberty Mutual Ins. Co. v. OSI Indus., Inc.*,
  831 N.E.2d 192 (Ind. Ct. App. 2005)......................................................................... 9

*Lipson v. Jordache Enters., Inc.*,
  9 Cal. App. 4th 151 (1992)..................................................................................... 10

*MacKinnon v. Truck Ins. Exch.*,
  73 P.3d 1205 (Cal. 2003) ......................................................................................... 2

*Nichols v. Great Am. Ins. Cos.*,
  169 Cal. App. 3d 766 (1985).................................................................................. 16

*Safeco Ins. Co. of America v. Parks*,
  122 Cal. App. 4th 779 (2004)................................................................................. 20

*S.B.C.C.., Inc. v. St. Paul Fire & Marine Ins. Co.*,
  186 Cal. App. 4th 383 (2010).................................................................................. 15

*State of Cal. v. Pacific Indem. Co.*,
  63 Cal. App. 4th 1535 (1998).................................................................................. 24

*Total Call Int'l, Inc. v. Peerless Ins. Co.*,
  181 Cal. App. 4th 161 (2010).................................................................................. 19

**DOCKETED**

*Concept Enterprises, Inc. v. Hartford Ins. Co.*,
  No. CV 00-7267 NM (JWJx), 2001 WL 34050685 (C.D. Cal. May 22, 2001).......................... 23

*Fossil, Inc. v. Fireman's Fund Ins. Co.*,
  No. C99-5023 MHP (N.D. Cal. (S.F.) June 22, 2001 Order)........................................... 10

*Karsant Fam. Ltd. P'ship v. Allstate Ins. Co.*,
  No. C 08-01490 SI, 2009 WL 188036 (N.D. Cal. Jan. 9 2007)....................................... 23

*LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*,
  No. C 04-1001 SBA, 2005 WL 146896 (N.D. Cal. Jan. 20, 2005).................................... 18

*Longs Drug Stores California, Inc. v. Federal Ins. Co.*,
  No. C 03-01746 JSW, 2005 WL 2072296 (N.D. Cal. Aug. 26, 2005) .............................. 24

*Nelson v. West Am. Ins. Co.*,
  No. B143838, 2004 WL 1302500 (Cal. Ct. App. June 14, 2004)........................................ 2

*Pennfield Oil Co. v. American Feed Indus. Ins. Co. Risk Retention Group, Inc.*,
  No. 8:05 CV315, 2007 WL 1290138 (D. Neb. March 12, 2007) ............................... 7, 16

*Piezotronics, Inc. v. Kistler Instrument Corp.*,
  No. 96-CV-0512E(F), 1997 WL 800874 (W.D.N.Y. Dec. 31, 1997)..................................... 3

*Seagate Tech. LLC v. National Union Fire Ins. Co. of Pittsburgh, PA*,
  No. 09-04120 CW, 2010 WL 2898299 (N.D. Cal. July 21, 2010) ................................. 23

*Tosoh SET v. Hartford Fire Ins. Co.*,
  No. A111641, 2007 WL 1242172 (Cal. Ct. App. April 30, 2007) ............................. 19

*Virtual Bus. Enters., LLC v. Maryland Cas. Co.*,
  No. 07C-12-070 MMJ, 2010 WL 1427409 (Del. Super. Ct. Apr. 9, 2010) ............... 6, 9

STATE RULES AND STATUTES

CAL. CIV. CODE § 2860 ............................................................. 1, 2, 22, 23, 24

OTHER AUTHORITIES

1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES, REPRESENTATION OF INSURANCE
  COMPANIES AND INSUREDS, Change in Coverage Afforded by Renewal Policy, § 6:9 at
  6.140-6.142 (5th ed. 2007) ............................................................. 15

CROSKEY, HEESEMAN & JOHNSON, CAL. PRAC. GUIDE: INSURANCE LITIGATION § 7:575 (The
  Rutter Group 2004) ............................................................. 17

IP ATTORNEYS' HANDBOOK FOR INSURANCE COVERAGE IN INTELLECTUAL PROPERTY
  DISPUTES ©2010 ABA, IP Section by David A. Gauntlett, p. 1, §1A(c) .................. 14

JAY DRATLER, JR., INTELLECTUAL PROPERTY: COMMERCIAL, CREATIVE AND INDUSTRIAL
  PROPERTY § 10.03[4] (1995). ............................................................. 5

MCCARTHY ON TRADEMARKS § 24:70 (2001) ............................................................. 5

PROSSER AND KEATON ON THE LAW OF TORTS § 12a, at 963-64 (5th ed. 1984) .................. 3

RANDOM HOUSE UNABRIDGED DICTIONARY 1945 (2d ed. 1993) .................................. 16

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 25 (1995) ............................................. 5

# I.    SUMMARY OF ARGUMENT

Travelers Property Casualty Company of America ("Travelers") acknowledges a defense duty to Michael Taylor Designs, Inc. ("MTD") only from the date of notice to it of the First Amended Complaint on October 29, 2009 until it appointed (but before it installed) defense counsel[1] on December 15, 2009.[2]  It seeks thereby to obscure the undeniable fact that the original complaint (tendered to Travelers on March 31, 2008) sufficiently alleged disparagement potentially covered by Travelers' policy in light of claimant Wicker-Wicker-Wicker's ("Wicker") allegations that MTD tarnished its products through misleading advertising.[3]

Travelers' defense duty arose at an earlier date than it acknowledged because:

**First**, disparagement includes "statements about a competitor's goods, products or services that are untrue or misleading and are made to influence potential purchasers not to buy."[4]  Wicker's original complaint contended that MTD's "widely circulated" "promotional materials" "steered customers" to its "cheap imitation/synthetic knockoffs" of Wicker's furniture, evidencing disparagement from the date of notice of the original complaint – March 31, 2008.

**Second,** Travelers' Web Xtend Endorsement (purportedly eliminating coverage for the offenses of "infringement of trade dress" and "use of another's advertising"/"in your 'advertisement' ") inadequately notified MTD of the elimination of potential coverage for the trade dress claims under these "advertising injury" offenses.  This rendered the Endorsement's provisions unenforceable and entitled MTD to potential coverage of the original complaint from the date of its

---

[1]Ropers, Majeski, Kohn & Bentley ("Ropers"), Redwood City, California.

[2]Supplemental Declaration of Samer S. Aboutalib in Support of Plaintiff's Opposition to Defendant's Cross-Motion for Partial Summary Judgment and Reply to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment on Defendant's Duty to Defend ("Supplemental Aboutalib Decl."), ¶¶ 3-5, Exhibits "18" – "20."  Travelers seeks to limit fees to those payable under Cal. Civ. Code § 2860 from the inception of its defense duty on January 12, 2009, when Ropers actually became counsel of record.  Nevertheless, Travelers' claims representative, Mr. Tancredy, encouraged G&A to continue rendering legal services for MTD and acknowledged Travelers' obligation to pay for them but when requests for payment were forwarded, Travelers refused to pay these fees at G&A's reasonable rates, seeking to retroactively apply Cal. Civ. Code § 2860.

[3]Wicker Complaint, ¶¶ 27, 33, 36.

[4]*UMG Recordings, Inc. v. American Home Assur. Co.*, 321 Fed. Appx. 553, 555 (9th Cir. (Cal.) 2008), citing *Atlantic Mut. Ins. Co. v. Granite State Ins. Co.*, 123 Cal. Rptr. 2d 256, 269 (Cal. Ct. App. 2002).

1     notice to Travelers – March 31, 2008.[5]

2         **Third,** extrinsic evidence accompanied G&A's 15-page February 27 2009 retender letter to

3 Travelers re trade dress infringement claims, as well as explaining why "disparagement" coverage

4 arose under the original complaint[6] on March 9, 2009,[7] which Travelers improperly ignored,[8] does

5 not comport with its duty to investigate.[9]

6         **Fourth,** even if this Court finds that the defense for disparagement only arose as of the filing

7 of the first amended complaint – October 21, 2009 – the defense fees payable are not limited by Cal.

8 Civ. Code § 2860 to any date before January 12, 2010 and require reimbursement of fees at

9 reasonable rates.

10         **Fifth**, MTD is entitled to prejudgment interest at 10% per annum from the date of invoice for

11

12 [5]This argument is properly raised in this Opposition to Travelers' Cross-Motion for Summary
Judgment based on an objective review of the pertinent policy provisions. *Cool Fuel, Inc. v.
Connett,* 685 F.2d 309, 311 (9th Cir. 1982) ("[T]he overwhelming weight of authority supports the

13 conclusion that if one party moves for summary judgment and, at the hearing, it is made to appear
from all the records . . . that there is no genuine dispute respecting a material fact essential to the

14 proof of movant's case and that the case cannot be proved if a trial should be held, the court may *sua
sponte* grant summary judgment to the non-moving party.").

15 [6]*MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1218 (Cal. 2003) ("But even if [the insurer's]

16 interpretation is considered reasonable, it would still . . . have to establish that its interpretation is the
*only* reasonable one.").

17 [7]Declaration of Andrew M. Sussman in Support of Plaintiff's Opposition to Defendant's Cross-
Motion For Partial Summary Judgment And Reply To Defendants' Opposition To Plaintiff's Motion

18 For Partial Summary Judgment on Defendant's Duty to Defend ("Sussman Decl."), ¶ 5, Exhibit
"16."

19 [8]Declaration of Robert J. Kroon in Support of Plaintiff's Motion for Partial Summary Judgment on

20 Defendant's Duty to Defend ("Kroon Decl."), ¶ 10, Exhibits "3," "6" and "7." Mr. Tancredy
ignored G&A's March 9, 2009 letter requesting a defense under the original complaint for assertions
of "disparagement." Declaration of Andrew M. Sussman in Support of Plaintiff's Motion for Partial

21 Summary Judgment and in Opposition to Defendants' Cross-Motion for Partial Summary
Judgment,¶ 6, Exhibit "7."

22

23 [9]*Nelson v. West Am. Ins. Co.*, No. B143838, 2004 WL 1302500, at *5, *9 (Cal. Ct. App. June 14,
2004) ("[T]he insurer is 'charge[d] with notice of all those facts which [it] might have ascertained

24 had [it] diligently pursued the requisite inquiry.' (*California Shoppers, Inc. v. Royal Globe Ins. Co.,
supra,* 175 Cal.App.3d at p. 37, 221 Cal.Rptr. 171; see *KPFF, Inc. v. California Union Ins. Co.,
supra,* 56 Cal.App.4th at p. 974, 66 Cal.Rptr.2d 36; *State Farm Mut. Auto. Ins. Co. v. Martinez-*

25 *Lozano* (E.D.Cal.1996) 916 F.Supp. 996, 1005.) Accordingly, '[t]he risk that an insurer takes when
it denies coverage without investigation is that the insured may later be able to prove that a

26 reasonable investigation would have uncovered evidence to establish coverage or a potential for
coverage.' (*American Internat. Bank v. Fidelity & Deposit Co.* (1996) 49 Cal.App.4th 1558, 1571,

27 57 Cal.Rptr.2d 567.) . . . [A]n insurer is required to provide a defense against *unpled* claims that fall
within policy coverage, provided that facts – whether extrinsic or alleged – available to the insurer

28 sufficiently indicate that the third party could assert such claims.").

1  all attorneys' fees due.

2  **II.  DISPARAGEMENT COVERAGE IS NOT LIMITED TO CLAIMS THAT
3  EXPRESSLY ASSERT ALL ELEMENTS OF AN INJURIOUS FALSEHOOD CLAIM
   LIKE TRADE LIBEL OR PRODUCT DISPARAGEMENT**

4      **A.  "Disparagement" Encompasses Conduct that "Denigrates, Dishonors or
       Detracts from Another's Business Reputation" Regardless of the Label of the
5      Cause of Action**

6      There is no singular tort that encompasses all conduct falling within the offense of

7  "disparagement."[10]  Offense-based coverage does not require proof of the elements of any singular

8  disparagement tort.[11]  It does not matter what the cause of action is labeled in which the fact

9  allegations that constitute disparagement lie.[12]  "California courts have held that to state a

10 disparagement claim within the meaning of the Policy here at issue, the underlying plaintiff must

11 allege that defendant made false, injurious, or derogatory statements about a plaintiff's products,

12 which caused it to suffer pecuniary damages."[13]

13     **B.  Disparagement Can Be Implicit or Explicit**

14     Travelers improperly contends that MTD must make false statements "concerning the quality

15
   _____

16 [10]PROSSER AND KEATON ON THE LAW OF TORTS § 12a, at 963-64 (5th ed. 1984).

17 [11]*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1035 (2002) (Judge Croskey)
   ("The term 'disparagement' has been held to include statements about a competitor's goods that are
18 untrue or misleading and are made to influence potential purchasers not to buy.  Whether
   characterized as a trade libel or product disparagement, an injurious falsehood directed at the
   organization or products, goods, or services of another falls within the coverage of the Atlantic
19 Mutual policy." (citation omitted));

20    *Piezotronics, Inc. v. Kistler Instrument Corp.*, No. 96-CV-0512E(F), 1997 WL 800874, at *3
   (W.D.N.Y. Dec. 31, 1997) ("Travelers' second argument is based on its contention that the word
21 'disparage' in the Policy refers exclusively to the common law tort of product disparagement. . . .
   Reading the Policy as a whole, it is clear that the parties did not intend that 'disparage' would have a
22 specialized legal meaning and instead intended that 'disparage' would have its ordinary meaning,
   which is '[t]o speak of as unimportant or small,' to 'belittle,' '[t]o reduce in esteem or rank.' *The
23 American Heritage Dictionary* (2nd College Edition 1991).  'Disparage,' given its ordinary meaning,
   clearly encompasses the allegations made in support of the fourth counterclaim.");

24    *J. Lamb, Inc.*, 100 Cal. App. 4th at 1032 ("Coverage for personal injury is not determined by the
   nature of the damages sought in the action against the insured, but by **the nature of the claims** made
25 against the insured in that action.  Under the personal injury policy provision, '[c]overage ... is
   triggered by the **offense**, not the injury or damage which a plaintiff suffers.' ").

26 [12]*J. Lamb, Inc.*, 100 Cal. App. 4th at 1034 ("The scope of the duty [to defend] does not depend on
   the labels given to the causes of action in the third party complaint . . . .").
27
   [13]*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1252 (N.D. Cal. (San
28 Jose Div.) 2008).

of Rosequist's goods or products" to support a claim for disparagement. Statements can disparage even if the insured's publication does not "expressly mention the competitor's" products.[14] Disparagement, however, can be found by inference, so long as that inference is reasonably derived from the facts pled.[15] Nor need an insured "explicitly" assert that the competitor's products or technologies are inferior.[16] Even *misleading* statements can evidence disparagement.[17]

Travelers mischaracterizes the Wicker trade dress claims by urging that they are not limited to MTD's imitation of Wicker's products but include "capitalizing on her reputation to pedal 'cheap synthetic knock-offs.' " Travelers' Cross-Motion for Partial Summary Judgment and Opposition to Plaintiff's Motion for Partial Summary Judgment [Document 17] ("Travelers' Opp.") 10:28-11:1. This view is inconsistent with its later recognition that "a trade dress infringement action 'prohibits a manufacturer from "passing off" his goods or services as those of another maker by virtue of substantial similarity between the products.' " *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 223 (4th Cir. (Va.) 2003). (Travelers' Opp., 14:-5-17.) Fact allegations of trademark dilution premised on "tarnishment," distinct from those for "blurring" or "palming off," were alleged in the original complaint, triggering a defense.[18]

**C.    A Trademark Dilution Claim Premised on Tarnishment Evidences Disparagement**

Dilution includes a distinct prong for tarnishment of the reputation of the trademark owner by

---

[14]*Tosoh SET v. Hartford Fire Ins. Co.*, No. A111641, 2007 WL 1242172, at *7, *8 (Cal. Ct. App. April 30, 2007).

[15]*E.piphany, Inc.*, 590 F. Supp. 2d at 1253 ("Taken together, these allegations show a claim for disparagement by 'clear implication.' That is, Plaintiff's alleged statement that it was, for example, 'the only component-based, fully-J2EE complete CRM suite available' necessarily suggests that competitor products did not have such capabilities.").

[16]*Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*, 214 Fed. Appx. 596, 599-601 (7th Cir. (Wis.) 2007).

[17]*J. Lamb, Inc.*, 100 Cal. App. 4th at 1035 ("The term 'disparagement' has been held to include statements about a competitor's goods that are untrue or **misleading** and are made to influence potential purchasers not to buy." (emphasis added)).

[18]*Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 951-52 (9th Cir. (Cal.) 2002) ("[Allegations that might give rise to a claim for defamation] were buried within the complaint to show the moral blameworthiness of the defendants, yet they were enough to trigger the duty to defend.").

association with something unsavory, unwholesome or poor quality.[19]  It does not require any showing of consumer confusion.[20]  Such a "dilution" claim implicates the offense of "disparagement" because the mark holder is asserting that the value of the mark has been "depreciated" and "discredited" by virtue of its wrongful association with the defendant.  Trademark anti-dilution statutes protect trademark holders' property interests in their respective marks.[21]  It can be asserted in tandem with trademark infringement lawsuits,[22] as it is an alternative, and not a supplemental theory of recovery for the trademark holder.[23]

III.  **THE EXPRESS ALLEGATIONS OF DILUTION BASED ON "TARNISHMENT" IN ADDITION TO "BLURRING" PRECIPITATED BY ORAL OR WRITTEN PUBLICATION MATERIAL EVIDENCES POTENTIAL DISPARAGEMENT COVERAGE**

A.  **The Three Elements for "Disparagement"**

To demonstrate a potential for coverage, *it is not necessary* to show every element needed to actually establish liability for a tort that falls within the offense of "disparagement."[24]  Nevertheless, claimant's allegations satisfy each element of the disparagement tort so as to evidence that potential coverage arises:

- Publication of statements about a competitor's goods;
- that are untrue or misleading; and

---

[19]JAY DRATLER, JR., INTELLECTUAL PROPERTY:  COMMERCIAL, CREATIVE AND INDUSTRIAL PROPERTY § 10.03[4] (1995).

[20]RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 25, at 24-122 (1995) ("The dilution theory grants protection to strong, well recognized marks even in the absence of likelihood of confusion, if defendant's use is such as to diminish or dilute the strong identification value of the plaintiff's mark even while not confusing customers as to source, sponsorship, affiliation, or connection.  The underlying rationale of the dilution doctrine is that a gradual attenuation or whittling away of the value of the trademark, resulting from use by another, constitutes an invasion of the senior user's property right in its mark and gives rise to an independent commercial tort.").

[21]MCCARTHY ON TRADEMARKS § 24:70, at 24-124 (2001).

[22]MCCARTHY § 24:70, at 24-123 ("Both infringement by a *likelihood of confusion* and *dilution* can co-exist as legal findings if it is proven that a significant number of customers are likely to be *confused* and *that among the significant number of consumers who are not confused,* the defendant's use will illegally dilute by blurring or tarnishment.").

[23]RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 25, comment (f) (1995).

[24]*See Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 n.5 (2001) ("The underlying complaint alleged publication to third persons, and the content of the statements were allegedly disparaging.  These allegations sufficed to give rise to a potentially covered claim.").

- made to influence customers not to deal with the competitor's goods or services.[25]

## B. The Elements for Proof of Disparagement So As to Trigger Potential Coverage Are Satisfied

### 1. Publication of Statements:

Travelers speciously contends that there was no allegation of "publication of any materials,"[26] ignoring the "promotional materials" widely circulated by MTD[27] as well as the extrinsic evidence provided to Travelers on February 27, 2009 that included the MTD website and advertising flyers disseminated in March/April of 2008.[28] Not only were MTD's statements alleged to be "false and/or misleading," the alleged statements were subject to proof and thus were not puffery. Under California law, this makes Travelers' duty to defend even more evident.

Wicker expressly asserted that:

(1) "The promotional materials widely circulated by [MTD] for the patrons of Westweek . . . compound[ed] the high risk that customers will visit [MTD] looking for [Wicker's] furniture, only to be unknowingly steered instead to cheap imitation knockoffs." Complaint, ¶ 27.

(2) "Customers are likely to be confused and will naturally assume that the knock-offs currently being displayed in [MTD's] showrooms are plaintiffs' products." Complaint, ¶ 33.

(3) "Defendant's actions . . . will substantially dilute and tarnish plaintiff's established trade dress and mislead consumers about the true origins and nature of the cheap synthetic knock-offs." Complaint, ¶ 36.

MTD's alleged statements disparaged by asserting implicitly that the products on its showroom floor (which it promoted through various catalogs and other advertisements) tarnished the

---

[25]*DecisionOne Corp. v. ITT Hartford Ins. Group*, 942 F. Supp. 1038, 1043 (E.D. Pa. 1996) (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)).

[26]If not an "advertisement," then they constitute a "publication" and as such fall within Travelers' "personal injury" coverage for "disparagement."

*Virtual Bus. Enters., LLC v. Maryland Cas. Co.*, No. 07C-12-070 MMJ, 2010 WL 1427409, at *5 (Del. Super. Ct. Apr. 9, 2010) ("Because the Policy does not expressly define the terms 'published' or 'publication,' the Court must look to ordinary and usual meanings. . . . Black's Law Dictionary also defines 'publication' as 'the act of declaring or announcing to the public.' ").

[27]Complaint, ¶ 27.

[28]Kroon Decl., ¶ 10, Exhibit "6," Exhibit "3" thereto (MTD's brochure depicting Wicker's version of Jennifer chair) and ¶18.

1  Wicker trade dress because that is what Wicker alleged in paragraphs 27, 33 and 36. Wicker

2  expressly alleged that MTD's promotional activities directed its potential customers to "cheap

3  synthetic knockoffs" of Wicker's products, which in turn led them to associate those purportedly

4  inferior products with Wicker.

5            **2.      Statements That Are Untrue or Misleading**

6       These promotional materials misled the public to confuse Wicker's genuine and original

7  products with the "cheap," "synthetic," "imitation" knock-offs marketed by MTD on its showroom

8  floor, thereby threatening to "substantially dilute and tarnish plaintiff's established trade dress."[29]

9            **3.      Statements Made to Influence Customers Not to Deal with the Competitor's Goods or Services**

10

11       The complaint alleges that "the promotional materials widely circulated by [MTD] . . .

12  includes photographs of [Wicker's] actual furniture" that steered customers away from Wicker to

13  "cheap," "synthetic," "imitation" knock-offs. The MTD product catalog and website in place at the

14  time made the same images available to the general public. These promotional materials purportedly

15  misdirected consumers to believe that Wicker was the source of synthetic knock-off products,

16  causing customers to think less of it as it had not specifically endorsed and/or supported the

17  marketing of such designs.

18       MTD is no different from a case where a pharmaceutical manufacturer touted its products as

19  FDA-approved when they were not.

20       ○   *Pennfield Oil Co. v. American Feed Indus. Ins. Co. Risk Retention Group, Inc.*,
   No. 8:05 CV315, 2007 WL 1290138, at *1, *8 (D. Neb. March 12, 2007) ("[T]he

21          false assertion that [Pennfield] had FDA approval for multiple uses in advertising and
   loose-leaf inserts . . . [will] implicitly disparage Amphora's product because Amphora

22          is the only other manufacturer of the product with FDA approval.").

23       Nor is it distinguishable from the plethora of other cases where there is a dispute about

24  ownership rights, or the quality of a product used is at issue.

25       ○   *National Union Fire* Ins. *Co. of Pittsburgh, PA v. Seagate Tech., Inc.*, 233 Fed. Appx.
   614, 616 (9th Cir. (Cal.) 2007) (" '[B]ased on its press releases, Seagate is claiming

26          that its technology performs the same functions as Convolve's proprietary
   technology.' ");

27

28  [29]Complaint, ¶¶ 19, 27, 33, 36.

- *Western Int'l Syndication Corp. v. Gulf Ins. Co.*, 222 Fed. Appx. 589, 592 (9th Cir. (Cal.) 2007) (" '[S]tatements . . . that ... the Apollo Show w[ould] not be distributed for the 2003/2004 broadcast season . . . [are] reasonably understood to cast doubt upon the existence or extent of [the Apollo's] property in ... intangible things . . . .' ").

## C. Travelers' Attempts to Distinguish MTD's Cases Fall Short

The presence of a false or misleading comparison that Wicker described as harmful and as "tarnishing its trade dress" (Complaint, ¶ 27) evidences disparagement.

- *Vector Prods., Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1318 (11th Cir. (Fla.) 2005) ("The underlying complaint alleges 'material false representations of fact in a commercial advertisement which . . . are likely to deceive a substantial segment of the ... purchasers of the Accused Product.' The underlying complaint also alleges specific examples of comparisons which suggest that Vector's product is superior to the 'leading brand.' ");

- *Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*, 214 Fed. Appx. 596, 600-01 (7th Cir. (Wis.) 2007) ("Fiskars' underlying complaint specifically alleged that Acme's advertisements were **directed at Fiskars' products** and that **Fiskars lost sales to Acme as a result.** . . . [Therefore,] Acme disparaged Fiskars' products through a false comparison between its products and Fiskars' products." (emphasis added)).

Travelers' attempt to limit MTD's "disparagement by implication" cases to circumstances where the party's disparaged identity was not referenced too narrowly reads the cases it addresses. Its further suggestion that claims for "damages" or "causation" cannot be implied without citation to authority ignores *Barnett*, which stands for a distinct proposition, and Wicker's express allegations of tarnishment caused by MTD's conduct.

Travelers' sister company, represented by the same coverage counsel herein, was found liable for disparagement where customers were led to perceive its competitor as the source of inferior goods in *E.piphany*:[30]

> Plaintiff's alleged statement that it was, for example, "the only component-based, fully-J2EE complete CRM suite available" necessarily suggests that competitor products did not have such capabilities. . . . Plaintiff made false claims about the superiority of its own products, which clearly and necessarily implied the inferiority of Sigma's competing products, resulting in damages to Sigma.

In *Virtual Business*, a potential claim for disparagement arose because allegations that the

---

[30]*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1253 (N.D. Cal. (San Jose Div.) 2008).

1    former employees have sent notices to the customers – seeking their business, suggesting that

2    plaintiffs may not be able to serve them adequately caused the loss of reputation in the targeted

3    business, even though there was no express allegation referencing the opposing company:

> The Court finds that these allegations fall within the ordinary meaning of disparagement.  The communications set forth a *prima facie* case of defamation.  Because of Jacobs' and Dobrzynski's suggestions that the services provided by Griffin would be disrupted or discontinued, the Court finds that the underlying complaint clearly alleges that the communications could potentially have lessened Griffin's rank, reputation or esteem, giving rise to Maryland Casualty's duty to defend.[31]

9    *OSI Industries, Inc.*[32] addressed confusion about proprietary rights to technology engendered

10   by a competitor's conflicting claims of ownership, triggering a defense under potentially covered

11   claims for "disparagement."  There, as here, no labeled cause of action for "disparagement" was

12   asserted, but such claims supported the relief sought in a count for interference with contract

13   analogous to that asserted here for trademark dilution based on tarnishment.

> Liebermann's statements disparaged the "Thermodyne Oven" by creating confusion about the product and the technology in the marketplace because it was unclear as to which company, OSI/Beltec or Thermodyne, had the rights to and was producing an oven with the unique technology.  As a result of such confusion, businesses were allegedly deterred from purchasing the "Thermodyne Oven."[33]

18   So, here, the dilution claim premised on tarnishment as well as other fact allegations

19   evidenced disparagement that necessarily denigrated the quality of Wicker's products in the eyes of

20   sophisticated purchasers, who (according to Wicker) sought an original wicker version of its wicker

21   furniture at MTD, since Wicker had built its reputation on genuine wicker, not "synthetic"/imitation

22   furniture.

## IV. TRAVELERS IS CHARGEABLE WITH KNOWLEDGE OF ALL EXTRINSIC EVIDENCE PROVIDED TO IT WHILE THE MTD ACTION WAS PENDING AT THE TIME OF RE-TENDER

### A. The Extrinsic Evidence of "MTD's Advertising Was "Known to Travelers" As It Was Supplied to It in Connection with MTD's Quest for Trade Dress Coverage

[31] *Virtual Bus. Enters.*, 2010 WL 1427409, at *7.

[32] *Liberty Mutual Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192 (Ind. Ct. App. 2005).

[33] *OSI Indus., Inc.*, 831 N.E.2d at 199.

Travelers acknowledges receipt of MTD's demand for coverage under the offenses in its primary policy covering "use of another's advertising idea in your 'advertisement'" and infringement of trade dress in your "advertisement."[34] Yet, Mr. Tancredy's declaration wholly ignores MTD's March 9, 2009 re-tender follow-up letter, which explained at length why "disparagement" coverage was implicated under the original complaint,[35] as well as the fact that the evidence before Travelers remained unchanged from that in MTD's February 27, 2009 letter.[36]

Retender which, as here, clarifies the previous defense duty "relates back" to the initial date of tender.[37] Indeed, that is precisely what Judge Patel found in *Fossil*[38] (a case Travelers fails to discuss, much less distinguish, in its Opposition brief). Addressing analogous facts (but looking to a trade dress rather than disparagement fact scenario) Judge Patel observed that allegations in the original complaint "raised the possibility of claims for trade dress infringement" (*id.* at p. 7), because incorporation of earlier paragraphs "explicitly stated that Fossil's [the insured's] belts had an appearance virtually identical to Leegin's [the underlying claimant's] belts right down to the words 'genuine leather.'" (*Id.* at p. 15.)

**B.** **Covered Trade Dress Infringement Claims in the Complaint Triggered a Defense Therein As Travelers' Web Xtend Endorsement Provided Inadequate Notice of the Reduction in Coverage It Effected to Be Enforceable Against MTD**

Travelers' definitions for all CGL coverages begin at page 12 of 16 of policy form CG 00 01 10 01.[39] The definition of "personal and advertising injury" is on page 14 of 16 of that policy form.

---

[34] Declaration of Joseph Tancredy in Support of Travelers Property Casualty Company of America's Cross-Motion for Partial Summary Judgment and Opposition to Plaintiff's Motion for Partial Summary Judgment ("Tancredy Decl.") (Document 18), ¶ 3, lines 16-18 and Exhibit 2 thereto.

[35] Kroon Decl., ¶ 10, Exhibit "6"; ¶ 18, Exhibit "3"; Sussman Decl., ¶ 4, Exhibit "15."

[36] Kroon Decl., ¶ 9, Exhibit "5."

[37] *Lipson v. Jordache Enters., Inc.*, 9 Cal. App. 4th 151, 158-61 (1992) (The relevant issues are what facts the insurer knew at the time the insured tendered the defense, both from the allegations on the face of the third-party complaint, and from extrinsic information available to the insurer at the time; and whether these known facts created a potential for coverage.);

*B & E Convalescent Center v. State Compensation Ins. Fund*, 8 Cal. App. 4th 78, 92 (1992) (The duty to defend is determined "from all of the information available to the insurer at the time of the tender of the defense.").

[38] *Fossil, Inc. v. Fireman's Fund Ins. Co.*, No. C99-5023 MHP (N.D. Cal. (S.F.) June 22, 2001 Order).

[39] Declaration of James C. Zacharski in Support of Defendant's Cross-Motion for Partial Summary

It lists "personal and advertising injury" offenses "a" through "g," including:

> 14. "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses:
> . . . .
> f.  The use of another's advertising idea in your "advertisement."
> g.  Infringement of copyright, slogan or trade dress in your "advertisement."

The CGL policy form CG 00 01 10 01 is then followed by several "endorsements," including "Xtend Endorsement" (form CG D1 86 11 03) that begins: "General Description of Coverage – This endorsement broadens coverage." The next endorsement, "Web Xtend Liability" (form CG D2 34 01 05), contains a variety of unexplained changes in language and simply recites "replacement" language without calling attention to any changes from the coverage previously in force.

The only explanation of these changes is on page 4 of 5 of the form under the heading "Personal and Advertising Injury." "The definition of 'Personal and advertising injury' (Section V – Definitions) is deleted in its entirety and replaced by the following definitions of 'advertising injury' and 'personal injury.'" The form then restates separate definitions of "advertising injury" and "personal injury" in words that are substantially similar to those in the original policy form but with some subtle changes, i.e., " 'Advertising injury' means injury arising out of one or more of the following offenses." The form then lists offenses labeled "a" through "c."[40]

The new "advertising injury" offense "c" redrafts offense "c" to eliminate the previously existent coverage for "infringement of . . . trade dress." The new offense "c" limits coverage to "infringement of copyright, title or slogan, provided that claim is made or 'suit' is brought by a person or organization claiming ownership of such copyright, title or slogan."

The new form then recites:

> "Personal injury" means injury . . . arising out of one or more of the following offenses . . . .[41]

---

Judgment and Opposition to Plaintiff's Motion for Partial Summary Judgment ("Zacharski Decl."), ¶ 2, Exhibit "1," p. TRV-POL 095 (Documents 19, 19-1).

[40] The new "advertising injury" offenses "a" and "b" appear to be identical to the new "personal injury" offenses "d" and "e" (concerning oral and written publication) and therefore very similar to the original "personal and advertising injury" offenses "d" and "e" (concerning oral and written publication) but broadening the language to cover "electronic publication."

[41] The form lists offenses labeled "a" through "e." The new "personal injury" offenses "a" and "b"

Travelers' reshuffling of its "personal injury/advertising injury" into distinct "personal injury" and "advertising injury" coverage surreptitiously eliminates coverage for the old offense of "use of another's advertising idea in your 'advertisement,' " as well as coverage for "trade dress infringement" within the new policy, and "g," "infringement of copyright, slogan or trade dress in your 'advertisement.' " The most significant change after the splitting of "personal and advertising injury" offenses into separate "personal injury" and "advertising injury" offenses is that the original "personal and advertising injury" offense "g" has simply disappeared without any notification or explanation.

Offense "g" in the original policy is "the use of another's advertising idea in your 'advertisement,' " while "h" included "infringement of copyright, slogan or trade dress in your 'advertisement.' " Trade dress claims readily would have fallen within either of those offenses,[42] especially as they were advertised by MTD during Travelers' policy period,[43] as Travelers conceded, and especially as trademark dilution claims do not assert infringement of any intellectual property rights.[44] They include the following:

(1) MTD's website (www.michaeltaylordesigns.com) allegedly wrongfully displayed Wicker's "Jennifer" chair design during the period of time that Travelers was making its coverage determination in March/April 2008;

(2) The *promotional materials* widely circulated by MTD for the patrons of the West Week Design Show, which included photographs of Wicker's actual furniture before and after the show's start date on March 26, 2008;

(3) *Advertising flyers* used by MTD in March/April 2008 which allegedly used pictures

---

are identical to offenses "a" and "b" of the original "personal and advertising injury" offenses. Revised "personal injury" offense "c" generally appears to be a slightly longer version of the original "personal and advertising injury" offense "c" (concerning wrongful eviction, etc.). Revised "personal injury" offenses "d" and "e" generally appear to be versions of the original "personal and advertising injury" offenses "d" and "e" (concerning oral and written publication) but which now include "electronic publication."

[42]*Central Mutual Ins. Co. v. StunFence, Inc.*, 292 F. Supp. 2d 1072, 1079 (N.D. Ill. 2003) ("Under a straightforward reading of the revised Primary Policy language, Central had a duty to defend StunFence if Gallagher claimed (as it did) that it suffered an injury that arose out of StunFence's *use* of its 'advertising idea.' In that regard a trademark (a designation affixed to goods to identify their source) easily qualifies as an 'advertising idea' under the line of analysis exemplified by *Flodine* and *Winklevoss*.").

[43]Kroon Decl., ¶ 18.

[44]Travelers' Opp., 5:27; Tancredy Decl., ¶ 2, Exhibit "1" ("The Complaint pled trade dress infringement.").

of actual Wicker furniture to advertise MTD's alleged cheap knock-off goods.

No ordinary insured would realize that two distinct "advertising injury" offenses had been removed. So the effect of Travelers' "Web Xtend Liability" endorsement (that misleadingly implies some "xtension" of coverage) is to silently eliminate two lines of coverage out of 199 pages using the distraction of rearranging and slightly modifying some text. There is no notification of the real change in coverage even as might be found in an "exclusion."

## C.   No Adequate Notice of the Change in Coverage Was Provided to MTD

Pertinent coverage case law supports an attack on the Travelers' "reshuffling" endorsement. As definitively stated by the California Supreme Court in *Haynes*. "[T]he notice of noncoverage of the policy, in a situation in which the public may reasonably expect coverage, must be conspicuous, plain and clear."[45]

MTD reasonably expected coverage under the "Personal and Advertising Injury" offense for either "use of another's advertising idea in your 'advertisement' " or "infringement of trade dress . . . in your 'advertisement' " clearly contained in the main CGL coverage form. Travelers does not contest that if either the "use of another's advertising in your 'advertisement' " or "infringement of trade dress . . . in your 'advertisement' " offenses were applicable, the original complaint evidenced that a defense was due. Indeed, it offers no objection to the 15-page analysis by Mr. Sussman on that point in his February 27, 2009 letter.[46]

**A dramatic reduction in coverage effects a change which requires clear notification.** A notice with a policy renewal that misleads the insured as to the effect of changes on coverage or that does not properly explain their import will not actually reduce coverage.[47] Here, there was no specific notice accompanying the WebXtend and endorsement which asserted MTD that trade dress coverage was being eliminated from the policy, especially as coverage for trade dress could be

---

[45] *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1208 (2004).

[46] Tancredy Decl., ¶ 3, lines 16-18 and Exhibit 2 thereto.

[47] *Davis v. United Services Auto. Ass'n*, 223 Cal. App. 3d 1322, 1332 (1990) ("(5b) USAA does not seriously argue it provided specific, clear notice of the exclusions for losses caused by contractor negligence with the HO-82 policy. It appears to suggest *any* notice that the policy contains changes is sufficient to meet the duty. The law, however, requires notice of the *specific* reduction in coverage; a general admonition to read the policy for changes is insufficient.").

readily secured in standard ISO policy forms under "infringement of trade dress in your 'advertisement' " offense.[48]

A number of cases, including one striking, analogous one from the Ninth Circuit, clarify why the WebXtend Endorsement should not be enforceable.[49] The misleading omission at issue is directly analogous to that in *Davis*. As the court found:

> For example, the chart comparing coverages under the new and old policies, a place where one would reasonably expect USAA to mention the new exclusions, contained no mention of the exclusion, thus tending to lead a reasonable person to expect the coverage under the new policy was the same in this area as in the previous policy. The notices accompanying the HO-82 policy were not sufficient to discharge USAA's duty to apprise the Davises of new exclusions. . . . In the notice, USAA, while stating it was adding "three new exclusions," put this information in the section labeled "Clarification of Coverage." By including these exclusions in the "Clarification" section rather than in the "Reduction" section, USAA failed to put the notice of the new exclusions in the expected place. As stated, the notice was ambiguous since it stated both that the provisions were merely clarifications and were "new exclusions." Further, even in the clarification section, USAA failed to clearly apprise the Davises that it was excluding losses caused by contractor negligence.[50]

Nor is instructing an insured to read his entire policy sufficient where notice of the loss of an important benefit is at stake. As the court in *Fields* observed, addressing analysis omissions in the explanation of changes to key coverage provisions.

> (2b) The uncontested evidence before the trial court demonstrates this limitation of coverage was placed, not in the limitation or exclusion section, but at the end of benefit granting provisions. Blue Shield did not notify Dr. Fields by a clear, conspicuous notice in an expected place that coverage he originally had was now totally withdrawn. The rules of law, these facts, required the granting of Dr. Fields' motion for directed verdict as to the specified compensatory damages.[51]

Here, no separate Notice of Change of Coverage Form was disseminated beyond what could be gleaned from the "misleadingly labeled WebXtend Endorsement."

---

[48] IP ATTORNEYS' HANDBOOK FOR INSURANCE COVERAGE IN INTELLECTUAL PROPERTY DISPUTES ©2010 ABA, IP Section by David A. Gauntlett, p. 1, §1A(c).

[49] *Allstate Ins. Co. v. Fibus*, 855 F.2d 660, 663 (9th Cir. (Cal.) 1988) (8-page amendatory endorsement was held ineffective as notice of the changes made because the altered language was in no way highlighted or explained.).

[50] *Davis*, 223 Cal. App. 3d at 1332.

[51] *Fields v. Blue Shield of Cal.*, 163 Cal. App. 3d 570, 579 (1985).

> When a renewal policy is issued, it is presumed, unless a contrary intention appears, that the parties intended to adopt in the renewal policy the terms, conditions and coverage of the former policy. . . . The only exception to the foregoing rule should be when the notice of change is in the renewal policy itself and misleads the insured.[52]

Similarly, *Haynes* held ineffective an endorsement reducing "permissive" driver coverage without adequately "notifying insureds of reductions in otherwise reasonably expected coverage." *Id.* at 1208. The endorsement was **"not bolded, italicized, enlarged, underlined, in different font, capitalized, boxed, set apart, or in any other way distinguished** . . . ." *Id.* at 1206 (emphasis added). Traveler's WebXtend's effect on the pre-existent trade dress coverage was not "conspicuous, plain and clear"[53] nor was notice of the change to this coverage adequately explained to MTD.[54]

## V. NONE OF TRAVELERS' ARGUMENTS TO AVOID POTENTIAL COVERAGE UNDER ROSEQUIST'S ORIGINAL COMPLAINT PASS SCRUTINY

### A. None of the Cases Travelers Cites Compel a Contrary Result

Travelers' myopic focus on the theory of damages asserted is of no moment.[55] Disparagement does not require the specificity of fact allegation pleading demanded by Travelers.[56] Implied "disparagement" is not limited to discerning the identity of the victim. In two distinct cases, none of the fact allegations Travelers urges must be present were asserted, but that was of no moment.[57] Nor is Travelers' easy presumption that "disparagement" cannot be implicated despite

---

[52] 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES, REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS, Change in Coverage Afforded by Renewal Policy, § 6:9 at 6.140-6.142 (5th ed. 2007).

[53] *See Align Tech., Inc. v. Federal Ins. Co.*, 673 F. Supp. 2d 957, 969 (N.D. Cal. 2009) ("Federal's language does not put an insured reasonably on notice that Federal will not cover claims in a lawsuit whenever that lawsuit also includes a claim for intellectual property. Thus, the 'regardless' clause does not conclusively eliminate coverage for all of the claims in the Cross-Complaint.").

[54] *S.B.C.C.., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal. App. 4th 383 (2010) addressed a distinct exclusion excluding intellectual property claims rather than a disguised write-out of coverage for "trade dress" claims present in the basic commercial general liability policy.

[55] *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1032 (2002) ("Coverage for personal injury [and advertising injury] is not determined by the nature of the damages sought in the action against the insured, but by *the nature of the claims* made against the insured in that action.").

[56] *J. Lamb, Inc.*, 100 Cal. App. 4th at 1035, citing *Sentex Sys., Inc. v. Hartford Acc. & Indem. Co.*, 882 F. Supp. 930, 944 (C.D. Cal. 1995). This latter element may be satisfied by " '*the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general* . . . .' "

---

the express allegations of tarnishment (where harm to reputation is an implicit meaning for that term) is improper. "Tarnishment includes the act of tarnishing. 2. to diminish or destroy the purity of; stain. *The scandal tarnished his reputation.*"[58]

*Homedics, Inc.*[59] dealt with fact allegations that only alleged that Homedics imitated Nikken's product and thereby infringed its patent. At the time that the alleged palming off occurred, however, there were no Wicker-authorized synthetic versions of Wicker's products available in the marketplace. Nor had Wicker authorized their distribution, sale or marketing, much less their advertisement on the showroom floor of MTD.

A distinct factual basis for liability arose because a distinct version of the product – one Wicker expressly described as less representative of its core aesthetic – was being promoted as if it was Wicker's product. This promotional activity by MTD, allegedly denigrated it in the eyes of potential consumers, which typically consisted of high-end designers whose appreciation of the aesthetic distinctions between a synthetic versus a real Wicker product was of prime importance to Wicker according to its fact allegations.

*Nichols,*[60] to the extent it is cited for the proposition that "any statement or conduct by appellants which directly cast aspersions on either Calsat's equipment or license" (*id.* at 774), despite its evidence of disparagement, is no longer consistent with California coverage law.[61] *Nichols*, however, need not be so narrowly construed. No implicit or inferential disparagement claim was available, and the absence of any direct aspersions simply meant that no express disparagement was evident.

*Nichols* only discusses the elements to assert a claim for trade libel. All elements of that tort

---

[57]*Western Int'l Syndication Corp. v. Gulf Ins. Co.*, 222 Fed. Appx. 589, 592 (9th Cir. (Cal.) Feb. 26, 2007) (**No explicit false statement that claimant Apollo lacked broadcast rights to the Apollo Show**);

*Pennfield Oil Co. v. American Feed Indus. Ins. Co. Risk Retention Group, Inc.*, No. 8:05 CV315, 2007 WL 1290138, at *1, *8 (D. Neb. March 12, 2007) (**No explicit false statement that claimant Amphora was not the only manufacturer of product with FDA approval**).

[58]RANDOM HOUSE UNABRIDGED DICTIONARY 1945 (2d ed. 1993).

[59]*Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1141 (9th Cir. (Cal.) 2003).

[60]*Nichols v. Great Am. Ins. Cos.*, 169 Cal. App. 3d 766, 770 (1985).

[61]*E.piphany, Inc.*, 590 F. Supp. 2d at 1253.

---

need not be pled to establish potential coverage for "disparagement."[62]  Moreover, in stark contrast to the facts in *Nichols*, the defamatory meaning of the published statements was not pled by claimants.  As the *Nichols* court observed, at 774, "The Calsat complaint contains no suggestion of the defamatory meaning that appellants seek to infer."  Not so here.[63]

*Centennial Insurance Co.*[64] simply noted that a straight claim of "palming-off," where only those facts were alleged, was not sufficient to provide coverage under an offense for the publication or utterance of a libel or slander or other defamatory or disparaging material.  There is a vast distinction between simply selling **the same products** as those of a competitor and selling a distinct product alleged to be inferior while misleading consumers that it emanates from the same source as Wicker expressly alleges here – seeking to mislead customers to believe that it is the competitor's product and also doing so in a way that leads customers to question the value of the claimant's goods.

As Travelers concedes, "Rosequist alleged that MTD used images of her products to entice customers into MTD's showrooms to buy MTD's 'cheap, synthetic knockoffs,' as though they were Rosequist's distinctive authentic designs."[65]  Those fact allegations, while they may allege "palming off," also alleged a distinct basis for liability for tarnishment-based trademark dilution, depending upon proof that customers thought less of Wicker because of the sale of the "cheap synthetic knockoffs."  In other words, it is not *any* knockoff that is asserted, but a *cheap synthetic* one that would denigrate Wicker's reputation for unique, aesthetically pleasing, originally produced wicker goods.

The *Centennial* court observed, as Travelers notes, "[C]opying another's goods, except as to

---

[62] *See Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 (2001) ("**[T]he duty to defend arises** when the facts alleged in the underlying complaint give rise to a potentially covered claim **regardless of the technical legal cause of action pleaded by the third party."** (emphasis added)). *See also* CROSKEY, HEESEMAN & JOHNSON, CAL. PRAC. GUIDE: INSURANCE LITIGATION § 7:575 (The Rutter Group 2004) ("The complaint need not allege a covered cause of action.").

[63] See § III.B.(1) herein.

[64] *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 348, 350 (9th Cir. (Cal.) 1988).

[65] Travelers' Opp., 15:19-21.

quality, constitutes a tort of unfair competition or trade mark infringement, not disparagement."[66] Travelers, however, fails to note the "except as to quality" qualification. The quality issue is precisely what is at issue here because the inferences Wicker drew from the presence in the marketplace of cheap and synthetic knockoffs is that they denigrated Wicker's reputation for quality goods.

Notably, the Ninth Circuit, in *Centennial*, did not observe that there was a complaint in the underlying allegations about the alleged inferior character in quality of International Identification's animal tags.[67] It simply found that if that was not a true factor, it was of no bearing in its coverage analysis, simply because there was no complaint about it. That is not the case here.

*Microtec*[68] is also inapplicable as a basis for denying the potentiality of coverage for disparagement herein. There, the court found there were no potential allegations of disparagement that were implicated for the simple "palming off" allegations, especially since California law supports a broad definition of disparagement rather than restricting it, as Travelers urges, to the narrowest tort envisioned that could fall within its ambit. "[A] word with a broad meaning or multiple meanings may be used for that very reason – its breadth – to achieve a broad purpose."[69]

As Judge Castillo found in *Winklevoss*,[70] "There is no evidence that the parties intended 'disparage' to refer exclusively to the common law tort of product disparagement . . . ." Like the analogous coverage for the offense of "invasion of privacy," coverage extends to any conduct which falls within the breadth of this broad and generic offense,[71] especially as "[t]he term 'disparagement'

---

[66]*Centennial Ins. Co.*, 838 F.2d at 352, citing *Haeger Potteries v. Gilner Potteries*, 123 F. Supp. 261, 270 (S.D. Cal. 1954).

[67]Indeed, its holding was premised on the fact that "Allflex did not . . . charge that International Identification had disparaged their products, but rather, had appropriated them for their own use." *Id.* at 351.

[68]*Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 970 (9th Cir. (Cal.) 1994).

[69]*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 868 (1993).

[70]*Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 11 F. Supp. 2d 995, 1000 (N.D. Ill. 1998).

[71]*LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at *10 (N.D. Cal. Jan. 20, 2005) ("[N]othing in the Liberty Policies limits 'right of privacy' to common law right of privacy. *See Park Univ. Enters. v. Am. Cas. Co. of Reading*, 314 F. Supp. 2d 1094, 1109 (D. Kan. 2004) (noting that if insurer wanted the term 'right of privacy' to be defined by importing Illinois tort standards, 'it should have indicated as much in the policy').").

has been held to include statements about a competitor's goods that are untrue or misleading and are made to influence potential purchasers not to buy."[72] So long as "[t]he underlying complaint alleged publication to third persons, and the content of the statements were allegedly disparaging[,] [t]hese allegations sufficed to give rise to a potentially covered claim."[73]

*Total Call International, Inc.*[74] did not rule that under no circumstances must the prospective customer of a client be precluded from finding disparagement alleged where it must reference facts beyond published material to infer the disparaging meaning of a statement. *Total Call* does not stand for the general proposition urged by Travelers that "there can be no disparagement if a consumer must go beyond the published material to infer the disparaging meaning of the statement."[75] *Total Call* does not support such a broad reading of a generalized rule of applicable coverage law. Travelers ignores that Wicker alleged trade dress dilution via tarnishment because it asserted that a reasonable understanding of MTD's promotional activities was to lead consumers to view cheap synthetic knock-offs as if they were authorized by Wicker.[76]

To the extent there is a factual dispute about whether such inferences are reasonable, that itself evidences the potentiality for coverage[77] and adopts a view of implied disparagement no different from that of recent California case law.[78]

Indeed, *E.piphany* clarified why that was the case. In ignoring an express motion for reconsideration, Judge Ware, following the principal *E.piphany* ruling (and rejecting the argument

---

[72]*J. Lamb, Inc.*, 100 Cal. App. 4th at 1035.

[73]*Barnett*, 90 Cal. App. 4th at 510 n.5, citing 5 WITKIN, CAL. PROCEDURE (4th ed. 1997) Pleading, §§ 694-696, pp. 154-156.

[74]*Total Call Int'l, Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 169 (2010).

[75]Travelers' Opp., 12:24-25.

[76]Complaint, ¶¶ 33, 36.

[77]*Tosoh SET v. Hartford Fire Ins. Co.*, No. A111641, 2007 WL 1242172, at *6 (Cal. Ct. App. (1st Dist.) April 30, 2007) ("When there is a factual dispute on which coverage depends, that fact itself creates a potential for coverage and hence a duty to defend. (See *Horace Mann Ins. Co. v. Barbara B., supra,* 4 Cal.4th at pp. 1083-1084.)").

[78]*Tosoh SET*, 2007 WL 1242172, at *8 ("[A] publication need not expressly identify the disparaged product or service as long as the identity of the product or service is clearly implied. . . . A statement may impliedly be 'about' a competitor's goods without directly mentioning the competitor or its products.").

offered by the same counsel who represents Travelers here), stated:

> The fact that the *Total Call* court reached a different result than this Court is of no moment since the factual circumstances in both cases are distinguishable. In contrast to *Total Call*, the Court here found that the allegations in the underlying complaint referred disparagingly to a competitor by clear implication. (See December 16 Order at 9.) . . . In *Total Call*, however, the complaint only alleged that the policy holder did not provide the service it promised in its advertisements, which by itself "carrie[d] no implication" that one company's phone cards cost more or less than another's.[79]

So here, the disparaging implication is evident in Wicker's focus on the "cheap imitation" "synthetic" characteristics of the MTD version of furniture products in which Wicker claimed design rights. Cases refusing to equate "palming off" claims with one for trade libel in all circumstances when the identical goods sold by one company are promoted by another have no application here. Contrary to Travelers' argument, the cases it cites are easily distinguishable on the facts.[80]

Nor does MTD rely upon the simple reference to a claim for injury to reputation in the Wicker original complaint, or speculative assumptions about additional fact allegations Wicker could have made to establish a defense. Travelers' citation to *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106 (1995) is inapposite because that case involved extrinsic evidence of actual physical occurrences that did not come into existence until *after* the insurer's denial. Similarly, *Safeco Ins. Co. of America v. Parks*, 122 Cal. App. 4th 779 (2004) addressed facts where the insured discovered extrinsic evidence that showed there was *no* duty to defend.

### B.    Travelers' Out-of-State Cases Are Readily Distinguishable

*Superformance*[81] does not support a contrary result. The district court's opinion therein, did not analyze facts of tarnishment-based dilution where the physical appearance of products and the representations made at the showroom floor and in marketing claimed that they were, in effect, the products of Wicker when they were in fact alleged to be distinct from and inferior to them, i.e.,

---

[79]*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*, 686 F. Supp. 2d 1005, 1007 (N.D. Cal. 2010).

[80]Travelers' reply brief is limited to the factual and legal issues raised by opposing party. It cannot be used to expand the issues presented for adjudication beyond those in the moving papers. N.D. Cal. Rule 7-8(c); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

[81]*Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215 (4th Cir. (Va.) 2003).

"cheap synthetic knock-offs."

*Advanced Polymer*[82] also failed to analyze claims for "implicit disparagement." Indeed, each of these cases pre-dates the seminal decision in *Acme United Corp.*,[83] where St. Paul's position that implicit disparagement was not implicated where the kind of technology at issue – titanium versus stainless steel scissors – was promoted, and thus the marketplace for non-titanium scissors was adversely impacted. That decision, reversed in Acme's favor against St. Paul, is fully consistent with the other cases cited in MTD's brief which post-date those Travelers relies upon.

**C.     The "Nature and Kind of Risk" Limitation Has No Application to a Straightforward Disparagement Offense and Its Application to the Pertinent Facts Alleged**

As articulated by the California Supreme Court, the "nature and kind of risk" limitation was originally used as a method to expand the scope of coverage for a policyholder's benefit where "the insured would reasonably expect such coverage based on the 'nature and kind of risk covered by the policy.' "[84] Courts limiting the duty to defend to "the *nature and kind* of risk covered by the policy" typically object to the transposition of coverage from one type of policy to a context foreign to its nature, objectives, and reasonably anticipated meaning. Cases referencing this doctrine have similarly limited its application to circumstances where the proposed policy construction would be wholly inconsistent with the enforcement of another policy provision or would render it superfluous.[85] Allegations that raise a "possibility of liability" for disparagement, as Travelers concedes the first amended complaint did, necessarily encompass the "nature and kind of risk"

---

[82]*Heritage Mutual Insurance Co. v. Advanced Polymer Tech., Inc.*, 97 F. Supp. 2d 913, 932 (S.D. Ind. 2000).

[83]*Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*, 214 Fed. Appx. 596 (7th Cir. (Wis.) 2007).

[84]*La Jolla Beach & Tennis Club, Inc. v. Industrial Indem. Co.*, 9 Cal. 4th 27, 41 (1994), citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d at 273-75 and *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th at 299. ("As noted above, employer's liability policies operate as 'gap-fillers,' providing 'protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law.' . . . Construing the workers' compensation portion to also include the duty to defend any claim asserted by an employee, including civil suits for damages, renders the employer's liability section superfluous. We do not believe this result is what the parties reasonably intended or expected." *Id.* at 42.).

[85]*Bank of the West v. Superior Court*, 833 P.2d 545, 551 (Cal. 1992) (Indemnification for monies paid in settlement precluded where suit sought no damages within meaning of policy but only "disgorgement of ill-gotten gain.").

---

contemplated by the policy's "disparagement" coverage.

## VI. TRAVELERS OWED A DEFENSE FROM THE DATE IT RECEIVED NOTICE OF THE COMPLAINT

### A. No Policy Provision, Including That Barring "Voluntary Payments," Relieves Travelers from Having to Pay All Reasonable Fees Incurred from the Date of the Filing of the First Amended Complaint

No provision of the "voluntary payments" clause is implicated once the insurer is on notice of the suit since it has no application where an insurer would have denied a defense.[86] Travelers cannot now alter its policy by asking this Court to adopt limitations that it does not contain.[87] "The no-voluntary-payments provision is superseded by an insurer's antecedent breach of its coverage obligation."[88] As the *Raisin Bargaining Association* court recently found, a claim for relief was still stated after initial tender of the defense of the suit, even though a subsequent amended pleading was set forth that had not been brought to the insurer's attention since the obligation of the defendant's suit evidenced by the subsequent pleading triggered the defense.[89]

### B. Once the Date When Travelers' Duty to Defend Arose Is Fixed, Reimbursement Is Subject to a Reasonable Rate, Not That Imposed Pursuant to Civil Code § 2860

As Judge Whyte found in *Atmel*, " '[t]o take advantage of the provisions of Civil Code § 2860, an insurer must meet its duty to defend and accept tender of the insured's defense, subject to a reservation of rights.' . . . St. Paul's argument is premised upon what would have happened *if* it had defended Atmel subject to a reservation of rights. St. Paul may very well be correct that if it had defended Atmel subject to a reservation of rights, St. Paul and Royal would have shared the § 2860

---

[86] *Jamestown Builders, Inc. v. General Star Indem. Co.*, 77 Cal. App. 4th 341, 347 (1999) ("There are numerous circumstances in which a no-voluntary-payments provision may be deemed inapplicable or where disputed issues of material fact prevent resolution short of trial. First, insurers that decline a tendered defense are out of luck.").

[87] *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal. App. 4th 321, 331 (1999) ("If the parties had intended coverage to be limited to the vicarious liability type suggested by the defendants, language clearly embodying that intention was available.").

[88] *Jamestown Builders, Inc.*, 77 Cal. App. 4th at 348.

[89] *Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, ___ F. Supp. 2d ___, 2010 WL 2106848, at *4 (E.D. Cal. 2010), citing *Belz*, 158 Cal. App. 4th at 628 ("[E]nforcement of a no-voluntary-payments clause is premised on an insurer's lack of consent to a given expenditure.").

costs. However, St. Paul did not defend Atmel."[90] This case in turn follows earlier authority which clarifies that "[w]here an insured mounts a defense at the insured's own expense following the insurer's refusal to defend, the usual contract damages are the costs of the defense."[91]

It is undisputed that Ropers did not assume its role as appointed defense counsel until January 12, 2010.[92] Prior to that date, Travelers has not discharged its defense duties to its insured. Whatever notice it gave to the insured, purporting to reserve rights to apply Civil Code § 2860 prior to its actual assumption of a defense, is of no moment since it cannot vary the terms of its contract obligation.

Having not provided the defense, Travelers has not discharged its defense duty, and the benefits of Civil Code § 2860 do not appertain.[93] This is the clear import of the *Atmel* decision. Prior to the date of performance it has not met its duty to defend. Merely accepting tender is but one element, the second is performance; that does not exist here.

*Karsant*[94] has no application because Travelers' appointed counsel did not agree to allow Gauntlett & Associates to serve as independent counsel at its expense due to a conflict of interest precipitated by the provisions of Civil Code § 2860 after Ropers appeared of record. Travelers cannot limit the rates it will pay in reimbursing MTD's defense expenses incurred before Travelers' appointed counsel assumed MTD defense since prior to that date it was not discharging its defense. As Judge, now State Court of Appeals Justice, Manella observed:[95]

---

[90] *Atmel Corp. v. St. Paul Fire & Marine*, 426 F. Supp. 2d 1039, 1047, 1048 (N.D. Cal. 2005) (footnote omitted).

[91] *Amato v. Mercury Cas. Co.*, 53 Cal. App. 4th 825, 831 (1997).

[92] Kroon Decl., ¶ 16, Exhibit "12."

[93] *Seagate Tech. LLC v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 09-04120 CW, 2010 WL 2898299, at *3, *4 (N.D. Cal. July 21, 2010) ("When an insurer has a duty to defend, it must 'mount and fund a defense.' *Buss v. Superior Court*, 16 Cal.4th 35, 58, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997). . . . Because ISOP has failed timely to pay Seagate any defense costs related to the Santa Cruz and arbitration actions, and only a small portion of the Singapore actions, ISOP breached its duty to defend these claims.").

[94] *Karsant Fam. Ltd. P'ship v. Allstate Ins. Co.*, No. C 08-01490 SI, 2009 WL 188036, at *5 (N.D. Cal. Jan. 9 2007).

[95] *See Concept Enterprises, Inc. v. Hartford Ins. Co.*, No. CV 00-7267 NM (JWJx), 2001 WL 34050685, at *3 (C.D. Cal. May 22, 2001);

*Seagate Tech. LLC*, 2010 WL 2898299, at *4 ("The next question is whether this breach

Hartford's reliance on § 2860 is unavailing. . . . Hartford misses the import of its failure to defend the entire mixed SAS action as required under California law. To take advantage of the provisions of § 2860, an insurer must meet its duty to defend and accept tender of the insured's defense, subject to a reservation of rights. In this case, Hartford refused to accept tender of the entire defense as required under California law. . . . Having failed to satisfy the factual predicate to § 2860, Hartford cannot belatedly invoke that section's arbitration and rate provisions. . . . Hartford "had ample opportunity to step in and hire counsel at its own set rates. Having wrongfully refused to defend [Coustic], it cannot now insist that [Coustic] should have paid defense counsel only what [Hartford] itself would have paid its counsel."[96]

Travelers therefore cannot limit the rates it will pay defense counsel in the *Rosequist* action until it fully assumed its duty to defend MTD. Thus, Travelers must pay the reasonable rates that MTD's counsel actually charged in the *Rosequist* action filed and forwarded to Travelers the same day, March 31, 2008.

### C. Pre-judgment Interest at 10% per Annum Is Due on the Defense Fees Incurred from the Date of Invoice

Travelers offers no authority that would preclude this Court from finding such fees recoverable now at the legal rate of 10% per annum from the date of invoice until the assumption of defense duties by the Ropers firm, January 12, 2010 if this Court properly finds Travelers' Web Xtend Endorsement unenforceable.[97]

## VII. CONCLUSION

**First**, a duty to defend arose for fact allegations of "disparagement" under the original complaint from the date MTD provided Travelers notice of the Complaint – March 31, 2008 – until the assumption of defense duties by the Ropers firm – January 12, 2010.

**Second**, the same result will attend if Travelers' WebXtend Endorsement is found

---

extinguishes ISOP and National Union's right to compel arbitration under section 2860. The Court concludes that it does." (citing *Concept Enterprises, Inc.*, 2001 WL 34050685, at *3).

[96] *See State of Cal. v. Pacific Indem. Co.*, 63 Cal. App. 4th 1535, 1544 (1998) ("[The insurer] materially breached its duty to defend, and therefore had forfeited its right to participate in or control the . . . defense, whether based on Civil Code section 2860 or otherwise.").

[97] *Longs Drug Stores California, Inc. v. Federal Ins. Co.*, No. C 03-01746 JSW, 2005 WL 2072296, at *4 (N.D. Cal. Aug. 26, 2005) ("The Court concludes that the date on which Federal *could have* computed the amount owed was on the date Longs was billed for the attorneys fees and costs in the [relevant] action.").

1   unenforceable under the original complaint's distinct claim for trade dress covered under Travelers'

2   CGL policy.

3   **Third,** MTD's retender of the complaint, with extrinsic evidence attached, on February 27,

4   2009 compelled a defense for potentially covered claims of "disparagement," even if Travelers'

5   WebXtend Endorsement is found enforceable and no potential coverage for trade dress infringement

6   arose under the Travelers CGL policy. MTD's March 9, 2009 letter, which expressly alluded to

7   "disparagement" and relied on the extrinsic evidence in the February 27, 2009 letter, required a

8   defense as of that date (if not earlier) since it simply relied on facts previously provided to Travelers

9   whose legal significance it refused to re-evaluate.

10   **Fourth,** if the Court finds that the duty to defend did not arise until the First Amended

11   Complaint was filed and noticed to Travelers, then the duty to reimburse reasonable fees plus pre-

12   judgment interest arose as of that date, October 21, 2009, until the assumption of a defense by

13   Travelers through Ropers on January 12, 2010.

14   **Fifth,** prejudgment interest is recoverable from the date of defense fee invoice at 10% per

15   annum under applicable California law.

16

17   Dated: August 19, 2010                **GAUNTLETT & ASSOCIATES**

18

19                                          By:    /s/ David A. Gauntlett
                                                   _____
20                                                 David A. Gauntlett
                                                   James A. Lowe
21                                                 Andrew M. Sussman

22                                          Attorneys for Plaintiff
                                            MICHAEL TAYLOR DESIGNS, INC.

23

24

25

26

27

28