SEDGWICK, DETERT, MORAN & ARNOLD LLP
BRUCE D. CELEBREZZE  Bar No. 102181
bruce.celebrezze@sdma.com
GREGORY C. READ  Bar No. 049713
gregory.read@sdma.com
MATTHEW C. LOVELL  Bar No. 189728
matthew.lovell@sdma.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone:  (415) 781-7900
Facsimile:  (415) 781-2635

Attorneys for Defendant TRAVELERS PROPERTY
CASUALTY COMPANY OF AMERICA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TAYLOR DESIGNS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>Defendant. | CASE NO. C10-02432-RS<br><br>**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: September 9, 2010<br>Time: 1:30 p.m.<br>Judge: Hon. Richard Seeborg<br>Court: Courtroom 3, 17th Floor |

Defendant Travelers Property Casualty Company of America ("Travelers") submits this reply memorandum regarding the pending cross-motions of Travelers and plaintiff Michael Taylor Designs, Inc. ("MTD") for partial summary judgment regarding the duty to defend.

SF/1717115v1

CASE NO. C10-02432-RS
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S
REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENt

## TABLE OF CONTENTS

**PAGE NO**.
I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

II. FACTUAL RECAPITULATION ................................................................................. 2

III. ARGUMENT .................................................................................................................. 3

    A. The Elements Of Disparagement Which May Be Covered Under Liability Insurance Policies Are Well-Established Under California Law .................................................................................................................... 4

    B. The Original *Rosequist* Complaint Did Not Allege That MTD Made False Or Misleading Statements About Rosequist's Goods, Products, Or Services ........................................................................................................... 4

    C. MTD's Contention That "A Trademark Dilution Claim Premised on Tarnishment Evidences Disparagement" Is Novel, Poorly Explained, And Unfounded ................................................................................................ 5

    D. MTD's Cases Involving "False or Misleading Comparisons" And Implicit Disparagement Are Tangential – At Best – To the Issues Before the Court ............................................................................................... 6

    E. Rosequist Accused MTD of Imitation, Which Is the Antithesis of Disparagement ........................................................................................................ 7

    F. MTD Has Failed to Distinguish In Any Substantive Manner the Extensive Authority Cited By Travelers ............................................................ 7

    G. The "Relation Back" Doctrine Is Irrelevant, Because There Is Nothing Of Substance For MTD's Subsequent Tenders To "Relate Back" To ................ 10

    H. The WebXtend Liability Endorsement Contains the Policy's Sole "Personal Injury" And "Advertising Injury" Liability Coverage Terms ............. 11

        1. At All Times, The Coverage That MTD Purchased From Travelers Included The WebXtend Endorsement ................................... 12

        2. The Cases MTD Cites Have No Bearing on the Facts At Issue ............... 13

    I. Travelers' Acceptance of the Tender Entitles It to the Benefits of Civil Code § 2860 .......................................................................................................... 14

    J. MTD's Prayer For An Award Of Prejudgment Interest *Remains* Premature ............................................................................................................. 15

IV. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**PAGE NO**.

**<u>Federal Cases</u>**

*Aetna Cas. & Surety Co., Inc. v. Centennial Ins. Co.*,
  838 F.2d 346 (9th Cir. 1988) ..................................................................................8, 9, 10

*Allstate Ins. Co. v. Fibus*,
  855 F.2d 660 (9th Cir. 1988) ...............................................................................................14

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  590 F.Supp.2d 1244 (N.D.Cal. 2008) ...........................................................................4, 6, 7

*Homedics, Inc. v. Valley Forge Ins. Co.*,
  315 F.3d 1135 (9th Cir. 2003) ......................................................................................7, 10

*Karsant Family Ltd. Partnership v. Allstate Ins. Co.*,
  2009 U.S. Dist. LEXIS 7558 (N.D.Cal. Jan. 27, 2009) ......................................................15

*Liberty Mut. Ins. Co. v. OSI Industries, Inc.*,
  831 N.E.2d 192 (Ind.App. 2005) ..........................................................................................7

*Microtec Research. v. Nationwide Mut. Ins. Co.*,
  40 F.3d 968 (9th Cir. 1994) ..........................................................................................9, 10

*Pension Trust Fund v. Federal Ins. Co.*,
  307 F.3d 944 (9th Cir. 2002) ................................................................................................6

*Seagate Tech. LLC v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,
  No. 09-04120 CW, 2010 WL 2898299, (N.D. Cal. July 21, 2010) ...................................15

*Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*,
  203 F.Supp.2d 587, 598 (E.D.Va. 2002) ..............................................................................5

*Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*,
  332 F.3d 215 (4th Cir. 2003) ............................................................................................5, 8

**<u>State Cases</u>**

*Aerojet-General Corp. v. Transport Indem. Co.*,
  17 Cal.4th 38 (1997) ..........................................................................................................11

*Barnett v. Fireman's Fund Ins. Co.*,
  90 Cal.App.4th 500 (2001) ...................................................................................................4

*Blatty v. New York Times Co.*,
  42 Cal.3d 1033 (1986) ..........................................................................................................4

*Davis v. United Services Auto. Ass'n*,
  223 Cal.App.3d 1322 (1990) ........................................................................................13, 14

*Fields v. Blue Shield of California*,
  163 Cal.App.3d 570 (1985) ..........................................................................................13, 14

## TABLE OF AUTHORITIES

**PAGE NO**.

*Haynes v. Farmers Insurance Exchange*,
  32 Cal.4th 1198 (2004) .................................................................................................13

*Nichols v. Great American Ins. Cos.*,
  169 Cal.App.3d 766 (1985) ...........................................................................................5

**Statutes**

California Civil Code § 2860 ....................................................................................................2, 14

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In the course of 25 pages fattened by 97 single-spaced footnotes, MTD has introduced no evidence or cogent argument to show that the allegations in the original complaint in the *Rosequist* action, or any admissible extrinsic evidence, created a potential for coverage under the insurance policy Travelers issued to MTD. There was no allegation in the original *Rosequist* complaint that MTD's "oral or written publication of material" disparaged Ivy Rosequist's "goods, products or services." Accordingly, Travelers is entitled to a determination as a matter of law that it had no duty to defend MTD until the tender of the first amended complaint ("FAC") in October 2009.

MTD argued, until its counsel recognized that the Travelers policy contained no coverage for trade dress infringement, that Travelers had a duty to defend the *Rosequist* action because it involved a claim of trade dress infringement. Once it recognized that the Travelers policy afforded no coverage for trade dress infringement, MTD changed its tune and started asserting that the policy's coverage for "disparagement" was triggered. MTD contends in essence that "disparagement" is the new catch-all for *any* type of intellectual property infringement. MTD takes any alleged intellectual property wrong and simply hangs the moniker of "disparagement" on it. MTD's transparent attempt to transform the *Rosequist* claims against it into something the claims never were must fail.

In its "Summary of Argument," MTD lists five reasons why, it contends, there was a claim of "disparagement" such that Travelers' defense duty arose before October 2009. MTD Opp./Reply, Dkt. 22 ("Opp."), 1:9-3:1. None pass muster. *First*, MTD's citation to cases in which courts found there to be allegations of disparagement under markedly different facts does not suggest a potential for such coverage here. Nothing in the record supports a finding that MTD made the requisite false or misleading statements that allegedly caused Rosequist's damages. The alleged harm was attributed not to MTD's statements, but to MTD's <u>conduct</u>, the replacement of Rosequist's goods in the MTD showroom with "cheap, synthetic knock-offs." The coverage decision should be governed by those cases from the Ninth Circuit and elsewhere which establish that allegations of imitation do not create potential liability for disparagement.

*Second*, the WebXtend Liability Endorsement, which provided coverage for disparagement but <u>not</u> for trade dress infringement – which is what was actually alleged against MTD in the

1 original complaint – applied at all times that Travelers insured MTD, and establishes the full extent of the advertising injury and personal injury coverage under the Travelers policy. MTD's lengthy -- and purposefully misleading -- argument that the "new" WebXtend Endorsement was ineffective to implement Travelers' "surreptitious" efforts to "change" coverage "previously in force" under the "original" policy has no basis in fact. *See generally* Opp., 10-15.

*Third*, MTD's "extrinsic evidence" does not show that MTD faced potential liability for disparagement. At most, it shows that Rosequist may have had a claim for trade dress infringement, which was never a covered personal injury or advertising injury offense under the Travelers policy.

*Fourth*, when Travelers advised that it was accepting MTD's tender of the FAC, it became entitled to avail itself of the provisions of California Civil Code § 2860, under which it may pay MTD's counsel at the rates it paid attorneys in the ordinary course of business in the defense of similar actions in the community. *Fifth*, MTD's prayer for an order awarding prejudgment interest is not ripe, and not subject to summary determination.

For these reasons, Travelers is entitled to an order (1) determining as a matter of law that Travelers had no duty to defend MTD against the allegations in the original *Rosequist* complaint; and (2) denying MTD's motion for partial summary judgment in its entirety.

## II. FACTUAL RECAPITULATION[1]

Travelers issued MTD a policy that provided coverage for the personal and advertising injury offense of "disparagement," defined as "oral, written or electronic publication of material that … disparages a person's or organization's goods, products or services." Trv. Mot., 3:1-14; 3:27-4:3. Ivy Rosequist, a furniture designer, sued MTD for breach of contract and violation of the Lanham Act (based on violation of trade dress). *Id.*, 5:20-21. She alleged that MTD wrongfully created, marketed, and sold unauthorized copies of her furniture designs. 5:11-14. She also pled as follows:

> 27. The **promotional materials** widely circulated by (MTD) … **include**s [sic] **photographs** of plaintiff's actual furniture (which (MTD) has removed from its showroom and is no longer selling), compounding the high risk that customers **will visit** (MTD) looking for plaintiff's furniture, only to be unknowingly steered instead to cheap imitation knockoffs;
> 33. Consumers are likely to be confused and will naturally assume that **the**

---

[1] Unless stated otherwise, all citations are to Travelers' Cross-Motion, Dkt. No. 17 ("Trv. Mot.").

>    **knock-offs** currently being **displayed in (MTD's) showrooms** are plaintiff's products; and
>
>    36. (MTD's) **actions**, unless enjoined, will cause irreparable harm and injury to plaintiff and to consumers, in that it will **substantially dilute and tarnish plaintiff's established trade dress and mislead consumers about the true origins and nature of the cheap synthetic knock-offs**.

Rosequist Cmplt., Trv. Req. J. Not. ("RJN"), Ex. 1, at ¶¶ 27, 33, and 36 (emphases added).

Elsewhere, Rosequist alleged that:

>    31. (MTD) has directly **copied** those nonfunctional and distinctive elements (of Rosequist's furniture) and **has displayed the copied furniture for sale in its showrooms.**"
>
>    34. **By creating, promoting and offering for sale knockoffs and imitations** of plaintiff's established furniture designs … **MTD has infringed upon plaintiff's trade dress**, in violation of (the Lanham Act).

Cmplt., RJN, Ex. 1, at ¶¶ 31, 34 (emphases added)

MTD has identified "extrinsic evidence" of its advertising/ promotional materials, consisting of (1) its website that allegedly "wrongfully displayed" a Rosequist chair design; (2) promotional materials it widely circulated (which included photographs of Rosequist's furniture); and (3) advertising flyers, which used pictures of Rosequist furniture "to advertise MTD's alleged cheap knock-off goods." Trv. Mot., 20:5-10.

Paragraphs 27, 32, 33, and 36, and the "extrinsic evidence" described above, constitute the material on which MTD relies to try to persuade the Court that it faced potential liability for "disparagement" in the *Rosequist* action before the filing of the FAC. MTD Memo., Dkt. No. 8., 3:14-4:2. **None of the materials are "disparaging" statements under California law**. Rather, individually and collectively, they plead an alleged scheme of imitation of Rosequist's products' features, and reveal that Rosequist claimed she was injured, not by any statement of MTD, but by its *conduct*, i.e., the placement of "synthetic knock-offs" in the MTD showroom. That conduct, if proven, would have been trade dress infringement, but it was not disparagement.

### III. ARGUMENT

The Travelers policy extends coverage to claims for injury caused by "oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." The central issue in this case is whether,

prior to the filing of the FAC, any of the statements that MTD allegedly made to third parties "disparage[d]" Rosequist's "goods, products or services." The answer is no. As a matter of law, Rosequist's original complaint did not create a potential for coverage for disparagement.

### A. The Elements Of Disparagement Which May Be Covered Under Liability Insurance Policies Are Well-Established Under California Law

The policy provision at issue "provides coverage for product disparagement and trade libel." *Total Call Int'l, Inc. v. Peerless Ins. Co.*, 181 Cal.App.4th 161, 169. Those torts involve "false disparagement of the quality of goods or services." *Id. Accord*: *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F.Supp.2d 1244, 1252 (N.D.Cal. 2008) ("[t]rade libel and product disparagement are 'injurious falsehoods that interfere with business.'"). As MTD's opposition states, "California courts have held that to state a disparagement claim within the meaning of the Policy here at issue, the underlying plaintiff must allege that defendant made false, injurious, or derogatory statements about a plaintiff's products, which caused it to suffer pecuniary damages." *Id.* Those torts also require that the injurious false statement "specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Total Call Int'l, Inc. v. Peerless Ins. Co.*, 181 Cal.App.4th 161, 169 (quoting *Blatty v. New York Times Co.,* 42 Cal.3d 1033, 1042 (1986).

The elements of disparagement must be pled to create a potential for coverage. *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal.App.4th 500, 510 n.5 (2001). MTD's repeated assertions to the contrary are demonstrably wrong. *See, e.g.*, Opp., 5:12-13 ("To demonstrate a potential for coverage, *it is not necessary* to show every element needed to actually establish liability for a tort that falls within the offense of "disparagement") (emphasis in original). MTD cites *Barnett v. Fireman's Fund Ins. Co*., 90 Cal.App.4th 500, 510 n.5 (2001). Barnett says no such thing – it stands only for the proposition that the facts alleged – not "the technical legal cause of action pleaded by the third party" – determine the duty to defend. *Id.* at 510.

### B. The Original *Rosequist* Complaint Did Not Allege That MTD Made False Or Misleading Statements About Rosequist's Goods, Products, Or Services

Among the three paragraphs in the original complaint that MTD contends exposed it to potential liability for disparagement, only one (paragraph 27) can even be read as a *statement* attributed to MTD: "[t]he promotional materials widely circulated by (MTD) … includes [sic]

1 photographs of plaintiff's actual furniture (which (MTD) has removed from its showroom and is no

2 longer selling)." Such statement(s), accompanied by photographs of Rosequist's furniture, ca<u>nnot</u> be

3 deemed false, misleading, or disparaging in any sense.  MTD's counsel argues that "these

4 promotional materials misled the public to confuse (Rosequist's) genuine and original products"

5 with the knock-offs on the showroom floor, Opp. at 7:5-8, but *Rosequist* made no such allegation.

6       The remaining paragraphs allege only *conduct – i.e.*, that MTD placed "knockoffs" in its

7 showrooms.  They do not allege "the oral or written publication of material" or "advertising," as

8 both the Travelers policy – and the law of trade libel – require.  MTD does not – and cannot –

9 dispute that the central holding of *Nichols v. Great American Ins. Cos.*, 169 Cal.App.3d 766 (1985),

10 retains vitality:  there can be no potential liability (and therefore, no coverage) for trade libel or

11 disparagement absent proof of "the necessary element" of a disparaging publication or utterance. *Id*.

12 at 772, 775.  The law remains the same after a quarter century.  And, with the exception of paragraph

13 27, the *Rosequist* complaint did not mention any publication or utterance by MTD.  And that

14 publication was of a photograph that was not disparaging in any way to Rosequist or her furniture.

15       MTD dismisses *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 203 F.Supp.2d 587, 598

16 (E.D.Va. 2002), *aff'd on other grounds*, 332 F.3d 215 (4th Cir. 2003), essentially because it did not

17 involve facts that were virtually identical to those in *Rosequist v. MTD.  See* Opp., 20:20-21:1.

18 MTD cannot be bothered to try to refute the key similarity between the cases, and the result that

19 *Superformance* suggests here – a suit for infringement does not give rise to actionable

20 "disparagement" if "there are no allegations that (the insured) made any statements regarding the

21 quality of the products manufactured or sold by (the plaintiffs)." *Id.* at 600-601.

22       Here, neither the original *Rosequist* complaint nor the extrinsic evidence included or

23 constituted false, injurious statements, direct or implied, about the quality of Rosequist's products.

24 Thus, there is *no* plausible basis on which to interpret them as disparaging.

25     C.     <u>MTD's Contention That "A Trademark Dilution Claim Premised on Tarnishment Evidences Disparagement" Is Novel, Poorly Explained, And Unfounded</u>

26

27       Faced with the absence of evidence of any false or misleading statements – explicit or

28 implicit – concerning Rosequist's goods, MTD regroups.  It argues that "[f]act allegations of

trademark dilution premised on 'tarnishment' … were alleged in the original complaint," "evidence disparagement," and "trigger a defense." Opp., 4:13-17. MTD then cites to *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 951-52 (9th Cir. 2002).[2] Several lines later, MTD argues that "[d]ilution includes a distinct prong for tarnishment of the reputation of the trademark owner by association with something unsavory, unwholesome or poor quality. … "Such a 'dilution' claim *implicates the offense of 'disparagement'* because the mark holder is asserting that the value of the mark has been 'depreciated' and 'discredited' by virtue of its wrongful association with the defendant." Opp., 5:2-4 (emphasis added).

MTD cites no case or treatise to support this theory (which would impermissibly expand scope of coverage for disparagement), nor explain how it would apply to this dispute. The absence of *any* citation to authority for the proposition suggests its lack of viability. In any event, MTD has offered the Court no reason to treat evidence of "tarnishment" or "dilution" any differently than any other kind of evidence offered to prove potential liability for disparagement. Regardless of the terms MTD chooses to utilize here, the *Rosequist* complaint did not contain the elements of disparagement. Rosequist was not seeking damages on a theory that her goods were being disparaged.

### D. MTD's Cases Involving "False or Misleading Comparisons" And Implicit Disparagement Are Tangential – At Best – To the Issues Before the Court

In Section III(C), MTD tries to reinforce several of the cases it cited in its motion. Only a few points need be made. MTD points to *E.piphany* as an example of a case in which liability for disparagement coverage was found regarding an underlying case in which "customers were led to perceive its competitor as the source of inferior goods." Opp., 8:19-21. Unlike the original *Rosequist* complaint, the relevant complaint in *E.piphany* "enumerate(d) a host of specific instances in which E.piphany made … allegedly *false claims*" about Sigma, and alleged that its "market share, sales, and reputation were damaged *as a result of E.piphany's allegedly false statements*." *Id.* at 1253 (emphases added). The *E.piphany* court held that these "disparagement allegations" implicated

---

[2] The Court will likely be disappointed if it visits *Pension Trust* to see if it holds that "allegations of trademark dilution premised on 'tarnishment' can create coverage for disparagement." The case says no such thing. It only stands for the proposition that allegations "buried" within a complaint can trigger a defense duty.

1  the potential for coverage, and thus triggered the insurer's duty to defend. *Id.* There were no such
2  allegations in the *Rosequist* complaint.

3  In *Liberty Mut. Ins. Co. v. OSI Industries, Inc.*, 831 N.E.2d 192 (Ind.App. 2005), the court
4  found that the complaint raised potential claims for "disparagement." *Id.* at 199. The offending
5  statements were alleged to be both false and injurious to the competitor/plaintiff. In contrast,
6  Rosequist's original complaint made no such claims about any statements she attributed to MTD.

### E. Rosequist Accused MTD of Imitation, Which Is the Antithesis of Disparagement

Rosequist's original complaint asserted that MTD wrongfully imitated her designs by selling "synthetic knockoffs" of her wicker furniture. Allegations of wrongful imitation – such as the trade dress infringement Rosequist pled against MTD in the original complaint – cannot constitute a claim for disparagement. *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135 (9th Cir. 2003) (finding no disparagement coverage for patent infringement; "[i]t does not follow that because an entity imitated the design of a product, it is, therefore, disparaging it. In point of fact, it's quite the opposite-- … imitation is the highest form of flattery."). The concept makes perfect sense: why would one imitate what one disparages? Or vice-versa?

MTD's effort to distinguish *Homedics* falls far short. MTD argues in passing that MTD's "promotional activity" "allegedly denigrated (Rosequist) in the eyes of potential consumers." Opp. 16:11-12. This is neither accurate, nor relevant. The "promotional activity" allegedly infringed Rosequist's trade dress (Cmplt., ¶ 34), but did not "denigrate" her goods, products, or services," as necessary to trigger coverage for disparagement. Under the plain language of the policy, the disparagement must be directed towards the **product.** As in *Homedics*, the theory asserted – and the facts alleged – against MTD in the original complaint was infringement, *i.e.*, wrongful imitation, which is not disparagement.

### F. MTD Has Failed to Distinguish In Any Substantive Manner the Extensive Authority Cited By Travelers

The parties agree: the original *Rosequist* complaint pled trade dress infringement. Travelers analyzed a line of Ninth Circuit cases holding that such allegations do <u>not</u> create potential liability for disparagement. Trv. Mot., 14:1-17:28. MTD's rear-guard effort to fend off those cases fails.

The tort of "palming off," a variety of trade dress infringement, involves a manufacturer passing off its goods or services as those of another "by virtue of substantial similarity between the products." *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 223 (4th Cir. 2003) (citation omitted). Rosequist's original complaint accused MTD of substantially similar conduct, even though she did not expressly accuse MTD of the tort of "palming off." *See*, *e.g.*, Cmplt., RJN Ex. 1 ¶ 31 ("[MTD] has directly **copied** those nonfunctional and distinctive elements [of Rosequist's furniture] and has displayed the **copied** furniture **for sale in its showrooms**.") (emphasis added). *See also id.* ¶¶ 27, 33, and 36 (alleging that customers will be "unknowingly steered instead to cheap imitation knockoffs").

The Ninth Circuit has repeatedly found no "disparagement" coverage for palming off, where, as in the original *Rosequist* complaint, there were no allegations that the insured made any negative statements about the quality of the underlying plaintiff's goods, products or services. *Aetna Cas. & Surety Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346 (9th Cir. 1988), remains a formidable obstacle to MTD's claim for coverage. There, International, a manufacturer of animal identification tags, was sued under several causes of action. The plaintiff, Allflex, claimed that International had advertised Allflex's distinctive animal tags as its own. *Id.* at 349. International suggested that the claims could be variously characterized as trade libel or disparagement. *Id.* at 350.

In this action, Travelers' motion detailed the *Aetna* court's holdings that allegations of (1) "trading upon and profiting from" a competitor's reputation and good will, and (2) appropriating a competitor's products for one's own use, do not implicate trade libel. Other aspects of *Aetna* deserve further attention here, however. MTD seeks to distinguish *Aetna* by insisting

> "there is a vast distinction between simply selling **the same products** as those of a competitor and selling a distinct product alleged to be inferior while misleading consumers that it emanates from the same source … seeking to mislead customers to believe that it is the competitor's product and also doing so in a way that leads customers to question the value of the claimant's (i.e., competitor's) goods."

Opp., 17:7-12. MTD later argues that Rosequist

> alleged a distinct basis for liability for tarnishment-based trademark dilution, depending upon proof that customers thought less of (Rosequist) because of the sale of the "cheap synthetic knockoffs." In other words, **it is not *any* knockoff** that is asserted, **but a *cheap synthetic* one that would denigrate Wicker's reputation** for unique, aesthetically pleasing, originally produced wicker goods.

Opp., 17:16-20 (bold emphasis added). MTD deems this "disparagement," but it is not. The denigration, i.e., the "tarnishment" of Rosequist MTD now describes stems not from MTD's oral or written publication of any material, but from MTD's conduct, in the form of the bait and switch, and the **sale** of the cheap, synthetic knockoffs. Travelers did not insure against that conduct.

The Ninth Circuit would reject MTD's efforts to avoid *Aetna*. In *Aetna*, one of the underlying claims for which coverage was sought was for "dilution of distinctiveness of a trade mark and injury to business reputation." 838 F.2d at 349. This, of course, closely resembles MTD's theory – advanced without any support in the case law – that Rosequist's implied allegations of "tarnishment" or "dilution" create coverage for "disparagement."

The Ninth Circuit rejected the suggestion that such claims of "injury to business reputation" made out a case of disparagement. *Id.* at 351. Although such injury "would seem to be covered … **appellants must show that the alleged inferior quality of** (International's) **product constitutes disparagement**, and thus an injury to Allflex's business reputation." *Id.* at 352 (emphasis added). International, the policyholder in *Aetna*, did not do so, nor has MTD done so here. The *Aetna* court also observed that "**even if (International)'s animal tags were inferior in quality** … **this does not constitute a tort coverable under the policy**." *Id.* Based on this authority, the allegations that MTD copied the distinctive elements of Rosequist's goods and marketed and sold the inferior "knock-offs" – even if coupled with allegations that such conduct tarnished or diluted her trademark and damaged her business reputation – do not create a potential for coverage for disparagement, because there was no allegation in the original complaint that MTD disparaged Rosequist's goods, products, or services.

MTD takes only two sentences to brush off – but not distinguish – *Microtec Research. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968 (9th Cir. 1994). Opp., 18:10-12. *Microtec* followed *Aetna*, holding that allegations of false designation of origin[3] and "palming off" do not implicate coverage

---

[3] MTD has likened Rosequist's trade dress infringement claim to a "false designation of origin" action under the Lanham Act. Trv. Mot., 15:5-7, n.4. *Aetna,* like *Microtec*, noted that a cause of action for false designation of origin under the Lanham Act "has no arguable relation to … coverages" for libel, slander, or disparagement. 838 F.2d at 350.

1 | for disparagement, because, as in *Rosequist*, the underlying plaintiff "did not aver that (the insured) had said anything negative" about the plaintiff. *Id.* The court summarily rejected Microtec's argument that it faced a potential liability for disparagement because it allegedly disparaged or belittled Green Hills and its products by advertising that Microtec's products were better, *id.*, stating:

> The claims raised were that Microtec "palmed off" Green Hills' compilers, not that Microtec made a false or injurious statement about the quality of Green Hills' compilers.

*Id.* The same result should follow here, where Rosequist did not allege MTD made any false or injurious statements, either implicitly or explicitly, about her goods, products or services.

*Homedics*, *Aetna*, and *Microtec*, all Ninth Circuit cases construing California law, are on point. None have been overturned or criticized. Despite MTD's efforts to marginalize them, they *are* the law governing this dispute. They establish that allegations that a person infringes another's trademark or trade dress, or tries to confuse customers about the origin of a product, do *not* suffice to trigger coverage for disparagement.

### G. The "Relation Back" Doctrine Is Irrelevant, Because There Is Nothing Of Substance For MTD's Subsequent Tenders To "Relate Back" To

MTD again invokes the "relation back" theory to seek a coverage accrual at a time earlier than the filing of the FAC. In doing so, MTD ascribes unwarranted significance to the extrinsic evidence of MTD's "advertising" attached to its counsel's February 27, 2009 letter, and erroneously claims its counsel's March 9, 2009 letter "explained at length why 'disparagement' coverage was implicated under the original complaint." Opp., 10:1-6.

These points do not merit extensive discussion. MTD still has not offered any evidence that its website, advertising, or promotional materials – which were either neutral or complimentary towards Rosequist's goods, products, or services – created a potential for coverage for disparagement. *See* Trv. Mot.,20:3-21:15. MTD's counsel's letter of March 9, 2009, sent the day Travelers reminded MTD that its policy did not cover trade dress infringement (Trv. Mot., 6:20-24), only mentions disparagement on several pages (not "at length"). *See* Sussman Decl., Ex. 15 (Dkt. 24-1), at 2, 5, 6. The letter does nothing to trigger a defense duty, much less "require[] a defense as of that date (if not earlier)." Opp., 25:6-8.

The record is definitive: the original *Rosequist* complaint did not give rise to a duty to defend. Not until the FAC was filed in October 2009 was it alleged, for the first time, that MTD's "false" message disparaged the quality and origin of Rosequist's goods. The FAC contained a brand new, specific allegation of disparagement, *i.e*., that MTD's sales employees "orally told potential customers that the cheap synthetic knock-offs displayed on the showroom floors were (Rosequist)'s goods, thus again disparaging the quality and origin of (Rosequist)'s actual furniture." FAC ¶ 77 (Trv. RJN, Ex. 2). Only the FAC explicitly or implicitly alleged that MTD spread falsehoods about Rosequist's goods which disparaged their quality. Neither the original complaint, nor any extrinsic evidence MTD ever proffered, including in its briefing herein, did so. As such, neither the complaint nor the extrinsic evidence created a potential for coverage for disparagement. *See* Trv. Mot., 7:7-8:3 (comparing allegations in Rosequist's complaints).

### H. The WebXtend Liability Endorsement Contains the Policy's Sole "Personal Injury" And "Advertising Injury" Liability Coverage Terms

An insurer may limit coverage by a valid endorsement and, if a conflict exists between the main body of the policy and an endorsement, the endorsement prevails. *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 50, n. 4 (1997). The WebXtend Liability Endorsement ("the Endorsement") – made a part of the Travelers policy from inception, and identified as a part of the prospective policy at the time Travelers offered the policy to MTD and before MTD decided to purchase the coverage from Travelers – supersedes any other grant of coverage for personal injury or advertising injury offenses. Travelers' motion proves the Endorsement's sole applicability. Trv. Mot., 3:13-15. Indeed, MTD has acknowledged as much in its complaint and its motion for summary judgment, which both cite to and rely on the Endorsement. *See* Dkt. No. 1, 2:7-21, Ex. 1; Dkt. No. 8, 2:24-3:12. Against this backdrop, MTD must fail in its belated and unprincipled effort to avoid the Endorsement's plain terms and revive trade dress infringement coverage that was never part of the coverage MTD purchased from Travelers.

MTD implies erroneously that the Endorsement does not call adequate attention to its coverage language. Opp., 11:9-10. To the contrary, in several locations, the Endorsement states prominently that it contains *the* operative personal injury and advertising injury liability coverage.

*See* TRV-POL 110.[4] Despite this crisp language, conspicuously placed, MTD now argues that "no adequate notice of the *change* in coverage was provided to MTD." Opp., 13:7 (italics added). The assertion is utterly meritless.

        1. <u>At All Times, The Coverage That MTD Purchased From Travelers Included The WebXtend Endorsement</u>

Even though it filed this action seeking coverage under the Endorsement's coverage grant, MTD now speaks of a "change" in the Travelers policy resulting from "surreptitious" "reshuffling" of policy terms to eliminate "coverage previously in force." Opp., 11:10, 12:1-2. MTD's choice of these words is entirely disingenuous because *the Endorsement was in place at all times Travelers insured MTD* and, in fact, was made known to MTD at the time Travelers offered to sell MTD the insurance.[5] MTD's efforts to rewrite the insurance contract these many years later must fail.

First, as Travelers has demonstrated, the policy was issued subject to its endorsements. Trv. Mot., 3:5-6; Zacharski Decl., Ex. 1, TRV-POL 004. Second, the Endorsement was specifically identified in the initial "new business" proposal for insurance coverage that Travelers presented to MTD's broker, Willis, in September 2005. *See* Brenda Braden Decl., ¶ 4, Ex. 2. At the time of the policy's annual renewal in September 2006, Travelers *again* identified the Endorsement as part of the coverage that was proposed – and purchased. *Id.,* ¶ 5, Ex. 3. Likewise in September 2007, the policy period at issue in these cross-motions, Travelers identified the Endorsement at the time of its offer. *Id.*, ¶ 6.

MTD offers no evidence – only the statements of its counsel, who should have read MTD's insurance paperwork and talked to MTD's broker before coming up with this unfounded argument – that MTD "reasonably expected coverage" under the main CGL coverage form's" Personal and Advertising Injury offenses of "use of another's advertising idea in your advertisement" or "infringement of trade dress." Opp., 13:12-14.

---

[4] "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY"; "COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY (SECTION I – COVERAGES) is deleted in its entirely and replaced by the following"); *see also* TRV-POL 113 (deleting and replacing definitions of "personal" and "advertising" injury).

[5] If MTD did not like the terms of Travelers' offer, it could have declined it and purchased insurance from another insurer offering terms more to MTD's satisfaction.

### 2. The Cases MTD Cites Have No Bearing on the Facts At Issue

Because MTD offered no evidence of its "reasonable expectations of coverage" (and how could it, in light of the clear evidence of Travelers' offers?), its citations to cases such as *Haynes v. Farmers Insurance Exchange*, 32 Cal.4th 1198 (2004), are pointless. *Haynes* involved an insurer's effort to enforce an endorsement that purported to reduce an automobile policy's coverage limits for permissive users from $250,000 per person to $15,000. *Id.* at 1202, 1203. The endorsement was identified on the declarations page only by an alphanumeric designation that provided no hint of the substance of the endorsement, and the provision reducing coverage was located "in the least conspicuous position on the page" amidst a thicket of unrelated terms. *Id.* at 1202, 1209. Unlike the Travelers policy, the *Haynes* declarations page did not state that the endorsements constitute part of the policy. *Id.* at 1206-07; *cf.* TRV-POL 004. The Supreme Court declined to enforce the endorsement. *Id.* at 1204. Here, there is no evidence MTD "reasonably expected" coverage for trade dress infringement, nor is there any foundation on which to build an argument that the WebXtend Endorsement did not apply, and take its role as the sole grant of personal injury or advertising injury coverage.

*Davis v. United Services Auto. Ass'n*, 223 Cal.App.3d 1322 (1990), is similarly off the mark. *Davis* involved a first-party claim for coverage under a homeowners' policy. The plaintiffs and USAA agreed that the loss (the destruction of the insureds' home due to subsidence) was not covered by the policies, which specifically excluded coverage for both earth movement and contractor negligence. *Id.* at 1332. Contractor negligence *was* covered in prior policies. *Id.* USAA disagreed, however, with the trial court's conclusion that "exclusions in *later* policies did not apply because USAA had failed to adequately notify the Davises of the *new* exclusions." *Id.* at 1325 (italics added). In affirming the trial court's ruling that the "new" exclusions were invalid, the court quoted *Fields v. Blue Shield of California*, 163 Cal.App.3d 570, 579 (1985), for the "long-standing general principle applicable to insurance policies that an insurance company is bound by a greater coverage in an earlier policy when a renewal policy is issued but the insured is not notified of the specific reduction in coverage." *Id. Davis* is readily distinguishable from our case, which does *not* involve a reduction in coverage from an earlier policy to a renewal.

MTD next proclaims that "a number of cases, including one striking, analogous one from the Ninth Circuit, clarify why the WebXtend Endorsement should not be enforceable." Opp., 14:3-4, n.49 (citing *Allstate Ins. Co. v. Fibus*, 855 F.2d 660 (9th Cir. 1988)). *Fibus* might be striking, but it is emphatically *not* analogous to our case. MTD's other cases do not clarify as advertised. Like *Davis* and *Fields* (and unlike *MTD v. Travelers*), *Fibus* involved an insurer's effort to rely on policy limitations in a renewal that were not present in an earlier policy. The Ninth Circuit concluded that the original automobile policy provided separate coverage for loss of consortium, and Allstate's effort to later eliminate such separate coverage in a renewal policy via an "amendatory endorsement" was ineffective, because the endorsement did not conspicuously notify the insured of the reduction in prior coverage. *Id.* at 662, 663. In contrast here, Travelers did not grant – then eliminate – coverage for trade dress infringement; it never offered the coverage to MTD in the first place, it never granted the coverage to MTD, and MTD never paid for it. As such, *Fibus* has no instructive value here. For similar reasons, *Fields*, another case on which MTD relies, is not on point. Fields sued Blue Shield for bad faith when it refused to pay for his psychoanalysis. 163 Cal.App.3d at 574. The 1975 policy contained no exclusion for such services, but the 1976 policy *did*. *Id.* at 576-77. The Court of Appeal refused to enforce the new exclusion, which purported to "totally withdraw" coverage the insured "originally had," and ordered that a verdict be directed in the insured's favor. *Id.* at 579. The Endorsement here did not withdraw any coverage MTD ever had. Accordingly, the Endorsement must be given its rightful effect.

I. Travelers' Acceptance of the Tender Entitles It to the Benefits of Civil Code § 2860

Even though Travelers acknowledged its defense duty when it arose, MTD still insists it is "entitled to reasonable attorneys' fees *without limitation* by California Civil Code Section 2860." MTD Memo., 21:14-15 (emphasis added). Section 2860 limits an insurer's obligation to pay fees to an insured's independent counsel to the rates the insurer actually pays to attorneys it retains "in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended."

On December 15, 2009, Travelers accepted MTD's tender of defense of the FAC subject to a reservation of rights and advised that it would retain counsel and "reimburse the reasonable and

1 necessary defense expenses" of the Gauntlett firm from the date of tender of the FAC until
2 December 15 and "during the period of time reasonably necessary in order to transition defense to
3 the Ropers firm." Trv. Mot., 8:12-13; (Tancredy Decl. Ex. 5, at 1, 7, 9).

Because Travelers assumed the defense, it is entitled to rely on Section 2860 from October 2009 (the date of tender of the FAC) forward to establish the rate of payment for the Gauntlett firm's services. *See Karsant Family Ltd. Partnership v. Allstate Ins. Co*., 2009 U.S. Dist. LEXIS 7558 (N.D.Cal. Jan. 27, 2009). In *Karsant*, Judge Illston held that Allstate could obtain the benefits of Section 2860 after it accepted a duty to defend. *Id.* at *14. In doing so, she distinguished cases in which the insured had *not* defended the insured. *Id.* at *13. *Compare, also, Seagate Tech. LLC v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 09-04120 CW, 2010 WL 2898299, (N.D. Cal. July 21, 2010) (no Section 2860 rights for non-defending insurer) (cited at Opp., 23, n.93). Under *Karsant*, however, Travelers, which provided a defense to MTD pursuant to a reservation of rights, and agreed to pay, may rely in full on Section 2860. (To the extent MTD challenges the adequacy of the defense provided, there exists a dispute of material fact that precludes the granting of summary judgment on this issue.)

J. MTD's Prayer For An Award Of Prejudgment Interest *Remains* Premature

There is no documentary or testimonial record upon which to conclude that MTD is entitled to an advisory award of prejudgment interest on invoices for which Travelers has not been proven to be liable. Because the issue is not ripe for determination, summary judgment is inappropriate.

## IV. CONCLUSION

As a matter of law, Travelers had no duty to defend MTD against the allegations in the original *Rosequist* complaint. Accordingly, Travelers requests that the court grant Travelers' cross-motion for summary judgment and deny MTD's motion for partial summary judgment.

DATED: August 26, 2010

Respectfully submitted,

SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: */s/ Bruce D. Celebrezze*
Bruce D. Celebrezze/Matthew C. Lovell
Attorneys for Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA