**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MICHAEL TAYLOR DESIGNS, INC.,

    Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Defendant.
_____/

No. C 10-2432 RS

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This is an insurance coverage dispute. Plaintiff Michael Taylor Designs, Inc. ("MTD"), a furniture retailer, was sued in an underlying action for allegedly infringing the trade dress of one of its former suppliers by offering "cheap synthetic knockoffs" of that supplier's wicker furniture products. Defendant Travelers Property Casualty Company declined to defend MTD under a commercial liability policy it had issued, until after the complaint in the underlying action was amended to allege expressly a claim for "disparagement," as well as trade dress infringement. In this action, MTD seeks a determination that Travelers had a duty to defend even under the original allegations of the underlying complaint.

The insurance policy at issue includes an endorsement entitled "Web Xtend Liability," that expressly deletes a provision found in the body of the policy form that otherwise would have

provided coverage for trade dress infringement, and instead promises coverage only where the insured has "disparaged" the goods, products, or services of another. The primary question presented in this case, therefore, is whether the factual allegations of the original complaint filed against MTD were sufficient to give rise to a duty defend, despite the claims having been couched in language of trade dress infringement rather than in terms of disparagement.

In their cross-motions for summary judgment, MTD and Travelers agree that the material facts are not in dispute as to the central question; what remains is to decide which party is entitled to judgment in its favor given those undisputed facts. Because the facts alleged in the original complaint against MTD raised the possibility of a disparagement claim, thereby triggering a duty to defend, Travelers' motion will be denied, and MTD's will be granted, in part. MTD's request for an adjudication in its favor on certain issues relating to attorney fees and costs will be denied.

## II. BACKGROUND

For many years MTD had a business relationship with furniture designer Ivy Rosequist, in which MTD acted as the exclusive sales agent for Rosequist's line of wicker furniture. In 2008, a dispute arose between MTD and Rosequist over MTD's plans to begin selling synthetic wicker products that Rosequist contended were unlawful copies of her designs. In March of 2008, Rosequist filed a two count complaint in this district against MTD, alleging breach of contract and violation of the Lanham Act. *See Rosequist v. Michael Taylor Designs, Inc.*, C 08-1588 SBA ("the *Rosequist* action").

Rosequist's Lanham Act claim alleged, in essence, that MTD had distributed promotional materials to its customers that contained photographs of Rosequist's distinctive and high-quality furniture. MTD pulled a "bait-and-switch" on its customers, however, by displaying in its showroom "cheap synthetic knock-offs" of Rosequist's products, running the risk that consumers would be confused and misled, as to the origin of the items on display. Rosequist claimed this conduct would "dilute and tarnish" her trade dress.

MTD tendered defense of the *Rosequist* action to Travelers on March 31, 2008. By letter dated April 15, 2008, Travelers declined coverage, on grounds that "none of Rosequist's claims

implicate any of the offenses enumerated in the definition of 'personal injury', 'advertising injury' or 'web site injury'" in the insurance policy. Traveler's letter specifically noted that the Web Xtend Liability endorsement expressly *deletes* the provisions found in the body of the general policy form entitled "Coverage B – Personal and Advertising Injury Liability" in their entirety and replaces them with language set out in the endorsement.

Some ten months later, MTD, by letter dated February 27, 2009, re-tendered defense of the *Rosequist* action to Travelers. The retender letter included substantial legal argument that the *Rosequist* complaint stated a claim for trade dress infringement, and faulted Travelers for refusing to provide a defense, given that Coverage B in the body of the policy form expressly defined "personal and advertising injury" to include "infringing upon another's . . . trade dress." The re-tender letter appears to have been prepared without recognizing that the Web Xtend Liability endorsement is part of the policy, and that Traveler's letter denying coverage had pointed out that the endorsement deletes Coverage B entirely. The re-tender letter relied exclusively on the assumption that Coverage B was in effect and explicitly provided for coverage of trade dress claims—it did not argue that the Rosequist complaint implicated a claim for disparagement that would be covered even under the Web Xtend Liability endorsement.[1]

Travelers did not respond in writing to the re-tender letter. On October 21, 2009, an amended complaint was filed in the *Rosequist* action, which MTD immediately provided to Travelers.[2] The amended complaint includes a claim for relief entitled "Slander of Goods/Slander of Title," which repeatedly asserts that MTD "disparaged the quality and origin" of Rosequist's goods.

---

[1] As part of its opposition to Travelers' cross-motion, MTD has submitted a letter dated March 9, 2009, that it contends was sent to Travelers and that presented, for the first time, the assertion that the original *Rosequist* complaint implicated a disparagement claim covered under the Web Xtend Liability endorsement. The March 9th letter appears to be an incomplete draft—it includes notes for further edits, and its substantive discussion largely repeats verbatim the trade dress analysis of the February 27, 2009 re-tender letter. The authenticating declaration hedges as to whether it actually was ever transmitted to Travelers.

[2] The amended complaint substituted Rosequist's successor-in-interest as plaintiff, due to her intervening death. For convenience, this order will continue to refer to Rosequist and the *Rosequist* action, rather than to her successor and the present name of that action.

On December 15, 2009, Travelers advised MTD that, based on the claims of the amended complaint, it would defend the *Rosequist* action, subject to a reservation of rights, and that it was appointing Ropers, Majeski, Kohn & Bentley to serve as MTD's counsel. Travelers stated that MTD would be reimbursed for the reasonable and necessary defense expenses its then-counsel incurred between tender of the amended complaint and the time the Ropers firm took over, as well as reasonable expenses incurred in the transition of counsel. The Ropers firm ultimately assumed responsibility of MTD's defense in the Rosequist action on January 12, 2010.

## III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-324 (1986).

Here, as noted, on the primary issue of whether Travelers had a duty to defend under the allegations of the original *Rosequist* complaint, the parties are in agreement that no material facts are in dispute. The legal question, therefore, is which party is entitled to judgment in its favor on those facts.

## IV. DISCUSSION

A. <u>MTD's Motion for Leave to Submit Statement of Recent Decision</u>

On two occasions after this motion was heard, MTD filed a "statement of recent decision," purportedly under the authority of Civil Local Rule 7-3 (d), attaching a court ruling that had issued after the hearing. That rule, however, permits submission of newly-published authorities without prior court approval only, "[b]efore the noticed hearing date." At some point, MTD apparently became aware of this limitation, and therefore seeks leave by a motion filed under Rule 7-11 to submit yet a third newly-issued decision that it contends is relevant to the issues presented here.

Specifically, MTD wishes to submit for consideration *Hudson Ins. Co. v. Colony Ins. Co.*, 2010 WL 4367014 (9th Cir. (Cal.) Nov. 5, 2010). Travelers opposes the motion, arguing that Rule 7-11 cannot be used to seek relief where the issue is "otherwise governed" by another local rule. Travelers also contends that *Hudson* (and the two cases MTD previously submitted without first seeking leave), are not in fact relevant to the pending disputes. In turn, MTD objects to Travelers' opposition, noting that Rule 7-3(d) forbids a party from including any argument as to the relevance of a case it is submitting under a "statement of recent decision," and complaining that it would therefore be unfair for the Court to consider the arguments made by Travelers that the cases it has offered are irrelevant.

The local rules are structured to deter an endless cycle of filings and counter-filings while preserving the Court's ability to render a decision that is fully-informed by any particularly germane legal authority that may emerge. To that end, Rule 7-3(d) permits statements of recent decisions, submitted prior to the hearing in a good faith belief as to their relevance, without argument or counter-argument. Should an opinion so submitted warrant it, the Court may invite argument at the hearing, or even solicit further briefing. After the hearing, in contrast, a party may only submit additional authority upon obtaining leave of court. Contrary to Travelers' argument, a motion brought under Rule 7-11 is an appropriate vehicle for seeking such relief, because Rule 7-3(d) does *not* bar the submission of such cases; it only requires court permission. Furthermore, Rule 7-11 is applicable because Rule 7-3 does not "otherwise govern" the *procedure* for obtaining that court approval.

Although it is thereby permissible for a party to seek leave to submit additional, newly-released, authorities after a matter has been heard, it is a right that should be exercised sparingly. If a decision is not an on-point, controlling precedent,[3] it must at least be a highly persuasive decision

---

[3] This court is bound only by (1) opinions of the Supreme Court, (2) opinions of the Ninth Circuit, (3) opinions designated as precedential by the Federal Circuit as to matters of patent law, and (3) opinions of each state's highest court as to matters of state law. Where a state high court has not decided a specific issue of state law, and the Ninth Circuit has not declared how it believes the state high court would rule, any intermediate state appellate court rulings on the point are generally entitled to great weight.

on an issue of particular importance, that it is not otherwise cumulative of the cases that have already been submitted.[4] While any motion seeking leave to file additional authority after a hearing should still avoid arguing the merits to the extent possible, it should concisely explain why the criteria above is satisfied.[5]

Here, attempting to honor the prohibition against argument that applies when a party submits a statement of recent decision under Rule 7-3(d), MTD did not explain why it believes *Hudson* is particularly relevant to the pending issues. *Hudson* in fact appears consistent with the authorities previously cited, and does not arise from so nearly-identical facts as to make it undisputedly controlling to the outcome of this motion. Nevertheless, because *Hudson* represents the most recent articulation by the Ninth Circuit of many of the central principles implicated here, it was arguably appropriate to call it to the attention of the Court. Accordingly, MTD's motion under Rule 7-11 for leave to submit *Hudson* is granted, and it has been considered. As the discussion below will reflect, however, the decision in this case does not depend on the holding of, or any language in, *Hudson.*

---

[4] Neither of the first two cases MTD submitted after the hearing without seeking leave to do so satisfies these guidelines. The first was a state appellate decision that at best is cumulative, and which was designated as not citable under the rules of the court that issued it. The second, decided in this district, merely recites the general legal principles that were fully briefed and not disputed in this motion, and then applies those principles in a manner that breaks no new legal ground, on facts not sufficiently similar to those here to be enlightening. Thus, while both cases may tangentially support MTD's positions, neither advances the analysis such that party or court resources should have been expended to give them special consideration after the hearing.

[5] Similarly, any opposition to the motion should focus, to the extent possible, on why the proffered authority does not meet the criteria for post-hearing consideration, rather than arguing the merits. Because a party is entitled to present arguments in opposition to a Rule 7-11 motion, however, MTD's objections based on Rule 7-3(d) to Travelers' opposition brief are not well-taken.

B. Traveler's duty to defend under the original *Rosequist* complaint

The California Supreme Court has held that "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993) (citing *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, (1966)). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287 (1993). Even though "an insurer has a duty to defend only if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insurance policy," *Lomes v. Hartford Fin. Svcs. Group, Inc.*, 88 Cal.App.4th 127 (2001), "the insured need only show that the underlying claim may fall within the policy coverage; the insurer must prove it cannot." *Montrose*, 6 Cal.4th at 300.

"Whether an insurance policy provides [the] potential for coverage and, thus, a duty to defend exists, is a question of law for the court to decide." *Lomes*, 88 Cal.App.4th at 132. Such a determination is typically made by comparing the allegations of the complaint to the policy terms. *Id.* at 132. Importantly, the duty to defend, "does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the *alleged facts* or *known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy." *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 1034 (2002) (emphasis in original).

With these general principles, MTD and Travelers are in agreement. They also concur that under the Web Xtend Liability endorsement of the policy issued to MTD, it was entitled to a defense if the factual allegations of the original *Rosequist* complaint created a possibility that it would be found liable for "disparagement"—defined in the endorsement as, "[o]ral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." The issue, then, is whether the original *Rosequist* complaint implicated such a claim.

The complaint alleged:

• "The promotional materials widely circulated by Michael Taylor Designs, Inc. for the patrons of Westweek includes [sic] photographs of [Rosequist's] actual furniture (which Michael

7

Taylor Designs, Inc. has removed from its showroom and is no longer selling), compounding the high risk that customers will visit Michael Taylor Designs, Inc. looking for [Rosequist's] furniture, *only to be unknowingly steered* instead to cheap imitation knockoffs." [Emphasis added].

• "Consumers are likely to be confused and will naturally assume that the knock-offs currently being displayed in Michael Taylor Design's showrooms are plaintiff's products."

• "Defendant's action, unless enjoined, will cause irreparable harm and injury to plaintiff and to consumers, in that it will substantially dilute and *tarnish plaintiff's established trade dress* and mislead consumers about the *true origins* and nature of the cheap synthetic knockoffs. [Emphasis added].

Undoubtedly, at the time Rosequist's complaint was originally filed, her lawyers did not have a claim for disparagement or trade libel at the forefront of their legal theories. Nevertheless, the very essence of the injury they were alleging was damage to the reputation of Rosequist's products that would result from consumers encountering "cheap synthetic knock-offs" and believing them to be products manufactured and marketed by Rosequist. Travelers offers two basic arguments as to why these allegations do not, in its view, suggest the possibility of a disparagement claim that would give rise to coverage under the policy.

First, Travelers contends that case law has unequivocally rejected the notion that facts constituting trade dress infringement, standing alone, can ever constitute disparagement. Relying first on a *patent* infringement case, Travelers asserts that the very nature of a claim based on imitation of another's product forecloses any disparagement. "It does not follow that because an entity imitated the design of a product, it is, therefore, disparaging it. In point of fact, it's quite the opposite—as has been oft said: imitation is the highest form of flattery." *Homedics, Inc. v. Valley Forge Ins. Co.,* 315 F.3d 1135, 1142 (9th Cir. 2003). There was no suggestion in *Homedics*, however, that the defendant had ever advertised its "imitation" products in a way that would lead consumers to believe that they were the originals. Thus, the imitation in *Homedics* indeed could only have been "flattery" that in no way reflected badly on the reputation of the plaintiff's products.

Travelers also lays heavy emphasis on *Aetna Cas. & Surety Co., Inc. v. Centennial Ins. Co.,* 838 F.2d 346 (9th Cir. 1988), in which, as here a defendant had been accused of trade dress

infringement. As opposed to this case, however, in *Aetna* there were no allegations in the underlying complaint that the infringer was damaging the reputation of the plaintiff's goods by passing off copies of inferior quality. 838 F.2d at 352. Moreover, as described in *Aetna*, the "gravamen" of the underlying claims against the alleged infringers was "that they 'palmed off' [the plaintiffs'] products *as their own*." 838 F.2d at 351 (emphasis added). Here, in stark contrast, Rosequist's original complaint made clear that her charge was that MTD was leading people to believe its "cheap synthetics" *were Rosequist's* own products. Accordingly, while Travelers' reliance on *Aetna* is understandable, given language in the opinion implying that copying the goods of another and disparagement are simply disparate wrongs, it does not stand as clear authority that advertising an inferior item as if it were the product of another invariably falls outside disparagement.

Similarly, in *Microtec Res. v. Nationwide Mutual Ins. Co.*, 40 F.3d 968 (9th Cir. 1994), the court cited *Aetna* in concluding that an alleged software pirate had not disparaged the quality of the purportedly stolen code by selling it as its own. The fact that such conduct, akin to *reverse* palming off, carried no connotation that the plaintiff's code was of poor quality, has little instructive value here. Because Rosequist was expressly alleging that the reputation of her goods was harmed by MTD's conduct, the mere fact that it was labeled as trade dress infringement does not preclude the possibility of a disparagement claim.

Traveler's second basic argument is that the original *Rosequist* complaint at most alleged *conduct* with a potentially negative effect on consumer perceptions, not "oral, written or electronic publication of material" containing disparaging statements about Rosequist's furniture. While the question is somewhat close, this contention rests on an overly restrictive reading of the complaint. To be sure, the primary "publications" described in the complaint did not, in and of themselves, constitute disparagement. Marketing brochures containing pictures of Rosequist's actual products cannot be said to impugn the quality of her furniture, standing alone. The complaint, however, explained that the alleged purpose of those brochures was to entice customers interested in Rosequist's products into MTD's showrooms, where they would then be "*steered* instead" to the imitation products. The term "steered" fairly implies some *further* statements, presumably oral,

were being made by MTD personnel to convey the information that the imitation products were the Rosequist furniture depicted in the brochures.[6]

While Travelers' decision to extend coverage under the amended *Rosequist* complaint cannot be used as an admission that it was obligated to provide coverage under any complaint containing the same basic facts, a comparison of the two complaints is nonetheless instructive. The amended complaint may have articulated the new legal *theory* of "Slander of Goods," and liberally sprinkled the term "disparagement" throughout, but it did so without adding substantially new or different allegations as to the factual circumstances, or fundamentally altering the nature of the injury being alleged. The express "disparagement" in the amended complaint arises from consumers allegedly being led to believe that Rosequist had designed and was distributing the "cheap synthetic knock-offs" displayed in MTD's showrooms.

The only factual change of any note was the expansion of the somewhat vague term "steered," into "sales employees orally told potential customers . . . ." Making this one point explicit rather than implicit, however, does not represent a distinction of significant import.[7] Accordingly, even the factual allegations of the original *Rosequist* complaint were sufficient to reveal the possibility of a covered claim, and Travelers had a duty to provide MTD a defense from the time that complaint was tendered.[8]

---

[6] Elsewhere the complaint alleged that customers would "naturally assume" the imitations were Rosequist's products. The allegation that some customers might reach the same conclusion even absent additional "steering" statements, does not permit the steering allegation to be disregarded.

[7] Travelers also points to allegations in the amended complaint that MTD's marketing brochures and website "disparaged" Rosequist's products by depicting the actual goods. Although Travelers may not have been entitled to disregard those conclusory statements when making its coverage decision on the amended complaint, they added nothing of substance to the question of whether the marketing materials contained disparaging statements.

[8] MTD argues that Travelers' duty to defend also arose from "extrinsic evidence" made available in the re-tender letter in February of 2009, but it has failed to explain how that purported extrinsic evidence added anything material beyond what was alleged in the complaint. In light of the conclusion that the duty to defend arose from the complaint itself, further consideration of the argument is unnecessary. MTD also offers a separately-headed argument that it is entitled to coverage from the date of tender of the original complaint under what it labels a "relation-back doctrine." The cases it cites in support of this contention, however, stand only for the unremarkable proposition that if an original complaint gives rise to a duty to defend, the obligation dates to the

C. Enforceability of the Web Xtend Liability endorsement

In its opposition to Traveler's cross-motion, MTD belatedly raises an argument that the Web Xtend Liability endorsement should be deemed unenforceable because Travelers did not provide adequate and conspicuous disclosure that the endorsement eliminates the coverage for trade dress infringement claims listed in the body of the policy form. It may not be a model of clarity to remove coverage for one well-established and common type of potential liability through an endorsement that is titled and otherwise gives the appearance of being an attempt to provide *additional* coverage or clarification in the internet sphere. All of the authorities on which MTD relies, however, involve situations where an insurer attempted to limit coverage in a *renewal* policy without giving adequate notice that the insured would receive less than under the original policy. Here, there is no dispute that the Web Xtend Liability endorsement was part of the policy package originally offered to, and accepted by, MTD. Accordingly, while the issue is largely mooted by the conclusions above, MTD has failed to establish that the Web Xtend Liability endorsement should be held unenforceable as a matter of law.[9]

D. Attorney Fees and Interest

MTD's motion also seeks an adjudication that it is entitled to reimbursement for the attorney fees it incurred from the inception of the *Rosequist* action until the Ropers firm actually assumed its defense on January 12, 2010. The precise relief MTD seeks is unclear—on the one hand it appears to acknowledge that it is at most entitled to recover *reasonable* attorney fees, but on the other it

---

tender of that complaint. As MTD does not appear to be making the untenable argument that an insured is entitled to coverage from tender of an original complaint even where coverage is triggered *only* by an amended complaint, its invocation of a "relation-back" concept is unnecessary.

[9] The apparent practice of providing policy holders with pages and pages of provisions that may or may not be in force, depending on what endorsements apply, is not to be commended. Given current technology, there would appear to be little practical impediment to preparing customized policy documents for each policy holder that either omit deleted verbiage entirely or plainly identify it as having been removed by endorsement. Imposing a requirement that insurers do so, however, is a matter for legislative or regulatory consideration, contrary to the implication of MTD's request for a judicial declaration of unenforceability.

11

seems to be requesting a ruling that Travelers must simply pay all the attorney fee invoices MTD's counsel generated (and prejudgment interest thereon), without any further examination of whether the claimed fees were reasonable and necessary to MTD's defense. To the extent MTD is requesting a determination that Travelers must pay the amounts actually invoiced, its motion is denied, because it has not even attempted to establish the absence of any triable issue of fact as to the reasonableness of the fees.

Given the conclusion that Travelers' duty to defend arose from the original *Rosequist* complaint, it follows that MTD is entitled to reimbursement of the attorney fees it reasonably and necessarily incurred between the time it tendered that complaint, and October 21, 2009, when the amended complaint was filed and provided to Travelers. While Travelers disputes that its duty to defend arose from the original complaint, it does not appear to challenge this proposition.

The remaining dispute is whether Travelers is entitled to rely on California Civil Code §2860 to limit the amount of its fee reimbursement obligation between October 21, 2009 when the amended complaint was tendered, and January 12, 2010, when the Ropers firm took over the defense. Section 2860 permits insurers to pay an insured's independent counsel so-called "panel rates"—those rates "actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended." MTD is correct that an insurer who wrongfully denies coverage may not rely on section 2860 after the fact, once it has agreed to—or been found obligated to—provide a defense. Travelers, however, is not contending that it is entitled to the benefit of section 2860 for the fees MTD incurred before October 21, 2009.

Travelers is correct that it *is* entitled to the benefit of section 2860 as to the fees incurred by MTD's independent counsel after October 21, 2009. *See Karsant Family Ltd. Partnership v. Allstate Ins. Co.,* 2009 WL 188036, *5 (N.D.Cal. 2009) (finding provisions of section 2860 applicable to independent counsel fees after assumption of defense, notwithstanding prior refusal to defend). MTD complains that Travelers failed to reference section 2860 when it advised that it was providing coverage and that it would reimburse fees incurred until the Ropers firm took over. That

argument is unpersuasive, as Travelers expressly advised MTD that section 2860 would apply when it acknowledged receipt of the amended complaint.

Once Travelers accepted the defense, its only contractual and statutory obligation was to provide a defense at "panel rates," whether that happened to be through a law firm of its own choosing or counsel previously employed by the insured. Accordingly, while there might be an argument that Travelers should not be entitled to the benefits of section 2860 until it actually communicated to MTD that it was assuming the defense (rather than retroactively to the date of tender), MTD has not presented such a contention and it will not be decided here. To the extent that MTD seeks an adjudication that Travelers may not rely on section 2860 at all, its motion is denied.

Finally, in light of the conclusion that MTD has failed to show it is entitled to reimbursement of any particular dollar amount of attorney fees, its request for a determination that it is entitled to prejudgment interest is rejected as premature, at best.

## V. CONCLUSION

Travelers' motion for summary judgment is denied. MTD's motion is granted insofar as it seeks an adjudication that Travelers' duty to defend arose upon tender of the original *Rosequist* complaint, and that it is entitled to reimbursement of the reasonable and necessary attorney fees it incurred between that date and October 21, 2009. MTD's motion is otherwise denied. The parties shall appear for a Case Management Conference on February 24, 2011, at 10:00 a.m.

IT IS SO ORDERED.

Dated: 1/20/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE